UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


JACQUELINE HALBIG, ET AL.,    :
                              :
            Plaintiffs,       :
        vs.                   :          Docket No. CA 13-623
                              :
KATHLEEN SEBELIUS, ET AL.,    :             Washington, D.C.
                              :          Monday, October 21, 2013
                              :                10:05 a.m.
            Defendants.       :
--------------------------x


TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING
BEFORE THE HONORABLE PAUL L. FRIEDMAN
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiffs:        MICHAEL A. CARVIN, Esquire
                           JACOB M. ROTH, Esquire
                           JONATHAN A. BERRY, Esquire
                           JONES DAY
                           51 Louisiana Avenue, NW
                           Washington, DC  20001-2113


For the Defendants:        JOEL L. MCELVAIN, Esquire
                           SHEILA LIEBER, Esquire
                           U.S. Department of Justice
                           20 Massachusetts Avenue, NW
                           Washington, DC  20001

Court Reporter:            CRYSTAL M. PILGRIM, RPR
                           Official Court Reporter
                           United States District Court
                           District of Columbia
                           333 Constitution Avenue, NW
                           Washington, DC  20001


Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.

P-R-O-C-E-E-D-I-N-G-S

1          THE DEPUTY CLERK:  Civil Action number 13-623,

2   Jacqueline Halbig, et al versus Kathleen Sebelius, et al.

3          Counsel, please come forward and identify yourselves for

4   the record.

5          MR. CARVIN:  Thank you, Your Honor, Michael Carvin

6   for the plaintiffs.  With me today is Jacob Roth and Jonathan

7   Berry.

8          THE COURT:  Thank you, Mr. Carvin.

9          MR. MCELVAIN:  Good morning, Joel McElvain for the

10  defendants, with me today is Sheila Lieber.

11         THE COURT:  All right.  And from this point forward

12  to help out the Court Reporter if everybody will speak at the

13  microphone and come to the podium.

14         So we're here on two motions.  One is the Government's

15  motion to dismiss the complaint, dismiss the case and the other

16  is plaintiffs' motion for a preliminary injunction.  Obviously,

17  if the case were dismissed, there wouldn't be an injunction.

18         So I don't know whether you all have discussed the order

19  in which you want to proceed.

20         MR. CARVIN:  Your Honor, we briefly chatted.  It's

21  obviously up to the Court's discretion.  I think we both felt

22  that the threshold issue might go first before, be the first

23  one.

24         THE COURT:  That will be helpful.

1      Mr. McElvain.

2          MR. MCELVAIN:  Good morning, Your Honor, may it

3  please the Court.

4          When it passed the Affordable Care Act, Congress enacted

5  a comprehensive nationwide scheme to make affordable health

6  coverage available for all citizens.

7          The plaintiffs' theory is fundamentally contrary to the

8  tax and the purpose of the Affordable Care Act and it should be

9  rejected.  However, this case is not the right forum to do so

10 because there are multiple threshold barriers to the suit.

11         First and foremost, the plaintiffs lack Article III

12 standing to proceed.  Taking in particular the claims of the

13 individual plaintiffs and in particular the claim of David

14 Klemencic who is the only individual who has attempted to show

15 standing. It is quite clear that he has suffered no injury at

16 all from the Treasury regulation that he aims to challenge

17 here.

18      In fact, now that the premiums are in on the Federal

19 exchanges, it is clear that he would pay nothing.

20         THE COURT:  Well, that's not what he says.  He says

21 he'd pay $18 a month.

22         MR. MCELVAIN:  Well, actually we have initially

23 provided information to the Court saying that our estimates as

24 of the date of our opposition briefs September 27th, we thought

25 at most $18.

1     Now that the rates have finally been calculated, we

2  submitted a supplemental declaration to the Court on Friday

3  showing that in fact the numbers are zero.

4     THE COURT:  Why isn't that a disputed issue of fact

5  that would have to be resolved at the summary judgment stage?

6     MR. MCELVAIN:  Because the number and that is the

7  number that he will pay.

8     But I'm perfectly willing to accept the $18, either $18

9  or zero is not a fact to our argument.  The point is that he

10  would pay hundreds of dollars less for a comprehensive plan, a

11  bronze plan in Exchange than a catastrophic plan that he claims

12  he was interested in.

13     Now at the last minute he claims well, I don't want

14  insurance at all.  I simply do not want to buy insurance.  But

15  that's not the way they were proceeding at the outset of this

16  case and this Court judges Article II standing on the basis of

17  third claims --

18     THE COURT:  When you say at the outset, is there

19  something in the complaint itself that you're relying on?

20     MR. MCELVAIN:  In the complaint itself and in

21  Mr. Klemencic's declaration he said I not interested in

22  catastrophic coverage.  My claim of injury is that I am

23  prevented from buying catastrophic coverage because I can only

24  do so with insurance if other insurance is not affordable for

25  me.  That's why I'm harmed by these tax credits being given to

1   me.

2        That's their theory of standing, but it doesn't work

3   because the catastrophic coverage that he claimed or at least

4   initially claimed that he was interested in getting is actually

5   more expensive for less generous coverage than the insurance

6   that is available to him for free on the Exchange.

7        So there is simply no Article III injury in fact by the

8   provision of free insurance to Mr. Klemencic.

9            THE COURT:  So it's available to him for free if he

10  gets the subsidy?

11           MR. MCELVAIN:  Correct.

12       Just to follow up on that point.  The notion that

13  there's something material about being denied, possibility by

14  him suffering a catastrophic plan really is no injury at all.

15  Every benefit that he could get from the catastrophic plan he

16  gets from the Bronze plan and more on better terms because it

17  will start covering him from dollar one as opposed to him first

18  incurring $6500 or so out-of-pocket costs and benefits of

19  affordable care.  The better term again or what's cheaper given

20  the fact that he has the subsidies.  So again he suffers no

21  injury in fact whatsoever.

22       Now as to the other group of plaintiffs, the business

23  plaintiffs, they also lack Article III standing for a slightly

24  different reason.  Their claim of standing is that they suffer

25  potential injury and that they will potentially face the tax

1    under the Affordable Care Act for large employers that kicks in

2    if one or more of the employees gets the tax credit under the

3    exchanges.  Their theory is well, we want to come in and we

4    want a declaration that our employees are not eligible for

5    coverage and that will prevent the possibility that we will

6    later get this tax.

7         But they can't get that relief here because this Court

8    doesn't have the power to extinguish those employees' rights in

9    a federal proceeding to go forward and seek their own tax

10   credit.

11        THE COURT:  What's the difference between what

12   they're saying here and what the Fourth Circuit ruled in

13   Liberty University?

14        MR. MCELVAIN:  Liberty University the Court, the

15   plaintiff there was seeking a declaration that employer tax

16   Section 4980 H was unconstitutional, just couldn't be applied

17   at all.

18        THE COURT:  So in terms of the nature of the harm

19   that the employer in Liberty University was alleging, is there

20   any difference between what the Fourth Circuit said about the

21   injury they suffered and the injury that the employer,

22   plaintiffs claim here?

23        MR. MCELVAIN:  Well, the difference here is they're

24   not raising a direct challenge to Section 4980 H.  Their entire

25   claim depends on their ability to extinguish the employees'

1   right to seek the credit.

2       This is very different from Liberty University.  That

3   sort of claim was not at issue there.  So the only way that the

4   employers could gain relief from the threat that they fear from

5   a future tax infringement turns on their ability to prevent the

6   employees from seeking the tax structure.  Because 4980 H, the

7   employer tax, would kick in as a matter of law if more than one

8   of the employees get the credit but they can't extinguish those

9   employees' right.

10      Now what the plaintiffs argue here is well, we're

11  seeking to overturn a regulation, so the Court can set aside

12  the regulation and that would show that in fact we would win.

13  But if you look at it a little more closely that claim doesn't

14  work because the Treasury regulation the plaintiffs challenge

15  here is an interpretive regulation interpreting Section 36B to

16  say that the tax credits are available.

17      Even if the Court overturned the regulation with

18  nationwide application which we don't think that the Court has

19  power to do but we can leave that question aside, even if the

20  Court overturns the regulation completely that wouldn't

21  extinguish the plaintiffs' claim because they could still come

22  forward with their own claim, say fine, it's no regulation, but

23  our interpretation of the Affordable Care Act they're entitled

24  to the tax credit and they could bring their own suit saying

25  please give us tax credits.

1          THE COURT:  You are saying even if this was a

2   straightforward and it's not a straightforward APA case a

3   challenge to a regulation is arbitrary and capricious or

4   inconsistent with the language of the statute and therefore,

5   contrary to law and I were to reach that conclusion that you

6   would say we don't care what the Court said that this

7   regulation is contrary to the law, we still have the statute

8   and here's how we read the statute.

9          MR. MCELVAIN:  Well, I don't want to get to the

10  remedy stage because we are not there.  But if the Court issued

11  an injunction then, you know, we of course would follow the

12  injunction.

13         But the Court cannot enjoin the employees who are out

14  there third parties not present in this courtroom.  And they

15  would come to the courtroom and say under the statute we are

16  entitled to use the tax credits so give us the tax credits and

17  maybe we couldn't as a matter of first course depending on what

18  sort of injunction the Court should hear.

19         But the plaintiffs could still bring their own claim and

20  argue they would win that second lawsuit.  But in --

21         THE COURT:  Isn't it a normal thing in an APA case

22  not to have an injunction but vacate the regulation and just

23  saying maybe a declaratory judgment but basically saying this

24  regulation is arbitrary and capricious and contrary to law and

25  therefore, it's vacated and that's the end of it or you can

1   try to rewrite it, but so what would -- you said if there were

2   an injunction you would follow the injunction, but what would

3   the injunction say?  The injunction can't say you can't collect

4   taxes.  The injunction can only say you can't apply the

5   regulation.

6          MR. MCELVAIN:  Right.  And so even if we didn't have

7   the regulation anymore, then the second thing that happens is

8   the employee comes with their own claims saying that we are

9   entitled to these tax credits.

10          I have been trying to think of what would the

11   Government's brief look like in the second case.  It would be

12   something like well, we think that you are right, Mr. Employee.

13   In fact, we use to have a regulation that said you were right.

14   It's been vacated and we can't rely on the regulation but if

15   you ask us our belief in our hearts, yes.

16          THE COURT:  In your hearts?  In your hearts.

17          MR. MCELVAIN:  Yes.

18          THE COURT:  You're lawyers.  You can take that

19   comment several different ways.

20          MR. MCELVAIN:  Our hearts will -- I don't know how

21   that litigation will proceed but the point is that the

22   employees can still come forward and say we have our own

23   reading of the act and we are entitled to our statute.

24          There's a wealth of authority that you do not get past

25   the Redressability threshold when all you're trying to do is

1    litigate one issue that might come up in another proceeding.

2    All the plaintiffs here are trying to do is the fact I guess

3    the level of Chevron deference that the Treasury regulation

4    would get in a lawsuit brought by the employees.

5            THE COURT:  It wouldn't get any deference if it was

6    vacated.

7            MR. MCELVAIN:  That's my point.  It would be a side

8    issue that would be coming forward in the second proceeding

9    which is are plaintiffs in fact entitled to the tax credits or

10   not.

11       So for that reason it simply cannot gain relief here

12   because they'd still be under the threat of a tax assessment if

13   an employee comes forward with their claim in the next

14   proceeding.

15       I could address the prudential standing issue.

16           THE COURT:  Okay.

17           MR. MCELVAIN:  So there are two issues with respect

18   to prudential standing.  One issue effects all of the

19   plaintiffs.  The other issue effects the business plaintiffs in

20   particular.

21       First, the plaintiffs do not fall within the zone

22   interest of the statute.

23           THE COURT:  You've got to realize what a battle to

24   persuade me because in my notes I wrote this is a silly

25   argument.

1          MR. MCELVAIN:  Well, I don't think it's silly.  I do

2     recognize that the zone interest assessment is usually very

3     easy for a plaintiff to meet.

4          But the issue here is they in fact are asserting a

5     purpose that is directly contrary to what the Congress purpose

6     in enacting the Affordable Care Act was.  So even though it is

7     a very rare case where the zone interest may not work, this is

8     one of those cases where they are proceeding for 180 degrees

9     opposite the reason the Congress enacted.

10          THE COURT:  So does that mean that anybody who ever

11     challenges the constitutionality of lawfulness of a statute or

12     regulation is never within the zone of interest because they're

13     trying to overturn something that was passed by Congress and

14     only people that are trying to get the benefit of it are in the

15     zone interest?

16          MR. MCELVAIN:  No.  First of all, it's a

17     constitutional challenge if --

18          THE COURT:  Well, put that aside.

19          MR. MCELVAIN:  And another case if somebody is

20     challenging -- there are multiple cases where somebody could be

21     within the zone of interest for any number of challenges.  It's

22     like I said not a hard challenge to meet.  You just have to be

23     a plaintiff that is reasonably foreseeable as sort of a

24     plaintiff who might vindicate the interest that Congress had.

25          But one very narrow circumstance where the zone of

1   interest test very definitely applies is when you are asserting

2   a purpose that is directly contrary to what Congress' purpose

3   was.

4        Congress was quite explicit as to why it enacted Section

5   36B.  We are enacting this to make insurance more affordable

6   and to offset the cost of health insurance premiums on

7   exchanges.  The interest that the plaintiffs are asserting here

8   is that they, they frankly admitted it.  They want to make

9   insurance more unaffordable and we don't want the cost of

10  insurance to be offset.  So it's directly contrary to Congress'

11  purpose.

12       Again, the narrow test does not apply very often, but

13  this is one of the rare cases where it applies where the

14  plaintiffs have so frankly and so directly contrary to the

15  purposes of Congress in enacting the statute in particular.

16       And there's a wealth of examples of legislative history

17  where even the House said not only the purpose is to make

18  insurance more affordable, but the purpose of making these

19  credits is in fact key to the larger operation of the statute.

20       Turning also to the, to the next issue in terms of

21  prudential standing.  The employer plaintiffs here, as we've

22  already discussed, their claim depends on their asserted right

23  to adjudicate the tax liabilities of parties who are not before

24  the Court, the employees who are not parties in this

25  proceeding.

1          There is a wealth of authority that Federal courts do

2     not allow third parties to adjudicate, to allow third parties

3     to challenge the tax liabilities of other taxpayers.  And this

4     applies even where the third party who comes in the court

5     actually would be effected by the answer to the question.

6          For example, if you have property that the Federal tax

7     lien has landed on because of somebody else's tax debt.  They

8     incurred the tax debt, then transferred the property to you or

9     what have you.  You are allowed to challenge the lien if the

10    lien is invalid or what have you anything that relates to your

11    particular place with the Government.  You're permitted to

12    challenge that.

13          One thing that is absolutely ironclad that you cannot do

14    is go and look underneath the tax assessment and say oh,

15    actually that federal tax debt was never owed in the first

16    place so therefore the lien should never have arisen.  So in

17    the case where it's crystal clear that a party has an interest

18    in adjudicating that other person's tax relationship to the

19    Government they can't do so.  It is just absolutely ironclad.

20    It has been recognized over and over by the Federal court as a

21    having a fundamental principle of how the revenue collection

22    process works.

23          THE COURT:  But aren't the cases that you rely on all

24    cases where the plaintiffs have no real stake in the situation,

25    had no real injury resulting from the tax impact on the absent

1   third party.

2        Whereas in this case the employer plaintiffs argue that

3   they are suffering injury.  You may not agree with their injury

4   analysis or that it's a sufficient injury to meet all of these

5   other threshold things that have to be met, but aren't they

6   different from the plaintiffs in the cases you cite because

7   those plaintiffs unlike these plaintiffs did not allege

8   themselves a real stake or a real injury to themselves?

9        MR. MCELVAIN:  No, I disagree with that, Your Honor.

10  There are numerous cases where the plaintiffs have alleged they

11  have a real stake.

12       Take for example, United States v. Formige,

13  F-O-R-M-I-G-E, cited in our briefs.

14       THE COURT:  Say it again.

15       MR. MCELVAIN:  F-O-R-M-I-G-E, I believe it's Formige.

16       THE COURT:  All right, it's in the brief?

17       MR. MCELVAIN:  Yes.  There, this is actually the

18  circumstance I was just describing.  There was a taxpayer who

19  owed a tax debt, who skipped the country, transferred her

20  property to her daughters and skipped the country so the

21  taxpayer was gone, but the tax lien attached to the property

22  that she had transferred.

23       The daughter was the new owner of the property subject

24  to the Federal tax lien brought a challenge saying I want to

25  litigate the underlying tax debt and I have a genuine personal

1  stake in this because if I can show that the underlying tax

2  debt does not apply, then I win.  There's no lien and I get the

3  property free and clear.

4      The Court said you're allowed to litigate the procedural

5  validity of the lien that's acknowledged, anything that has to

6  do specifically with you, but you cannot challenge the

7  underlying tax liability of the third party that is not before

8  the Court.  This is a core principle Internal Revenue code,

9  matters relating to the underlying liability are between the

10  taxpayer and the Government, not for interposition between

11  suits brought by third parties.

12      So there are numerous authorities where plaintiffs

13  actually allege that they actually had real injuries at stake,

14  but still the principle part of their suit.

15      Now what the plaintiffs have done they cite Hibbs v.

16  Winn saying oh, well there's numerous cases where suits have

17  been allowed, but their quotation was incomplete and the

18  reference in the quotation was actually to language referring

19  to constitutional challenges in cases involving State action

20  issues.  There was the Tax Injunction Act which the separate

21  statute Government and federal courts and State statutes.

22      So the principles are quite different between cases

23  where core constitutional issues may be at stake such as the

24  First Amendment or the 14th Amendment and just ordinary

25  statutory disputes over who owes what sort of liability.  As in

1    the case Charles v. UN, Levin v. Congress Energy (sic) also

2    cited in our briefs.

3          So the plaintiffs have attempted to deny that this

4    principle of not challenging the third party tax liability even

5    exist, but the case they cite for the proposition is simply

6    wrong and if you read the language we have cited very carefully

7    does not apply to this circumstance of this lawsuit in

8    particular.

9          One further point on that this rule applies to

10   particular force in a case like this where the parties are

11   trying to challenge not somebody else's tax liability but

12   somebody else's tax credit where they are trying to increase

13   the tax liabilities of third parties not before the Court.

14         An analogous case the case they cited to the Court the

15   Apache apartment case, Third Circuit where a similar case was

16   brought and somebody was trying to overturn tax credits

17   available for parties who are not before the Court and the

18   Fifth Circuit said there's very good reason we should not

19   adjudicate this.  We would set off essentially chaos in the

20   Court of the Tax Administration if we tried to interfere with

21   the principle if the taxpayers and the Government litigate tax

22   liability.

23              THE COURT:  What's the name of the case?

24              MR. MCELVAIN:  Apache Bend Apartments.

25              THE COURT:  Apache?

1          MR. MCELVAIN:  A-P-A-C-H-E.

2          THE COURT:  Got it.

3          MR. MCELVAIN:  I'll turn next to the ripeness issue.

4    For similar reasons, none of the plaintiffs have a ripe claim

5    because the whole point is, their ultimate claim at the bottom

6    is that they seek to litigate matters of their ultimate tax

7    liability.

8          THE COURT:  If you view this as an APA case, a

9    challenge to a regulation that's a final regulation, why isn't

10   that right?

11         MR. MCELVAIN:  Well, look to the Cohen case, a recent

12   en banc case of the D.C. Circuit.  Here this goes to the 703,

13   704, other forms of action argument, but I think that the

14   analysis is very similar.

15         That case involved a challenge I forget to the

16   procedures themselves of how the IRS administered tax refunds.

17   And the Court found that the case could proceed, it was an APA

18   action that could go forward.  But they were very careful to

19   say that our reasoning could apply only in circumstances where

20   the suit is basically a challenge to the adequacy of the tax

21   refund remedy itself.

22         And there's a reason that you can only apply where the

23   matter of the IRS final agency action unrelated to the tax

24   assessment and collection.  So the D.C. Circuit is very careful

25   to say where there is a matter going to the assessment of the

1   tax, you have the tax refund action that is an action that you

2   can bring under a separate forum proceeding that Congress is

3   providing under 703 and 704 the APA disclaims a pre-application

4   sort of a view of that sort of claim.

5        For similar reasons the ripeness argument goes the same

6   way.  Ultimately at bottom their claim is we're potentially

7   subject to this tax.  We should not potentially be subject to

8   tax for not qualifying.

9            THE COURT:  When do they get to ask some court to

10  decide whether or not the regulation that the IRS issued is

11  inconsistent with what Congress intended when it wrote the

12  statute?

13           MR. MCELVAIN:  After the tax is assessed under the

14  tax refund procedures that Congress provided they can come and

15  say --

16           THE COURT:  Where do they go?

17           MR. MCELVAIN:  Well they go to Federal District Court

18  for Federal claims.

19           THE COURT:  Not to Tax Court?

20           MR. MCELVAIN:  Actually this is not in our briefs,

21  but it occurred to me after writing the briefs that there may

22  be circumstances where they could go into the Tax Court if the

23  issue goes to the calculation of their income, that would be a

24  matter that the Tax Court could have.

25       There is a potential vehicle for them to go to the Tax

1  Court as well.  That unfortunately is not discussed in the

2  briefs, but they certainly have the authority to go to the, the

3  power to go to the District Court and Court of Federal Claims.

4          THE COURT:  Their choice?

5          MR. MCELVAIN:  Their choice.

6          THE COURT:  After they pay the tax?

7          MR. MCELVAIN:  After they pay the tax.

8          THE COURT:  So you can go to the Tax Court after you

9  pay the tax.  It's assessed and you don't pay it.

10          MR. MCELVAIN:  It's actually not assessed, but that's

11  a term of art issue.

12          THE COURT:  In a normal tax case somebody is taxed if

13  they don't pay it, the Tax Court decides it, right?  And if

14  they do pay it and then seek a refund, they come through the

15  District Court?

16          MR. MCELVAIN:  Right, right.

17          THE COURT:  When is this tax likely to be paid?

18          MR. MCELVAIN:  So it would be on 2014 tax returns.

19          THE COURT:  The employer's 2014 tax returns?

20          MR. MCELVAIN:  Both.

21          THE COURT:  Not 2015 but 2014?

22          MR. MCELVAIN:  It would be before the year 2014 paid

23  in 2015.

24          THE COURT:  I thought you said employees things were

25  deferred to 2014?

1          MR. MCELVAIN:  Oh, I apologize.  For the individuals

2     the 2014 tax year payable April 15, 2015.

3          For the employers it's deferred so the potential

4     liability would be for 2015 payable after that.

5          THE COURT:  So it doesn't become ripe with respect to

6     the employers until 2015 after they pay under protest a tax or

7     decline to pay a tax?

8          MR. MCELVAIN:  Correct.

9          THE COURT:  This issue is not going to get resolved

10    for a long time in your view?

11         MR. MCELVAIN:  Well, let's consider.

12         THE COURT:  And lots of people are going to be

13    effected whereas if a Court, if a Court struck down the

14    regulation, everybody would know the rules of the game after

15    they went to the D.C. Circuit and after they went to the

16    Supreme Court and all of that which would probably get us to

17    2015 anyway.

18         So they would know the rules of the game or if a Court

19    upheld your view of the regulation you would have some

20    certainty, the taxpayers would have certainty and employers

21    would have some certainty after they went to the D.C. Circuit

22    and after they went to the Supreme Court.

23         MR. MCELVAIN:  You know, I don't -- to be perfectly

24    frank, I don't think certainty is particularly lacking right

25    now.  The Treasury has made a considered view.  I understand

1   the plaintiffs have a different view.  But it's not an issue

2   given today that we have that great concern for that would

3   justify a departure from ordinary principles of when tax refund

4   actions are brought, ordinary ripeness principles that allow

5   the ordinary administration of claims courts hearing claims

6   once and only once in the D.C. Circuit.

7          Consider the hardships of the ripeness claim.  At bottom

8   Mr. Klemencic claims that he potentially faces the assessment

9   for a hundred dollar tax.  The maximum amount that he would owe

10  under Section 508, for 2014 is $100.  We cited a figure of $150

11  in our brief.  It was my error and I forgot to include cost of

12  living adjustments to that figure.  Either $150, the same

13  difference.

14          THE COURT:  So the actual penalty for not --

15          MR. MCELVAIN:  If he went without coverage for the

16  entire year of 2014, it's a maximum of one percent of his

17  income, the amount of his income that is over a certain

18  statutory threshold given his allegation that he projects

19  $20,000 of income for 2014, the amount of the threshold would

20  be, at most would be $10,000.  I cited $5,000 in my brief.  I

21  forgot to look at the cost of living adjustment.  So at most

22  one percent of his income would be $100 for 2014.  Again, the

23  number I cited in my brief is $150, I'm willing to use either

24  figure.  That's for the year.

25          It's a monthly assessment.  He could bring a test case

1  incurring one-twelfth of that amount for one month of the

2  penalty, so he would owe $12 or $8 or what have you for one

3  month of going without insurance to bring his test case.

4         THE COURT:  Under your recent analysis by the agency,

5  if he had to buy insurance, and his choices are regardless of

6  what he said under the, in his complaint originally, are his

7  choices either to buy insurance under protest or to say I

8  refuse and be penalized?

9         MR. MCELVAIN:  He can buy insurance if getting

10  insurance for free counts as buying insurance, he buys

11  insurance.

12         THE COURT:  Well, under your scenario he gets the

13  subsidy so he gets free insurance or he declines it.

14         MR. MCELVAIN:  Uh-hmm.

15         THE COURT:  Under their scenario the subsidy doesn't

16  apply because this is a Federal created Exchange and therefore,

17  he has a choice of either buying insurance for $18 a month or

18  paying a penalty in your numbers of a hundred or a $150.

19         MR. MCELVAIN:  No, a $150 dollars for a year.

20         THE COURT:  I'm sorry, for a year.

21         MR. MCELVAIN:  Correct.  So I hardly think that makes

22  out a claim for hardship which further shows the fact that this

23  claim is not ripe.

24         Their argument there is well, maybe what I'll do is I'll

25  go ahead and buy insurance anyway.  Actually, at the end of the

1  day he says we're not going to buy insurance.  But their

2  initial argument is hardship.  We're going to go ahead and buy

3  the insurance so we couldn't bring the tax refund action.

4       But the Supreme Court has dealt with claims like this

5  before Alexander v. American United said well okay, the tax

6  refund action is available to you.  You may choose not to do

7  it, but that doesn't mean that it wasn't an available remedy in

8  your choice to forego, pursue that remedy does not mean that

9  that's not available or adequate.

10      So for purposes of ripeness and for purposes of 703 and

11 704 the analysis of what other forms of proceeding are

12 available to the plaintiff, they have a remedy available.

13 There's no hardship in pursuing that remedy, the amounts are

14 relatively small.  So there's no reason for this action to go

15 forward at this time.

16           THE COURT:  Okay.

17           MR. MCELVAIN:  I would be happy to go on to the

18 merits.  I don't know how the Court --

19           THE COURT:  I thought we wanted to, you haven't

20 talked about the Anti-Injunction Act.  Let's finish your

21 various hurdles that you say they can't overcome.

22      If they don't have Article III standing, you win your

23 motion to dismiss, right?  If they don't have prudential

24 standing, you win your motion to dismiss, right?

25           So I think we should go through each of these arguments

1   that you may hear from Mr. Carvin on the other side about those

2   issues before we get to the merits, except to the extent that

3   the merits are relevant and they may not be relevant to any of

4   those arguments.

5            MR. MCELVAIN:  So turning to the Anti-Injunction Act.

6   The Anti-Injunction Act 26 U.S.C 7421 bars the claim of the

7   business claim.  At the end of the day what their business

8   plans are arguing is we're potentially subject to the Section

9   4980H tax.  We don't want to be subject to that tax.  The

10  Anti-Injunction Act says you cannot proceed on that claim.

11           Now a knowledge of the Fourth Circuit has said that the

12  Anti-Injunction Act would not apply to a 4980H challenge, but

13  we respectfully disagree with that Court's reasoning.  Because

14  4980H specifically used the word tax to describe the assessment

15  that it was creating for large employers who don't provide

16  sufficient coverage to their employees, and the use of the term

17  tax is quite important.

18           That was the reasoning that was important to the Supreme

19  Court NFIB in its discussion of 5000A that that particular term

20  had not been used in 5000A.  4980H is quite different, it uses

21  the phrase specifically, that same terms it appears elsewhere

22  in the Internal Revenue Code.

23           THE COURT:  Let me just interrupt you for one second

24  because I want to make sure that I got this in my mind

25  correctly.

1          You say you disagree with the Fourth Circuit.  Is it

2   that you disagree or that the situation presented here is

3   different from the one presented to the Fourth Circuit?

4          MR. MCELVAIN:  With respect to the Anti-Injunction

5   Act in particular, if this Court follows the holding of the

6   Fourth Circuit then, then that would answer our Anti-Injunction

7   Act argument.

8          So we are not distinguishing Liberty University.  We are

9   saying that we respectfully believe that the Fourth Circuit was

10  wrong in that respect.

11         THE COURT:  Let me ask this question then.  Because

12  if that's your analysis, that's a fine approach.

13         So the Supreme Court dealt with the individual mandate,

14  right.  And the Chief Justice's opinion explained why the

15  Anti-Injunction Act did not bar the case from going forward.

16         The Fourth Circuit dealt with the employer mandate and

17  because the phrase assessable payment was used throughout

18  except in two situations, one of which they said they didn't

19  fully get or understand the other which they distinguished or

20  said well, just one passing reference is enough.

21         This case involves a premium tax credit and so one way

22  to think about the Anti-Injunction Act, unless I'm just not

23  understanding the Fourth Circuit's opinion and its interplay

24  and reliance upon the Supreme Court's decision, is that because

25  this case is talking about a premium tax credit which is a tax

1   credit, not a penalty credit, not an assessable payment credit

2   that and uses the word tax every time it talks about tax

3   credit, i.e. a credit against taxes, why isn't it a simpler

4   argument for you to make than saying the Fourth Circuit's

5   decision applies but we disagree with it?

6          Now you guys both you and Mr. Carvin and his team

7   understand the statute a lot better than I do at this point.

8   So I don't want either of you to sort of lead me astray into

9   some thinking that just doesn't make any analytical sense

10  regardless of which side of the issue you are on.

11         MR. MCELVAIN:   Right.   I think we do need to go to

12  the next step and look at what the actual ultimate purpose of

13  the plaintiffs' pursue is.   The business plaintiffs are

14  attacking the premium tax credit, they don't want the tax

15  credit to be issued, but the ultimate bottom line is to claim

16  the Article III standing is something that leads to this tax

17  being assessed against them.

18         If it were only the tax credit, then one difficulty the

19  Government would face would be getting around the language of

20  Winn which does not involve the Tax Reduction Act

21  distinguishing challenges to tax creditors versus challenges to

22  taxes.

23         So we can't stop there with the analysis but at the end

24  of the day, it doesn't matter the Government's position because

25  you look at what the ultimate bottom line is for the particular

1   claimant bringing the suit and the ultimate bottom line for the

2   business plan that is they don't want the 4980H tax assessing

3   and we do respectfully submit that the Anti-Injunction Act

4   doesn't apply to the 4980H Act, the Fourth Circuit contrary

5   ruling notwithstanding.

6       The 4980H does use some of the terms to describe the

7   amounts that would be assessed against the businesses, but it

8   also describes those terms as taxes and that textual use of the

9   term tax is very, very important under the NFIB in an uncommon

10  sense. The Anti-Injunction Act itself refers to any tax, any

11  challenge, any suit for the purpose of restraining, any tax.

12  Section 4980H imposes a tax, so it is one of the imminent taxes

13  in the Internal Revenue Code that the Anti-Injunction Act

14  refers to.

15      One further point with respect to the Fourth Circuit's

16  reasoning.  They thought well, it would be anonymous.  Why

17  would Congress have one rule for 5000A and another rule for

18  4980H.  But in fact, there are no restrictions on liens or levy

19  or holding power applies to the 4980H tax unlike 5000A which

20  had some limitations on collections and given that one very

21  important purpose of the Anti-Injunction Act is not to restrain

22  those sorts of, those sorts of collection powers and makes

23  sense for Congress to treat the two differently.

24      If I could make one point.  Earlier the Court referred

25  to the individual mandate, an employer mandate.  I just wanted

1  to make a notation that I understand that that's common

2  terminology that's been used, popularly referred to, but in

3  fact they are misnomers.  There is no such thing as individual

4  mandate tax.  You either carry the qualifying insurance or you

5  pay a tax.

6       Same thing with the employer provision.  There's

7  absolutely no provision that says you must offer insurance.

8  You either offer qualified insurance or there's a tax.  It's

9  popular terminology to call mandates, but there really is not

10 that's the way the statute, either of the two statutes operate.

11      I would also like to turn to the indispensable parties

12 question also relates to the claims of the business plans.

13 What the plaintiffs argue well, there's no indispensable

14 parties here, we don't need the employees here because this is

15 like a public rights case and there is a law established that

16 says in public rights cases you don't need to bring any absent

17 parties.

18      But this is not like the typical public rights case

19 where you are seeking to adjudicate the rights of millions of

20 parties.  Their claim is much more specific than that.  Take

21 the claim of GC Restaurants, the one business plan who

22 attempted to show their standing.  Their claim is specifically

23 we have 18 employees at our Golden Chicken Quick Service

24 Restaurant who would get the credit who we want to distinguish

25 those 18 employees so as to protect ourselves from possibly

1    owing the employer tax.

2        So there is a very specific identifiable discreet set of

3    people whose rights are at stake under the plaintiffs' theory

4    of the case, who we submit their rights can't be adjudicated

5    here.

6        But if somehow their rights could be adjudicated, it

7    would be fundamentally unfair for them for this case to proceed

8    in their absence.  So for that reason there is an indispensable

9    parties issue with respect to the business plans.

10       And with that I would address special issues.

11       Should we move on to Mr. Carvin for the merits?

12       THE COURT:  Yes, I think it makes sense.  What I

13   would like to do unless either of you think, let's get through

14   all of the issues with respect to the motions to dismiss.  Then

15   we'll take a break for ten minutes or so for the Court

16   Reporter's sake as well as for ours and then we'll come back

17   and talk about the preliminary injunction.

18       MR. MCELVAIN:  Very well.

19       (Brief recess.)

20       MR. CARVIN:  Good morning, Your Honor.  I will start

21   with Mr. Klemencic, the individual plaintiff standing for a

22   number of reasons.  If you find that he has standing you need

23   not even address the other party's standing.

24       I would like to begin by correcting the statement of

25   Government counsel.  He said that our initial theory or in

1    Klemencic's declaration was that he wanted to buy catastrophic

2    coverage.   The declaration that's attached to the opposition to

3    the motion to dismiss by Mr. Klemencic on page 2, first full

4    sentence says quite clearly, the certificate of exemption would

5    entitle me to purchase catastrophic insurance coverage or

6    forego all coverage without any fear of incurring a penalty.

7    So he was not clear at that time what he was going to do.

8         Then they came out with the rates and in the reply in

9    his declaration that we attached to the preliminary injunction

10   reply, he made it clear that having seen the rates he's decided

11   to forego all coverage.   He's taking catastrophic off the

12   table.

13        So the dilemma for him is quite clear.   The subsidy,

14   because of the subsidy he will be forced to engage in a process

15   and engage in a contract with an insurance company that he

16   neither needs nor wants.

17        Now that will cost him out-of-pocket.   But I want to

18   emphasize and for reasons I'll get to in a moment, but I don't

19   think that that's essential for his standing because after all,

20   his freedom, he is being compelled to engage in activity.   He

21   has got to go through the incredibly torturous process of

22   trying to get insurance in West Virginia which is apparently

23   impossible and will certainly involve at least weeks of effort.

24   And he will then be forced to contract with an insurance

25   company that he doesn't want to.

1          Now the Government says well, all of those problems are

2     cured by compelling to engage in activity that you don't want

3     to.  Because we'll pay for your insurance at the end.  But that

4     doesn't make any sense.

5          They can't cite one case where compelling American

6     citizens to engage in activity that is beyond the statutory

7     authority doesn't give rise to injury.  For example, let's

8     assume the IRS said clear as could be anybody who makes less

9     than $30,000 doesn't even have to file a tax return.  And the

10    IRS said no, everybody that makes 10,000 has got to file a tax

11    return.  Now forcing you to file a tax return that you don't

12    want to exceeds the statutory authority business necessity the

13    injury that the statute was designed to avoid forcing you to

14    file a tax return if you -- let's assume that the law said you

15    don't have to file a tax return and the reg said you did.

16               THE COURT:  Okay.

17               MR. CARVIN:  It would still be requiring you to

18    engage in activity.  At the end of the day, the IRS couldn't

19    say we're not going to take any taxes, it's the filing of the

20    return.  Perhaps the best example of that the cases that the

21    Justice Department is currently involved with the Voter ID

22    registration.

23          In North Carolina for example, it doesn't cost you any

24    money out-of-pocket.  They'll give you the ID for free, but the

25    Justice Department has argued all of the effort that it takes

1   you to get your birth certificate or to go to the office to get

2   the voter ID is sufficient injury to actually violate the

3   constitution, violate the Voting Rights Act.

4          Well, if it's sufficient to rise to the level of

5   unconstitutional deprivation of the right to vote, then surely

6   it's cognizable arguable injury.

7          In terms of the financial problems, even if you assume

8   their latest 11th hour revision of what they said when they

9   switched to $18 to zero, the truth is that Mr. Klemencic even

10   under the newly revised theory is probably going to have to pay

11   out-of-pocket and certainly runs a direct risk of that.  They

12   are forcing him to gamble with his own money.  Why is that?

13          Because the way the statute works is that the subsidies

14   are given to you on what income you project for 2014.

15   Mr. Klemencic is a floor, he does odd jobs.  It's not like he

16   can identify on a GS 12 I'm going to be making this much.

17   Well, he projected $20,000.  Well, if in fact he makes $21,000

18   then under the statute they can come back and get the subsidy

19   back.

20          And for reasons that I could present to you even if he

21   makes $21,000, even under the newly constructed theory, he

22   would have to pay out-of-pocket.  So it's a razor thin argument

23   that they are making that he doesn't have to pay.  If it's

24   already with you I'll give to opposing counsel and you just did

25   the calculations.  These are my calculations, Your Honor, I'm

1    trying to help you out the best I can with these.

2            THE COURT:  Thank you.

3            MR. CARVIN:  I'll frankly just refer but the bottom

4    line of what you need to see is both based on declaration 1018

5    the last Friday 11th hour if he has actual income of $21,000,

6    he would be paying 390 a month and it goes up 25,000 he would

7    be paying $600 a year.

8            THE COURT:  So basically if he is doing these odd

9    jobs if that's what he does, if he makes, he would like to --

10           MR. CARVIN:  He sure doesn't want to stop at 20.

11           THE COURT:  -- he would like to make more so if he

12   gets $25,000 of work in a year, it goes from zero all the way

13   up to $51.

14           MR. CARVIN:  Exactly.  These are figures straight out

15   of the HHS website.

16       I guess the point is that he does have to pay $18 a

17   month.  The declaration they filed on September 27th made it

18   clear that he had to pay $18 a month.

19       They are now coming to this Court and said that new data

20   is available, and they had to revise their estimates.  They

21   haven't identified what date is available and I can assure the

22   Court there is no new data that existed between September 27th,

23   virtually the day before they went on line for October 1st and

24   today.  They haven't identified anything.

25           There's one insurer, health form in West Virginia.  It

1   put in its rates in May which is the statutory deadline, so

2   there's no new information.

3          The other thing that the Court should be aware of the

4   reason they have been able to up their notion of how much a

5   subsidy Mr. Klemencic gets.  Again I apologize for this, this

6   is minor.  But the subsidy is tied to the second lowest cost

7   Silver plan offered in West Virginia, okay.  If the cost goes

8   up, then the subsidy goes up.

9          They solemnly assured you under oath on September 27th,

10  the second lowest cost was $438 and 44, and therefore, the

11  subsidy was so small that he was paying $18.  Then they come in

12  last Friday evening and say, you know what, jumped up $25 a

13  month.  Somehow the second lowest cost is now $463.  That's

14  what Mr. Mole swore to you under oath.

15         If you go on to HHS website as we did Friday morning and

16  this morning, it has the number in the September 27th Mole's

17  declaration.  That says the second lowest cost plan is $438,

18  not the 463 that they have newly invented.

19         So either Mr. Mole and HHS is misleading the American

20  public.  They have also told you how to calculate premiums on

21  the basis of this 438 number or they are misleading the Court.

22         I can give you both the website as of today from the

23  office that Mr. Mole is in, and if you go down to grading area

24  ten, grading area ten it said, Mole said ten, but it doesn't

25  matter, either for 9 or 10.  If you go to the second lowest

1  cost silver QHP, do you see that in the lower right hand

2  corner?

3          THE COURT:  Yes.

4          MR. CARVIN:  It says 438, 44, that's the number that

5  was in the September 27th Mole's declaration.  So there's no

6  date.  Mr. Mole just woke up one day in consultation with the

7  Justice Department, decided to ratchet up the second lowest

8  silver plan to 463, so that they could make this argument about

9  how there's no out-of-pocket cost.

10         He also swore under oath that this information was

11 provided on the West Virginia Health Exchange to everybody,

12 that they were told on October 1st that the second lowest price

13 had gone up.  That's not what the HHS website says but they

14 also have to answer two questions for this Court.

15         What happened between September 27th and October 1st

16 that they implemented this last minute change, and if they did

17 implement this last minute change, why did they wait three

18 weeks to the eve of this hearing to alert us and Your Honor

19 about this change?  So no, there's no change in data.

20         What there is, is that Mr. Mole has made a litigation

21 specific decision to completely depart from what HHS policies

22 are, what HHS public policies are in a feeble effort to defeat

23 standing here.

24         And even if as minimum as you point out that's a

25 disputed fact that can't be resolved on a motion to dismiss.

1   Moreover, I think it can be rejected out of hand given the

2   obvious manipulation.

3         But finally, even if you accept all of this as true, it

4   will reconfirm Klemencic's disinclination to launch and expect

5   them to produce the subsidy.  Because it's not only whether he

6   makes 21 or $25,000, they may wake up tomorrow and go back to

7   434 and which is on the HHS website and then he can be on the

8   hook for $18 a month.

9         So the key point is you have cognizable Article III

10  standing.  If the Government shifts you from a guaranteed no

11  payments to a contingent liability, that's Clinton versus New

12  York, that's the line.  New York has a dispute with HHS where

13  maybe they have to pay, maybe they won't.  Congress passes a

14  law says no, you don't have to pay.

15        President Clinton vetoes that and therefore, it comes

16  back in.  So they took, they had standing to challenge that

17  because the line on the veto took them from a certainty of no

18  payment which is the situation that Mr. Klemencic is today to a

19  situation where we might possibly have to pay down the road and

20  that contingent liability is enough to create standing.  There

21  the only standing was that this would effect their financial

22  planning.  Here they can go out and get insurance and make a

23  contractual commitment, so he's got a standing here.

24        Unless Your Honor has questions I'll switch to the

25  prudential standing issues.

1    Again, with regard to Mr. Klemencic.  They make the I'll

2  use the term silly argument.  If you disagree with the agency

3  on the merits, you can't challenge the agency.  So the only

4  people who can challenge the agency are people who agree with

5  them on the merits and therefore of course would never sue the

6  agency.

7    They say Congress was interested in making a subsidy

8  affordable in federally established exchanges.  We say on the

9  merits that's not true.  Well, you can't accept their view of

10  the merits and therefore deny us our ability to make the

11  argument which is why of course for standing purposes you have

12  to accept our view of the merits.

13    Beyond that inherently silly argument, they make the

14  argument that Klemencic is somehow not effected by the subsidy.

15  But he is subject to the subsidy.  He is subject to the subsidy

16  that triggers the individual mandate.

17    And every case Clark, ADP says if you're subject to, to

18  the subject then obviously you're within the zone of interest.

19  D.C. Circuit takes extensions that it's absurd to argue you're

20  not in the zone of interest if you're effectively regulated by

21  the statute which he is.  He is being given the subsidy he

22  doesn't want because it forces him to engage in the activity

23  that he doesn't want to.

24    Obviously it is tied to the individual mandate, but the

25  subsidy is subject to him. If you look at the individual

1  mandate as even the Government agrees if the provision is

2  intricately related to the provision you're challenging, then

3  you're also within the zone of interest.  So this argument

4  simply has no legs.

5       I will digress as a zone of interest at this point they

6  make the same argument how the businesses are not, are not in

7  the zone of interest.  I will come back to this.

8       It is true that the businesses are saying we will be

9  subject to the employer mandate penalty if any of our employees

10  go on the Exchange.  And therefore, they are not interested in

11  hurting employees, we keep calling tax credits, they're

12  subsidy.  The way this works the Treasury cuts a check right to

13  the insurance company, people never see it.  It's not a tax

14  credit in terms of their, it's a straight monetary transfer.

15       The reason they're challenging the subsidy is because

16  the enforcement scheme that the act did says if one of your

17  employees goes out and get a subsidy then this employer mandate

18  kicks in with respect to everybody.  Then you have to pay the

19  enormous penalty if you are offering insurance.  So the

20  relevant point is we are directly effected by the enforcement

21  of the scheme.  It is as they say interrelated.

22       The tax we will have to pay, the penalty we will have to

23  pay is a direct consequence of one of our employees getting the

24  subsidy.

25       And the key point that I emphasize is that's how

1    Congress chose to enforce the law.  They said look, we are

2    going to enforce the law.  We're going to hang this sort of

3    damages over all employer's heads because we know they will

4    never run the risk that one of their employees won't get the

5    subsidy, so this will force them to give their employees

6    insurance and that's their injury.  So they are clearly within

7    the zone of interest.

8         As to the timing of this suit, I have two points.  They

9    are actually a little modest about how long this will take.  As

10   I understand the scheme, what Mr. Klemencic has got to do, he

11   has to go to HHS, can you give me a certificate of exemption in

12   complete violation of your reg with the IRS.  And then they

13   will say no.

14        Then he has got to wait until April 15th, 2015 if he has

15   chosen not to comply.  Of course, if he has suffered that, then

16   he has got to pay them.  Then for this $150 he is going to go

17   through the entire procedure and then eventually wind up in Tax

18   Court or some other place in like 2016.

19        Then by the time he gets to the Supreme Court it will be

20   2018.  Add a year to that for each one of the employee mandates

21   because they won't have to declare until April, 2016 and that's

22   how they think we should resolve whether or not a regulation is

23   basically in conflict with the statute.  Well, of course not.

24   The law is fairly clear.  There's not a case out there as of

25   last, that doesn't say this a para-dynamic example of when

1   District Court needs to decide the process.

2        When the Government has created a dilemma for the

3   system.  The citizen can either comply in which case he never

4   gets to go to the tax refund right, because he's done the

5   insurance or Mr. Klemencic bought the insurance or his employer

6   has provided the insurance or he can run the very serious risk.

7   The word sacrales potential risk in CBCE, it was any risk

8   potential of not winning, and then he has to pay.

9        Well, they say we don't put people to these choices.

10  It's better for the Government and for the plaintiff to know

11  before whether or not they have to comply.  After all, because

12  this will create enormous coercive pressure on people to comply

13  and then never have this tax refund suit that they keep

14  hypothesizing.

15       That's a general rule.  The specific rule is NFIB.  NFIB

16  came into Court, challenged the individual mandate.  They could

17  have gone through this bizarre procedure where they --

18  remember, if you will, they conceded that Mr. Klemencic is not

19  subject to the AIA.

20       After the Court decided the AIA didn't apply to them, it

21  didn't say well, you know, we really can't decide this now.

22  We're going to make everybody pay their taxes, everybody come

23  back to us in four years, we'll figure out whether or not the

24  individual mandate is law.  So we know in this special

25  circumstance it is not the law.

1          They made the argument that with regard to paying this

2    tax so the normal rules for pre-enforcement with regard to

3    paying it's just the opposite.  They have, Congress has told

4    you when you shouldn't decide pre-enforcement review.  They

5    have enacted the Anti-Injunction Act.  If you are outside the

6    Anti-Injunction Act, then obviously the Anti-Injunction Act was

7    not a nullity, you don't have to go through this Court through

8    this process of getting a tax refund.  They seem to think that

9    the AIS doesn't mean anything.

10         There's some rule out there that you have a tax refund

11   and they can't explain why Congress bothered to pass the AIA in

12   the first place.  That's why I was talking initially about

13   Mr. Klemencic.

14         Now I'll switch to the businesses, right. They keep

15   saying that they can do this tax refund suit that is not ripe.

16   But the businesses will never engage in an action refund suit.

17   You have a declaration from GC and Olde England.  They're not

18   going to run this risk.  They're going to give, they're going

19   to comply.

20         Under the D.C. Circuit's decision in State Farm, if it's

21   reasonable that you're going to comply, then you're ripe now.

22   They will never have a tax refund suit because they're not

23   going to make this enormous gamble.  Again, in that regard I'll

24   emphasize that it was obviously reasonable for them to comply

25   since that is what Congress contemplated.  Again, that's how

1  they triggered the employer mandate is whether or not one of

2  your employees will actually go to Court.

3       I would like to point out that even if you look at it

4  the wrong way.  Even if you don't say the real injury here is

5  the compliance cause, the real injury here is the tax, right. I

6  think we keep saying which we're never going to pay.  Even if

7  you make --

8       THE COURT:  You are saying the real injury to the

9  employer is compliance cost?

10       MR. CARVIN:  That's exactly right.  They're going to

11  comply, cost them a lot of money to provide insurance.  That's

12  the injury.  It's not not complying and paying the taxes.

13  They're not going to do it.

14       But even just very quickly, if you hypothesize that they

15  are going to pay the tax we still have a ripe injury today and

16  I'll go back to my Clinton example, right.  Right now they're

17  facing a very serious risk of a contingent liability.  Will one

18  of their 18 employees who is completely eligible for a subsidy

19  go to the, go get it.

20       Well, why wouldn't they get it?  Of course they're going

21  to get it.  So we have a very serious contingent liability that

22  they will do it and then we will be hit with the taxes.  And

23  the test is even under Clapper is substantial risk.  Nobody can

24  reasonably argue particularly at this stage in the litigation

25  that there's not a substantial risk that one of the 18

1   employees is going to go get free federal money for an

2   important health service.  So obviously, we've satisfied the

3   standing and ripeness for the employers.

4        Then they say, you know, we have got a ripe controversy

5   and we're suffering injury today, you can't address it because

6   under the APA if you invalidate a reg that the plaintiff is

7   challenging that somehow doesn't regress their injury.

8        If you tell HHS, IRS that they can no longer provide

9   subsidy in these states, you haven't entered an injunction on

10  these 18 employees.  You have regressed our injury, you have

11  told us we don't have to pay the tax, we don't have to pay the

12  mandate so we're done.

13       Now you don't have to reach out to these 18 employees

14  and tell them not to go to HHS for the subsidy because you have

15  already told HHS the subsidy is not available.

16       Under their theory we could never decide a APA case

17  because all public laws effect people that are not before the

18  Court.  But under their theory, when the states challenged the

19  medicaid provision, apparently the Court there had to join

20  everybody who gets medicaid or who would get it increased

21  medicaid and enjoined them from not asking.

22       No, everyone understands in the real world if a Federal

23  Court says to an agency this is not available, this is not a

24  reasonable interpretation of the statute, then it's done.  The

25  controversy is over.

1    They say well, okay, all you are doing is invalidating

2  the reg and then somebody can sue under the statute.  I don't

3  even understand that.  If you invalidate the reg, it's

4  precisely because it's not a reasonable construction of the

5  statute.

6    Our argument is so that this is so unambiguous under the

7  Chevron prong one, no rational person could interpret State to

8  mean Federal.  And if that's the reason that will be cited to

9  them when they try to convince a Federal Court de novo to

10  interpret State to mean Federal.

11    And this is, the cases are legion are all cited in our

12  brief.  Kickapoo makes this clear.  There's no inconsistency,

13  no chance for impermissible judgments for the reason I just

14  said, so that really doesn't work.

15    Then they with the businesses they pull out two

16  additional arguments to justify the businesses.  The first is

17  they invent this rule that you can't, that there's an absolute

18  rule even if you satisfy all of the Article III and prudential

19  requirements that are normal.  There's some rule that you can

20  never complain about a third party's tax liability.

21    Well, I get the point.  There's a lot of cases out there

22  that say, listen like the case they cite tax analyst.  If

23  you're a domestic oil supplier and you think they are treating

24  foreign oil suppliers better, you can't come into Court and

25  complain about some stranger's taxes that doesn't effect you

1  except, you know, perhaps competitive disadvantage.  It doesn't

2  effect your relationship with the Government, right.

3        But again, that's, we're not trying to reduce, the

4  businesses are not trying to reduce their employee's tax

5  liability.  They are trying to stop them from getting the

6  subsidy because it triggers their own tax liability.

7        It's not as if we are strangers to the employees.  This

8  is the mechanism, this is the direct causal connection that is

9  set up in the statute and they recognize this.  We recognize

10 this.

11       We cite Hibbs which says people can always complain

12 about third party taxes if it satisfies the normal Article III

13 requirement.  Today in their reply the Government says oh, no,

14 Hibbs was referring to constitutional challenges, federal

15 statutory challenges for some reason has a different rule with

16 respect to third parties.  And they cite the Levin case for

17 that.

18       They never explain why there's two different Article

19 IIIs, one for constitution and one for the statute and Levin

20 doesn't remotely state that.  Please read the case.  Levin

21 didn't involve a federal statutory challenge.  Levin involved a

22 constitutional challenge.

23       The Court there said look, what they were trying to do

24 in Levin was get to raise somebody else's taxes, right.  They

25 are saying it's a State tax, raise their tax in Ohio.  And the

1  Court said look, if you are dealing with like an establishment

2  like clause case where you are saying deny them a tax

3  exemption, then that's one thing that the State can do.  If you

4  are getting involved in raising somebody else's taxes, that's

5  something that we are going to defer to the State courts, after

6  all, it's a State tax issue.  But there was never a federal tax

7  issue in Levin.  So they just completely made up this rule.

8      Then today they tried out this Formige case and talk

9  about taxpayer liens, right. They say look these people have

10 direct property interest and they can't get involved. That's

11 because there's a specific statute governing taxpayer liens.

12 It says exactly what counsel tells us.  If you challenge the

13 lien, you can't challenge the assessment.  That is the statute

14 that is specific and doesn't apply here.

15     The argument quite frankly on Cohen in the D.C. Circuit.

16 I am not trying to be sarcastic, I generally don't understand.

17 If you read the cases and AIA, an anti-injunction case which

18 again their argument holding apart from the Anti-Injunction Act

19 this third party rule applies.  So it's clearly our case not

20 there.

21     Finally, I will turn to the Anti-Injunction Act.  And I

22 do think the case if there was any confusion in prior colloquy

23 we completely agree with what the Government said.  With

24 respect to Mr. Klemencic, they agree that the Anti-Injunction

25 Act doesn't apply because he's challenging these premium tax

1  credits.  And again, we keep calling them tax credits.  They

2  are a check from the Treasury to the insurer.

3       So they agree that the premiums tax credits are outside

4  the Anti-Injunction Act because of the Hibbs case which my

5  colleague correctly cited which says that you can't challenge

6  tax reductions which that's at footnote page 7.

7       Of course, it makes sense right because the AIA says you

8  can challenge the assessments of collection tax, right.  They

9  want to stop you from preventing money to go into the Federal

10 Treasury.  Here we are in an odd position.

11      We are trying to prevent money coming out of the

12 Federal Treasury and the Anti-Injunction Act doesn't apply.

13      With respect to the business claims they do make the

14 argument not again with the tax credit or the subsidy but about

15 the employee mandate tax.

16      First of all, I'm not going to, you have already

17 obviously read Liberty University.  We rely on their analysis

18 of the statute which seems to us to be at least a first cousin

19 if not the twin of the court's analysis in NFIB.  I also point

20 out in Holly Lobby the Tenth Circuit had a similar challenge

21 the contraceptive mandate.

22           THE COURT:  Right.

23           MR. CARVIN:  It was also effected by the employer

24 mandate.  In that case it is conceded that the Anti-Injunction

25 Act didn't cover it.  So A, the Anti-Injunction Act says you

1  can't bring suits for the purpose of restraining the assessment

2  and collection of taxes.

3       And the Fourth Circuit have already said that that's

4  not a tax so it doesn't apply.  Even if you disagree with that,

5  I would like to make a point that the purpose of our suit that

6  the business claim purpose of the suit is not to stop this

7  employer mandate.  Well, they have joined the complaint.  They

8  have the same complaint as the individual plaintiffs.

9       The purpose is to stop the subsidy.  They have agreed

10 that the individual plaintiffs are not challenging anything

11 about the tax credits.  Obviously, the business plaintiffs

12 can't have a different purpose in the same lawsuit as the

13 individual plaintiffs.  It's the same complaint.  And the

14 purpose of their lawsuit is not to stop the collection of the

15 employer mandate.  It is to stop the subsidy which triggered

16 the employer mandate.

17      Now why do they care?  Sure, the reason they care, the

18 reason they have Article III injury is because of the employer

19 mandate.  But that's their motive.  That's their interest.

20 It's not the purpose of the suit.

21      The purpose of the suit is to stop it and that's why it

22 completely distinguishes Bob Jones which I think they have

23 stopped relying on.  There Bob Jones University was trying to

24 restrain collection of taxes, the taxes of people who are

25 making contributions to this tax exempt university.

1          Are there any additional questions?  I believe I have --

2          THE COURT:  I think I am very clear.

3          With respect to standing, so long as a single plaintiff

4     has standing, then the motion to dismiss can't be --

5          MR. CARVIN:  Correct.

6          THE COURT:  -- based on that.

7          But with respect to what we have just been talking

8     about, the Anti-Injunction Act, I do have to, even if Mr., even

9     if they concede that Mr. Klemencic has, that they, that the AIA

10    does not apply to him, I still have to deal with the AIA claim

11    with respect to the business plaintiffs or else I would wind up

12    granting their motion to dismiss in part.

13         MR. CARVIN:  But I think that's the key message.

14    There is no such thing as -- the question is whether you have a

15    judicial case that Congress has not included through the AIA.

16    They say if you have got one plaintiff in front of you, you can

17    decide the case.  Why spend a lot of energy figuring out the

18    other plaintiffs.  Again, Klemencic is asking for the same

19    relief.  You won't get into any different merits issue or

20    anything else.

21         THE COURT:  I want you to answer this question and

22    then I want Mr. McElvain to answer the question.  Some of these

23    predicate issues are harder to wrap your mind around than

24    others.

25         So if I were to conclude that Mr. Klemencic had standing

1   both Article III and prudential standing, is that all I have to

2   decide and the case goes forward?

3          MR. CARVIN:  Yeah.  The thing about it, let's say Mr.

4   Klemencic just come in himself.  You do go ahead and decide the

5   case.

6          The fact that he had some free riders lagging behind him

7   doesn't effect your ability to adjudicate the case, right.  So

8   I don't think that the Court is in a different position simply

9   because there are tag along plaintiffs.  If you want to decide

10  business plaintiffs, I think we have got a great argument.  I'm

11  just saying look, anything is true from this morning it is kind

12  of complicated.

13         THE COURT:  And we haven't gotten to talk about the

14  statute which is really straightforward.

15         MR. CARVIN:  In all candor, we need a decision right

16  away.  Mr. Klemencic is arguing irreparable injury in the PI

17  motion.  So yeah, we're focusing our effort on him.  We have

18  got to show you that he has an irreparable injury and they get

19  to the merits for the PI.

20         We don't want the Court to take these needless detours for

21  the time and complexity unless the Court thinks it needs to

22  decide to exercise the power to adjudicate and I don't think

23  you do.

24         THE COURT:  Okay.

25         MR. CARVIN:  Thank you.

1          THE COURT:  Mr. McElvain.

2          MR. CARVIN:  I'm sorry.  One other point just to

3    belabor you with one last, it's just a piece of paper.

4          It's not just that the HHS website has the second lowest

5    cost Silver plan I have.  Their current pronouncement on the

6    website tells people that's how you calculate the tax credit.

7    It tells people like Mr. Klemencic that's how you do it and I

8    would like to hand that piece of paper up.  The one piece of

9    guidance on that because I know these numbers are mind numbing

10   if you turn to page 8 of what we have handed up.

11         You don't have to do it now, but if you'll note when it

12   talks about West Virginia on page 8 of the HHS website, it's

13   got, it's got the tax credits for the lowest Silver before tax

14   credit which is 218 and that's the same as the lowest Silver.

15         So again, the point I'm trying to make, I know it's

16   complicated, it's not just that the declaration that was filed

17   on Friday contradicts what HHS says is the second lowest cost

18   Silver plan.  It also contradicts HHS precise guide for people

19   like Mr. Klemencic on how they are suppose to calculate their

20   tax credit or subsidy.

21         THE COURT:  Thank you.

22         MR. CARVIN:  Thank you.

23         MR. MCELVAIN:  Your Honor, with respect to the issue

24   of Mr. Klemencic's Article III standing just to be clear.  The

25   declaration filed September the 27th was based on the

1  information available.  Calculations were not yet complete at
2  the time.  They were still working to finalize the numbers.
3       Now that we have the final numbers we have the new
4  calculations for you which are in the supplemental
5  calculations.  We would have loved to file the declaration
6  before October 18th.
7       Recent events basically prevented us from doing so as
8  the Court is aware.  There were limitations on what the
9  Government could do over the last couple of weeks.  But this
10 entire dispute is simply irrelevant.
11      I am totally willing to use the $18 figure, that's fine
12 with me.  I am willing to accept the $18 figure and the
13 analysis has not changed at all.  The point is that Mr.
14 Klemencic at one time at least was willing to buy catastrophic
15 insurance at some price.  If there is any doubt of that, look
16 at the last declaration ECF docket 31 paragraph one, the actual
17 insurance costs were not available, so I could not determine
18 with certainty at that time whether I wanted to forego all
19 coverage or purchase catastrophic coverage.
20      So he was willing to purchase catastrophic coverage at
21 some price.  Now that the numbers are in, and he can get the
22 Bronze's coverage, better coverage for zero or for 18, again,
23 I'm willing to use the $18 figure, that's fine.  All we need to
24 do is apply common sense and say well, if he was willing to buy
25 catastrophic coverage for something, he would be willing to buy

1 better coverage for the $18.

2        And the only reason that he's not willing is what he

3 said in his earlier declaration which is I object to Government

4 subsidies, I do not want to participate in a program where I

5 get subsidies.  Fine, he believes that.  I am willing to credit

6 that's his sincere belief.  But that's a pure generalized

7 grievance.  Simply the fact that you object to the fact that

8 the Government is giving you something is not the sort of

9 injury that states a cognizable injury that gives you an

10 Article III standing.

11        So the bottom line is he is getting a much, much better

12 terms than what he was willing, any plausible reading of the

13 pleadings much, much better terms than what he had at the

14 outset was willing to agree to and that's why he doesn't have

15 Article III standing.

16        THE COURT:  What is the other argument that was

17 mentioned in the brief that -- I have to look back and see

18 whether it will be standing, that is sort of the liberty

19 interest or the freedom that if somebody is forced to enter

20 into a contract that he doesn't want to enter into and takes

21 certain kinds of action that is sufficient to rise essentially

22 to constitutional infringement on his liberty or freedom and

23 that's a sufficient injury in some circumstances for Article

24 III standing.

25        MR. MCELVAIN:  But again, we have a plaintiff who was

willing to buy catastrophic coverage, so at some price he was

willing to pay for some figure coverage.  Now that he knows

that the Bronze coverage is available for a 0 or the 18, the

$18 figure, the bottom of their claim is not I have this

absolute in all circumstances objection to insurance because I

-- it's that I was interested in buying this kind of coverage,

but if you put the label Bronze coverage on it, then I don't

want it with the preemptor with the Affordable Care Act.  I

don't want it.  That's why it's just purely a generalized

grievance.  It's an ideological objection to receive a coverage

because it has a certain name attached to it rather than a true

Article III injury or a true cognizable injury.

        The other thing they said with respect to standing now

we reject that it might project earning in a year may be

$25,000.  That is true, that may effect the cost of the credits

at the end of the day.  But again, we are nowhere near the

point where you can plausibly think that the claim that he

would not have wanted the catastrophic coverage at that time.

        If he had come in the beginning and said I will never

buy insurance.  I have this absolute ideological objection to

buying insurance, then we might have a different set of

circumstances.

        He said I'm willing to buy catastrophic coverage if the

price is right but now you are telling me that even covers

available coverage for $18 and even if you take in the fact

1   that at the end of the day that might actually cost him $25 or

2   $40.  I think you have to apply a certain level of plausibility

3   that his real objection here is not the cost of the coverage.

4   His real objection is that he has an ideological objection to

5   receiving subsidies and that is slimily not an Article III

6   injury.

7        It's very like in the Connell case where the plaintiff

8   said I don't want to participate in the system of receiving

9   contributions.  And the Court said that's not Article III

10  standing, that's your choice but that's not what gives you

11  Article III standing.

12       Now turning to the question of the Redressability of

13  business plaintiffs claims for purposes of Article III

14  standing.  They said well, you know, it doesn't matter because

15  you have redressed our injury.  If you issue an order in our

16  case we win, but it doesn't work that way.

17       Because Section 4980H arises, tax assessment arises as a

18  matter of law if their employees receive the credit.  So you

19  can't just say employer, you are free and clear.  You would

20  have had to actually go further and attempt to adjudicate those

21  employees' rights to give them the relief they say here.  And

22  that's exactly why --

23       THE COURT:  The relief they seek here is and we're

24  saying that the regulation issued by the IRS is arbitrary,

25  capricious or otherwise violative of the loss so therefore, you

1  should set aside and vacate which is the relief that is

2  provided for in the APA.

3         MR. MCELVAIN:  Which is now a rule that would be

4  binding on the employees in a lawsuit.

5         THE COURT:  How is that different, what happens in --

6  I don't know, pick other examples, environmental regulations or

7  I don't know.

8         MR. MCELVAIN:  But in another circumstance

9  environmental regulations, nobody says I don't like this smoke

10 stack height regulation.  The Court says fine, you win.  Then

11 that plaintiff wins, they don't have to have their smoke stack

12 at that height.

13     Their claim is very different here because they have to

14 specifically distinguish the rights of other people who are not

15 present here for them to get the relief that they seek.

16        THE COURT:  What if EPA or FDA or somebody issued a,

17 whoever has jurisdiction, a regulation affecting smoking in the

18 work place, and the effects of secondary, secondary effect of

19 smoking in the work place, and the Court vacated it.  It's

20 consistent with the records or the scientific evidence, you

21 name it.

22     But employees decided they still didn't like this.  They

23 would be free to bring lawsuits, maybe they would be a nuisance

24 suit, I don't know what they would be in State Court.  I can't

25 think of a Federal cause of action at the moment.  But it

1  wouldn't, just because the Federal Judge threw out the

2  regulation it wouldn't extinguish the rights of the individual

3  employees to pursue their grievances.  They could say that they

4  were harmed by the conduct of the employer.

5          MR. MCELVAIN:  If there were the underlying statute

6  that said that the employee had the right to bring the claim,

7  then I, you know, there might be a Redressability circumstance,

8  probably in that circumstance.

9          But the point here is the employees have their own

10  claim.  They could not be bound by this Court's judgment

11  because adjudicating them would not apply to those employees.

12          So it is very different from other kinds of APA actions.

13  Their entire claim depends on the notion that this Court could

14  issue a judgment that binds the employees.  If this Court

15  doesn't bind the employees, they can still get the tax credit

16  and they're still under the threat of the tax assessment which

17  follows automatically as an operation of law if one of the

18  employees gets the credit.

19          That's why the claims is not redressable.  So now what

20  plaintiffs' counsel has said well, it could be redressable

21  because what would happen if this Court issues a decision, then

22  that decision would be cited in the next future proceeding.

23          And that's a fair statement of what the ultimate

24  operation of any judgment in this case would be.  It would be

25  cited in the next proceeding.

1            THE COURT:  Nobody pays attention to District Court

2    Judges.

3            (Laughter.)

4            MR. MCELVAIN:  But it still would be cited.

5            THE COURT:  Yeah.

6            MR. MCELVAIN:  But that's not enough to address

7    Redressability.

8            THE COURT:  I once read an opinion saying don't ever

9    cite a District Court opinion to me, I don't want to have to

10   read all this stuff and it's not binding any way.  He had no

11   regard for whether it might possibly be more persuasive in a

12   brief written by the parties in some particular, but that's,

13   but that's an aside.

14           (Laughter.)

15           THE COURT:  Go ahead.

16           MR. MCELVAIN:  But that's ultimately the point.  Any

17   opinion, any decision reached in this case would have citation

18   value in the next proceeding and that is not enough to credit

19   Redressability.

20           THE COURT:  I don't know how much value it would have

21   particularly whichever one of you loses, if it's an appealable

22   order you will go immediately to the D.C. Circuit.

23           MR. MCELVAIN:  Which also wouldn't be binding because

24   the employees would render their claims in the states that they

25   live in.

1          THE COURT:  That's probably true, but don't tell them

2   that.

3          MR. MCELVAIN:  So turning next to the issue of

4   Anti-Injunction Act.  One point that they raise with respect to

5   the Anti-Injunction Act with respect to the business plan,

6   Anti-Injunction Act because our purpose is not to stop the

7   employer, it's to stop the tax credit.  For one point that's

8   contrary to what he just told you on the Redressability.  You

9   can't have a purpose for one reason and have a purpose for

10  another reason to get an Article III.  Their purpose is one or

11  the other.

12         But the purpose is how they plead the case doesn't

13  matter for purposes of the Anti-Injunction Act.  At the end of

14  the day the reason why the business plans care about this

15  lawsuit is they think this will get them out from the 4980 H

16  tax.

17         It's wrong, we think that's wrong because we don't think

18  that they could get that really in the first place.  But the

19  reason they are bringing the suit is for the purpose of gaining

20  it from the 4980 H tax.  And whether or not they have actually

21  pled that they want this Court to issue an order enjoining the

22  4980 H tax doesn't matter.

23         Again, Alexander versus American United, a Supreme Court

24  case, the companion case to Bob Jones University which we

25  pretty much do rely on, which addresses this sort of claim.  It

1    doesn't matter how you plead it.

2         The reason that you care about the lawsuit is the

3    purpose that governs whether the suit is for the purpose of

4    restraining the assessment or collection of an act.  If the

5    only reason you care about it is you're potentially a subject

6    of the tax it most certainly does apply.

7         Turning next to the prudential issues.  One of the

8    things that counsel has argued certainly this case is ripe and

9    certainly we shouldn't defer to Congress' choice of employment

10   action because we're faced with this dilemma.  We're compelled

11   to comply and we should be forced to, to the Hopson choice of

12   either complying with the legal mandate or incurring this

13   liability.

14        But again, that goes to the point I raised before.

15   That's a misstatement of the way the statute operates.  This is

16   no quote unquote legal mandate.  There is a tax.  You carry the

17   required insurance or you are subject to the tax.  If you

18   provide qualified insurance to the employees and you are

19   subject to the tax.

20        There the law is quite clear, Bob Jones University and

21   similar cases that it's a perfectly eye opener to bring your

22   claim in and attack.  That's the way the Internal Revenue Code

23   is set up.  There is no Hobson choice of breaking the law in

24   the first place.  You are not breaking the law, you are

25   choosing the behavior or potential of incurring the tax, much

1   like any other taxpayer.

2          THE COURT:  You are breaking the law if you are not

3   paying the tax that you are subject to.

4          MR. MCELVAIN:  Right.  As to the behavior that

5   triggers the tax or ensuring the tax, you are not breaking the

6   law if you go the route of incurring the tax and that's an

7   important reason why the tax reform action is an important

8   remedy.  You can bring the claim especially with Mr. Klemencic,

9   he can incur one penalty of $12 if he really does want to bring

10  this tax case in the refund action.

11         THE COURT:  So your argument about why this isn't

12  just a straightforward APA case, that's one of your arguments

13  as to why this isn't a straightforward APA case.

14         The other is even if I vacated the regulation, it

15  wouldn't effect the employees?

16         MR. MCELVAIN:  Right.  So as to the business plans --

17         THE COURT:  But that's not -- go ahead.

18         MR. MCELVAIN:  As to the business plaintiffs, they

19  lack Article III standing because this Court could issue relief

20  which addresses their claim injury.  Their claim injury is that

21  we face this threat of the tax assessment that we are terrified

22  of.  They will still face the threat of the tax assessment

23  because the employees could come in and win their case and it

24  will trigger their taxes.

25         THE COURT:  But why is that an argument that says I

1   don't have authority to set aside under the APA it's arbitrary,

2   capricious and contrary to law.

3       Is there any law that says that the Judge doesn't have

4   authority under the APA to set aside regulation as arbitrary,

5   capricious thus is contrary to law just because the Government

6   may still be able to impact other people with the same theory?

7           MR. MCELVAIN:  Well, as an initial matter, when you

8   set aside an action you would be setting aside the potential

9   action for plaintiffs here, so in our view it's a misnomer to

10  say that you are setting aside the regulation in its entirety.

11  But you --

12          THE COURT:  You told me a little while ago I thought

13  that in a typical APA action if a regulation is vacated, the

14  Government would apply and wouldn't try to impose that

15  regulation.  I mean, I have seen situations although I don't

16  think most Judges like this, where, you know, the Justice

17  Department or some agency they represent wants to take a

18  totally different -- I have seen it in the INS -- they totally

19  want to take a totally different position in every Circuit and

20  then people have to litigate the same issue in every Circuit.

21      But you know, so I vacate, hypothetically I vacate this

22  regulation and the D.C. Circuit upholds me.  And the Supreme

23  Court denies cert.  The Justice Department and HHS are going to

24  be arguing to the Ninth Circuit, the Seventh Circuit, the Third

25  Circuit that they should just ignore the vacation of the

1  regulation and it still applies to taxpayers and to employers

2  in four Circuits but not in two other Circuits.  I believe that

3  would create chaos in the administration of the Affordable Care

4  Act.

5          MR. MCELVAIN:  That would be creating chaos.  The

6  problem is not what the employers would do but what the

7  employees would do.

8          THE COURT:  So my question -- We're spending a lot of

9  time on this.

10         My question is why is that a practical consequences

11 argument or it may go to your Rule 19 argument, but why does

12 that effect that argument in and of itself?  It effects my

13 jurisdiction to set aside a regulation under the Administrative

14 Procedure Act if I find they have standing.

15         MR. MCELVAIN:  Because if you set aside the

16 regulation, they don't get the regulation that they're seeking

17 because the employee can still come in in the second case and

18 say under our reading of the statute we win.

19         THE COURT:  So it's a Redressability argument.

20         MR. MCELVAIN:  It's a Redressability argument if the

21 employee wins, under the 4980H act arises as a matter of law.

22         There's a tax that says there's no such thing as a two

23 step process where you get in one case to a litigation issue

24 that is collateral.

25         What they're arguing here is we can get to overturn the

1    regulation so that they wouldn't be able to rely on the

2    regulation in the next case brought by the employees.  Well,

3    even if that's true, they are still attempting to litigate a

4    collateral issue to what is actually at stake in the employees'

5    claims of the tax credits which again, this Court could not

6    bind the employees, even the D.C. Circuit could not bind those

7    employees.

8              THE COURT:  Okay.

9              MR. MCELVAIN:  If the Court has no further questions,

10   I'll --

11             THE COURT:  I raise this question.  I can't remember

12   quite how I phrased it to Mr. Carvin about if I were to find

13   that, I find that Mr. Klemencic has Article III and prudential

14   standing after finding that at least one of the plaintiffs have

15   standing, so I don't have to decide anything else; is that

16   right?  I don't have to decide any other standing question if

17   one plaintiff has standing.

18             MR. MCELVAIN:  No, I think you need to address the

19   standing of each plaintiff for each claim and --

20             THE COURT:  Why?

21             MR. MCELVAIN:  Because the Supreme Court authority

22   Lewis versus Casey and that a plaintiff must show their

23   standing, each plaintiff must show --

24             THE COURT:  But if a single plaintiff has standing,

25   if standing were the only issue here, that you were raising in

1  your motion to dismiss, and there were 12 claims and one of

2  them had standing, you would lose your motion to dismiss,

3  right?

4          MR. MCELVAIN:  In part, but you do need to address

5  the other plaintiffs.

6          THE COURT:  Why?

7          MR. MCELVAIN:  Because it would go to the ultimate

8  relief that you could or should --

9          THE COURT:  Why do I have to address in a motion to

10  dismiss as opposed to say summary judgment later?

11          MR. MCELVAIN:  Well, at some point in the proceedings

12  you need to address it but they are threshold issues for each

13  of the plaintiffs.  So at some point in the litigation you need

14  to address --

15          THE COURT:  If I decided that there was standing with

16  respect to a single plaintiff and that the issue was ripe for

17  determination with respect to at least one plaintiff, do I have

18  to deal with -- and you concede that the Anti-Injunction Act

19  doesn't apply to Mr. Klemencic; is that true?

20          MR. MCELVAIN:  Correct.

21          THE COURT:  So let's suppose I decided Klemencic has

22  standing, everything else except the anti-injunction, I still

23  have to decide the anti-injunction question with respect to the

24  business plaintiffs?

25          MR. MCELVAIN:  Correct.  Correct.

1              THE COURT:  At this stage not the motion to dismiss

2    stage?

3              MR. MCELVAIN:  It's a threshold issue, so I believe

4    you should.  But anything else wouldn't change at summary

5    judgment.

6              THE COURT:  The difference would be though that if I

7    decided that the case was ripe for determination and one of the

8    Plaintiffs had Article III and prudential standing the case,

9    the complaint would not be dismissed and then in the

10   plaintiffs' view, I would move on to decide the APA question.

11             In your view you would do two things on summary

12   judgment.  One, you would raise all of these issues all over

13   again, but maybe we would have more factual development, and if

14   you are right with respect to some plaintiffs but not the

15   others, maybe they go away, but the case goes forward and then

16   I decide whether you're right under Chevron or they're right

17   under Chevron.

18             MR. MCELVAIN:  If Mr. Klemencic needs to survive to

19   get to the preliminary injunction motion because he's the only

20   movant?

21             THE COURT:  Correct.  So I am not going to decide the

22   issue in the next ten minutes.  So we are going with your

23   arguments on the preliminary injunction issue.

24             MR. MCELVAIN:  But at the end of the day, we need a

25   ruling as to each of the plaintiffs because certainly at the

1    end of the day this is all academic if the Court were to issue

2    some order purporting to overturn the regulation --

3             THE COURT:  You keep using the word enjoin and I

4    think vacating is different from enjoining.  I'm using the

5    language of the Administrative Procedure Act.  You are using

6    some other language.

7             MR. MCELVAIN:  Fair enough.  But whatever order the

8    Court --

9             THE COURT:  Your colleague doesn't think it's fair

10   enough.

11            MR. MCELVAIN:  But it's an academic point for this

12   issue which is, which is we don't think however it's phrased

13   leads to Redressability for the business plaintiffs but either

14   way we would need to know which plaintiffs the order, the order

15   applies to at the end of the day but of course, this whole

16   point can be rendered moot because none of the plaintiffs has

17   Article III or prudential standing or none of the dismissal

18   issues can apply across the board.

19            THE COURT:  If I agreed with you on any of the five

20   or six issues that you raised, your motion gets granted if I

21   say there's no Article III standing, I don't have to go on to

22   the other issues.

23            MR. MCELVAIN:  Correct.  Some of the issues relate

24   only to the business plaintiffs.

25            THE COURT:  I understand.

1          MR. MCELVAIN:  But apart from that, yes, if we win

2    any of those we are done.

3          THE COURT:  What I was trying to get at with Mr.

4    Carvin is whether I have to deal with each and every one of the

5    issues in order to deny your motion to dismiss, and that's sort

6    of what we have been talking about the last five minutes, okay.

7          So why don't we take about a 15 minute break.  I hope

8    everybody is ready for a later lunch I think even if we go

9    late.  Try to get through this.

10         (Recess at 11:45 a.m.)

11         (Proceedings resumed at 12 o'clock)

12         THE COURT:  Okay, now we're ready to talk about the

13   preliminary injunction.

14         MR. CARVIN:  Good afternoon, Your Honor.

15         THE COURT:  My goodness, yes.

16         MR. CARVIN:  We've thrown a lot of information at you

17   this morning.  I think in terms of the likelihood of success on

18   the merits that this will be a very straightforward and argue

19   compelling and simple question of statutory interpretation.

20         We've put some boards up here just to help emphasize

21   what I think is obvious.  When they, the subsidy provision

22   which is 36 B, when they were describing when the coverage is

23   available, when the subsidy is available, they said in the

24   plainest possible English through an exchange established by

25   the State under Section 1311.

1    They have the identical language in the provision that

2    tells you how to commute the amount of the subsidy.  So when

3    they're dealing with the subsidy, when and how much and for how

4    long, it is quite clear that it only is triggered and only

5    applies if you're enrolled in the Exchange established by the

6    State under Section 1311.  So that's the clear language.

7    We have an equally, this serves a sensible purpose.

8    It's not at all absurd.  Indeed, it's a compelling purpose

9    which is Congress needed to, the Senate needed the states to

10   run the Exchange because Senator Nelson said that was a deal

11   breaker.

12   The Senate knew that they could not force the states to

13   run these Exchanges because that's unconstitutional.  And they

14   knew they'd have to give them big incentives to run the

15   Exchanges because as recent events have proved, it's a very

16   controversial, very difficult task.  And certainly in the red

17   states not one that they would gladly grab onto.

18   So what Congress did was make them an offer they

19   couldn't refuse just like they had done in Medicare.  They said

20   listen, we'll give you, your citizens billions of dollars in

21   subsidies if you run the Exchange.  And if you don't, if you

22   turn it down, then not only as the Government has quite

23   helpfully pointed out in it's briefs, it doesn't just hurt the

24   poor people who are eligible for the subsidies, it hurts the

25   wealthier people because the absence of the subsidies drives up

1  their premium and it hurts the insurance companies that are

2  running the exchanges because it makes insurance less

3  affordable for them as well.

4       So literally you would be alienated by not taking this

5  deal.  You'd be alienating low income people, high income

6  people and businesses and Congress quite naturally thought

7  nobody could turn down that deal.

8       But now the IRS comes in and asks you to take the words,

9  Exchange established by the State under Section 1311, and say

10  -- well, what that means is Exchange established by the

11  Secretary, the Federal Secretary under Section 1321.

12       So they are asking you to interpret north to mean south.

13  They are asking you to interpret the statute to mean precisely

14  the opposite of what it says.

15       THE COURT:  What the IRS said is in Exchange of

16  established either under 1311 or 1321, right?

17       MR. CARVIN:  Yeah, so this language would apply.  If

18  you want to revise the language that way, that's fine.

19       They could either say substitute out State and Section

20  1321, or revise it by adding established by the State under

21  Section 1311 or by the Federal Government under Section 1321.

22  But in either event, you are dramatically revising the

23  statutory language and you are undoing the deal.

24       And you are giving no incentives to the states to take

25  on this unwelcomed task and we've seen the result of undoing

1   those incentives.  Thirty-six states have said they don't want

2   to do it, quite understandably.

3          So to rewrite this language, I mean, we could go through

4   each basic cannon of statutory construction.  We can't render

5   language superfluous.  You can't interpret this language to

6   mean as we indicated a minute ago, any Exchange established

7   under the Act because in 18032, they use that exact language,

8   when they're talking about coverage of Federal employees, they

9   say Exchange established under the Act.

10         And under Ruciello this shows that they know how to use

11  that language when they want to and they didn't want to use it

12  here.  You can't interpret the language to mean well, sort of

13  anybody who runs an Exchange regardless of whether the State,

14  Congress just assumed you would apply it to them because when

15  they had that situation with territories under 18043, they said

16  treat territories as states.  So they knew that they had to fix

17  these things.  They had to give specific statutory language to

18  do it which is notably absent when they are talking about the

19  Secretary running these exchanges.  So there's nothing in 36 B

20  would be our initial submission that in any way justifies the

21  IRS rule.

22         So they say well go to 1321.  And 1321 is the provision

23  that kicks in when the states failed to establish the Exchange

24  as they're required to do under this, under 1311.  And so they

25  say the statute telling you what happens when the states failed

1    to establish an Exchange is the statute that, is the same

2    provision that tells you that the feds can run the Exchange,

3    but all 1321 says is in the event that the State fails to

4    establish an Exchange, the Secretary will establish such

5    Exchange.

6         And we fully agree with the Government that means the

7    Secretary has got to run the same Exchange as the states would

8    have had they not defaulted under 1311.  The difference is who

9    established the Exchange.  Under 1321 it's clearly the

10   Secretary who did it because the State failed to do it.  And

11   since the subsidy turns on who established the Exchange,

12   obviously the fact that it's the same Exchange doesn't matter.

13   What matters is who established it and there's no way to read

14   1321 other than to say the Secretary established it.

15        Then they say well okay, but Exchange, when you look at

16   the word Exchange, if you look at the definitional Section,

17   Exchange means Exchange established under 1311, okay.  I'll

18   point out initially it's a bit illogical to say because the

19   definition of Exchange is Exchange established under 1311 that

20   helps their argument that the subsidy provision also applies to

21   the Exchange established under 1321.  You would think actually

22   just the opposite.

23        But wholly apart from that inconsistency, we'll concede

24   that the definitional language says under 1311 and if you want

25   to literally interpret that, that means there's two kinds of

1   entities that can establish exchanges.  One is the states under

2   1311, and one is the Secretary when it steps into the shoes.

3   But even accepting all of that, it's still a Secretary

4   established Exchange under 1311 is not an Exchange established

5   by the State under 1311.

6         So even if you take this circumvented route, it only

7   winds up with the fact that all Exchanges under 1311.  We've

8   got Federal Exchanges under 1311 and we've got State Exchanges

9   under 1311.

10        After you have established that point, you go back to

11   the subsidy provision you say well, which one can offer

12   subsidies.  It's only the ones established by the State under

13   Section 1311.  So maybe the language in the definitional

14   section is a little awkward.  Maybe it should have said

15   Exchanges that the states are obliged to establish under 1311.

16   Maybe that would have made it a little clear because they

17   assume that all of the states would be establishing it.

18        But however you eliminate that potential awkwardness

19   doesn't get you back to where the IRS needs you to get back to

20   which is somehow to say that an Exchange established by the

21   State under Section 1311 includes an Exchange established by

22   the Secretary under 1311.  In fact, of course it's 1321.

23             THE COURT:  So you basically got two arguments.  One

24   is that the States established by the Secretary are not

25   established under 1311 at all, they're established under 1321,

1  but alternatively, even if there are Exchanges that are

2  established under, established by the Federal Government or by

3  the Secretary under 1311 when you look at 26 USC 36 B, what it

4  says is Exchanges established by the State under 1311.

5       So in your view you win either way.  Either if the

6  Federal Exchanges are established under 1321 you win because

7  the only reference is to 1311 exchanges or if you accept the

8  notion that you can read some of these statutes to say that the

9  Secretary establishes exchanges under 1311, they're still not

10  Exchanges established by the State.

11       MR. CARVIN:  Exactly.  If you give palismatic

12  significance to the definitional section as they urge you to

13  because it says under 1311, you accept that and say okay, it's

14  an Exchange under 1311, but it's not an Exchange established by

15  the State under Section 1311.  It's an Exchange established by

16  the Secretary under 1311 when the State fails to establish

17  their Exchange under 1311.

18       So yes, however you resolve that I'm perfectly fine to

19  say they're all 1311 Exchanges.  It still doesn't get them

20  anywhere where they need to go to make subsidies available

21  under those Exchanges.

22       So apparently recognizing the weakness of the arguments

23  that are actually relevant here, they take you on a cook's tour

24  throughout the act which is a very complicated act and talk

25  about these other provisions, and they say if you accept our

1  argument, these other provisions would be absurd and if you

2  accept ours, so therefore, you must reject the plain language

3  of this provision.

4       Well, two points.  First of all, they point to no

5  absurdity.  And second of all, half of their examples have

6  literally nothing to do with the discussion we have just had

7  about how to interpret.  It doesn't flow in any way, shape or

8  form.  And I think maybe I'll walk through a few examples to

9  make these points clear.

10      The first absurdity argument is look, in the same

11  provision 36B, they detail a whole lot of reporting

12  requirements for Exchanges.  The very provision that makes the

13  distinction between Exchanges established under, by the State

14  under Section 1311 then goes on to say you got to report a

15  bunch of stuff, premiums, coverage, names of the insured, that

16  sort of stuff.

17      They also say and include subsidies in it.  They say

18  this means that Federal Exchanges must have subsidies.  No.  It

19  means that Congress has given a directive to State Exchanges

20  which have subsidies and Federal Exchanges which don't and it's

21  perfectly normal for them to say we're giving a blanket

22  directive to all 50 states on flooding and Nevada has got to

23  send in its report even though they don't have any floods.

24  They just give a general directive which everybody needs to

25  comply with.

1          It doesn't render it in any way superfluous or

2     non-sensical to say we are giving a general directive some of

3     which apply to Exchanges with subsidies, some of which don't.

4     But there's something for the Federal Exchanges to do under any

5     interpretation.

6          They make almost the identical argument for Exchange

7     functions where they list a number of functions about hot lines

8     and qualified health plans and stuff.  One half of those deal

9     with subsidies of the 11 and again, it's the same argument.

10    But at the end of the day, our response is so what.

11         Yes, they did give general directions, not a hundred

12    percent of which apply to the Federal Exchanges without

13    subsidies.  That doesn't mean Federal Exchanges can't provide

14    subsidies.

15         Then they go into fights about different language in the

16    act and they somehow attribute to us these dire, what they view

17    as dire consequences.  Maybe the best example of that is the

18    abortion provision, 18023 says states can pass law prohibiting

19    insurance through Exchanges, that's the language it says.  And

20    they say well, if you accept Klemencic's arguments that

21    Exchange means Exchange under 1311 that means states can only

22    prohibit abortion in states that run the Exchange.

23         Well, two responses.  One is that's not our argument.

24    That's their argument.  Their entire argument is premised on

25    the notion that Exchanges means Exchanges under 1311.  So it no

1  way flows from what we have been discussing.  It flows directly

2  from their argument which we accept, we don't resist.  In any

3  event, it's not at all absurd to think that if states, if the

4  Federal Government is running the exchanges, the states have no

5  business prohibiting abortion on a federally run Exchange.  I

6  would think the idea would be that if the States are running

7  the Exchange, then they have some say in what will be offered

8  but if they're not, then it doesn't.

9         A very similar argument with respect to the qualified

10 individuals definition that they make much of.  To be an

11 individual qualified to go on an Exchange you need to give them

12 your name and prove that you're a resident, this is the

13 relevant language, a resident in the State that established the

14 Exchange.

15        They say well look, what happens if the State didn't

16 establish an Exchange, right.  Well, three points.  One is

17 everybody acknowledges that, that states didn't have to

18 establish Exchanges, that's why they had 1321.

19        So this problem exist regardless of anything you have to

20 say about subsidies, follow my point.  If the State hasn't

21 established an Exchange, then there would be no qualified

22 individuals under anyone's interpretation of the statute.

23 Moreover, their interpretation of this provision doesn't solve

24 the problem that exists, right.  Because they don't argue that

25 when the Secretary establishes the Exchange in West Virginia

1   that that is a State which has established an Exchange.  They

2   argue that you should treat the Secretary like the State

3   established it.

4        So if you literally interpret this qualified

5   individual's provision they don't solve it because still

6   Mr. Klemencic is not a resident in a State that establishes an

7   Exchange under their theory or under our theory.

8        Finally, this entire dilemma is one that they have

9   invented out of whole cloth.  Because when it says you need to

10  be a resident in a State that establishes the Exchange, it says

11  qualified with respect to the exchange.  And as we have been

12  through probably three times now, Exchange means Exchange under

13  1311.

14       So this qualified individual's requirement only applies

15  to State run Exchanges under 1311.  So everybody who is

16  qualified will be able to get in because it only applies to

17  States that have established the Exchange under the

18  definitional section.

19       Again, I could keep going on this.  I'll make brief note

20  of two points that actually confirm our reading that the

21  Government uses as defenses.  One is that there's a provision

22  that says the States have to maintain their current Medicaid

23  provisos until and unless they establish the State created

24  Exchange.  They say it would be unthinkable to not allow them

25  to do it before then.  But obviously, this was a big stick for

1  Congress.

2        They said look, if you want to change the Medicaid you

3  first got to set up the Exchange, we are giving you something

4  very valuable.  Well, it makes sense from Congress'

5  perspective. If the state has said we are not going to give any

6  subsidies, the Feds are going to be running it, that means

7  nobody of, you know, relatively low income gets the money and

8  we're sure not going to let the States deprive the really poor

9  people of Medicaid on top of that.  That makes perfect sense.

10       I think this probably won't move after the NFIB's

11  decision on what they could do in terms of coercing states

12  under Medicaid, but that's not here nor there.

13       Finally they focus on this global application form which

14  they think is somehow inconsistent with our reading but it

15  greatly reinforces it.  It says that the Secretary will provide

16  each State with this information relating to subsidies again

17  confirming that the subsidies are available in State run

18  Exchanges, the State establishes Exchanges, not Federal

19  established Exchanges.

20     Since the statutory language doesn't work, that means the

21  statutory construction principle doesn't work, they go to the

22  last refuge of scoundrels of legislative history.  And they say

23  --

24       THE COURT:  Legislate administrative history is

25  relevant under Chevron step two.  In other words, if the

1  statute is unambiguous, under Chevron step one, you don't look

2  at legislative history.

3      But if you have to go to step two to resolve the

4  ambiguity or to decide whether to give deference to the

5  agency's view of how the statute should be interpreted, then

6  you can look at legislative history.

7      MR. CARVIN:  That is true except in Justice Scalia's

8  chambers, yes.  In other words, yes, you can use all, yes under

9  step two you can use all of the traditional tools of statutory

10  construction.  You can use that as a non-traditional tool, but

11  you're right.

12      Under prong one if it is ambiguous under Perk Cole and

13  other cases, legislative history is irrelevant.  I point out

14  that if we ever get to prong two here, their argument is still

15  so unreasonable it doesn't satisfy prong two, but obviously,

16  we're making an unambiguous argument.

17      What is their legislative history?  If they could pull

18  out a passage from the Senate Finance Committee report that

19  said you can make subsidies available on both State and Federal

20  run Exchanges it wouldn't matter because the language is

21  unambiguous.  But they have not come up with anything which

22  even hints that that is what Congress was thinking about making

23  it available on both.

24      They are making a dog that didn't bark argument is how

25  they describe it.  They say look, somebody would have talked

1  about this if this was really what was going on.  The first

2  question is you don't ask whether or not Congress told you what

3  its purpose was.  You ask whether the act serves the purpose.

4  You don't need any legislative history to confirm what is

5  otherwise obvious from the statute.  But in the real world we

6  all know why they never drilled out and talked about what

7  happens if states default on it.

8       The House didn't even have State run Exchanges.  It was

9  only the Senate and the Senate were all assuming as I said that

10  they were making an offer that they couldn't refuse.  But they

11  were going to straighten all of this out in conferences.

12       The House bill was completely different than the Senate

13  bill in terms of Exchanges and a whole lot of other things.

14  When Scott Brown got elected, they couldn't go to conference

15  because they had to go under the budget reconciliation that

16  allows them to pass budget matters with 50 votes as opposed to

17  60.

18       So once that happened, they weren't discussing any of

19  these big picture items.  The Senate except for some tweets in

20  terms of budget stuff the Senate floor was set in stone, the

21  House had to accede and that's why you didn't get any

22  conference reports discussing this kind of detail.

23            THE COURT:  And your argument would also be the

24  reason you didn't have any is because everybody assumed that

25  this was an offer that was too good to turn down.

1        MR. CARVIN:  Right.  There's not a whole lot of

2   legislative history saying what happens if the states turn down

3   our Medicaid offer, then what do we do, and that would have

4   been a problem.  Everybody thought, even though it turned out

5   not to be true after the Supreme Court, sure they've got to

6   take this deal and nobody thought otherwise.

7        They cite the CBO which was scurring and they were

8   scurring on the assumption -- they said they didn't do any

9   legal analysis, but they just went along with what everybody

10  assumed was the case.

11       They cite the Joint Committee on Taxation report, but if

12  you read it, every reference to subsidies and the money that

13  the Federal Government was going to have to pay talks about

14  State Exchanges.  That's because they were all talking about

15  State Exchanges and that's what they were talking about.

16       So they can't give you any indicia of congressional

17  intent.  Their last argument is just a naked policy argument.

18  They go on for four pages in the brief about again, this

19  wouldn't just hurt poor people, it would hurt wealthy people

20  because their premiums would go up and it would hurt the

21  insurance company's profits and therefore, they want you to

22  rewrite this because the judiciary just shouldn't tolerate that

23  because it was just clear that Congress wanted subsidies in all

24  of these Federal run Exchanges because they wanted subsidies in

25  all 50 states.  I stipulate to that.  They did want subsidies

1    in all 50 states, of course they did.

2         They had a question, how do we get the States to take on

3    this obligation from us.  We have got to give them something.

4    They wanted Medicaid in all 50 states.  We have got to put the

5    subsidies on the table to coerce them.  That was their other

6    policy.  It wasn't just getting subsidies in all 50 states.  It

7    was enticing the states to run the Exchanges.  Those were

8    pointing in two different directions.

9         They had to put the subsidies on the table as a huge

10   bargaining chip which may well have worked if the IRS hadn't

11   woken up one day and preempted this deal and then said to all

12   states you know what, if you take on the politically

13   controversial extraordinarily costly as recent events have

14   proven unbelievably complex job of implementing the exchanges

15   we will give you precisely nothing for doing it.

16        When you offer somebody nothing for a burden, the

17   reaction is 36 states say no thank you and that's exactly the

18   result that Congress was trying to avoid.

19        So I think implicitly what the Government is saying is

20   look, this is a really important law.  We really need these

21   subsidies so we want the judiciary to write the law.  I'm

22   obviously not going to lecture you on why we have an

23   independent and impartial judiciary but obviously, those are

24   extra judicial considerations and I won't dignify them further

25   unless I will turn to the other factors if it makes sense at

1  this point.

2        THE COURT:  Let's talk about injury, irreparable

3  injury.

4        MR. CARVIN:  Yes.  So the irreparable injury again is

5  not unlike what I was talking about this morning is that

6  Mr. Klemencic is forced to a choice now.

7        THE COURT:  But when is he forced to a choice?  I

8  think there's some discussion about January 1st, 2014, there's

9  other discussion in the brief March 31, 2014.

10       MR. CARVIN:  Technically under the regs he has got to

11 choose by December 31st.  I think if people have talked about

12 March that is because you can comply with the individual

13 mandate if you get coverage for nine months.  If you follow

14 what I'm saying.  So he could game the system.  I mean under

15 the regs he is suppose -- he needs a certificate of exemption

16 by December 31st.  But he could technically not fall out of

17 compliance with the individual mandate.  He could game the

18 system by waiting until February before he had to do it.  But I

19 think that the certificate of exemption is required on December

20 31st and the individual mandate kicks in with full penalties by

21 the end of February.

22       THE COURT:  Is it the end of February or end of

23 March?

24       MR. CARVIN:  Well, he needs, you obviously can't show

25 up on March 30th and buy insurance for April.  There is a lead

1   time which I think we roughly estimated at 30 days or so, I

2   think that's February 15th.  I am now ably instructed because

3   obviously we have enough time to get the insurance.

4        So whether you say now or the next few months, the point

5   is he needs a decision well before this tax refund act, action

6   that is an entirely unrealistic tax refund action.

7        He has got two choices now.  He can define the

8   individual mandate and go through this torturous tax regime or

9   he can comply with it.  If he complies with it, he will never

10  ever be able to challenge it in court.

11       Again, case after case from Abbott Labs to Sackett has

12  said you are putting citizens in an impossible position if the

13  only way they can challenge an illegal or unconstitutional law

14  is by first defying it and then exposing themselves to

15  penalties.  And Government can call a $150 tax or penalty,

16  whatever it is, I don't think that it really matters.  For AIA

17  purposes it's clearly not a tax, but in all events the relevant

18  point is it's upon the paying of a monetary penalty.

19       And that's the basic point under irreparability, right.

20  If he does comply which he would have every incentive to do

21  rather than go through the absurd tax refund procedure, then it

22  is not irreparable.  When he spends his $18 a month he can't

23  sue the Government for damages because they have got sovereign

24  immunity.

25       So while in a number of cases we say economic injury is

1 irreparable that doesn't apply if you are trying to go after

2 the Federal Treasury because you can't get it back from them.

3        And then in terms of the public interest, I mean, this

4 is just as clear a case as I think the Court can envision.  If

5 the Court is convinced or reasonably convinced that this scheme

6 of the IRS is going to be struck down, it's clearly in every

7 one's interest, the Government's interest, our interest,

8 employers who are making decisions that effect their employee's

9 lives in a very tangible way to know this sooner, not in 2017

10 or 2018, they need to know it now.

11        That's because the Government is about to spend billions

12 of dollars so from their perspective it works.  Employers are

13 about to make decisions about whether they let their employees

14 go on the Exchange or not.  People in Mr. Klemencic's position

15 are signing up thinking that all of these subsidies are going

16 to be pouring in and it would be the cruelest possible bait and

17 switch to tell them in May or June or some other time, nope,

18 sorry, this has all been a big side show and it would be even

19 crueler if we did that in 2017 or 2018 as they just explained.

20        In light of that we filed this case in May.  I don't

21 think there's any reason that the Court can't enter a final

22 judgment here.  It's not as if their summary judgment

23 opposition is going to unearth some strange part of the statute

24 that they haven't already done.

25        If we think that procedural fairness requires it they

1   can file a summary judgment soon.  But I really don't know and

2   I'm perhaps being excessively candid from either the

3   Government's perspective or our perspective, I have no

4   disrespect to the Court but this is ultimately going to be

5   decided by a higher court.

6           THE COURT:  That's what I said earlier.  Nobody cares

7   what I say.

8           MR. CARVIN:  Well, I'm certainly not putting it that

9   way.  We certainly care about whether we are appellant's or

10  appellee, we are going to be one or the other.  I think it

11  would be cleaner and neater, it's a pure question of law.  You.

12          You are putting a regulation next to the statute to have

13  a final judgment.  If you have any concerns about the other

14  factors, that would be the course that we would urge on the

15  Court.

16          THE COURT:  Thank you.

17          MR. CARVIN:  Thank you very much.

18          THE COURT:  Mr. McElvain.

19          MR. MCELVAIN:  Good afternoon, Your Honor.

20          As I mentioned at the outset, the plaintiffs' theory is

21  fundamentally contrary to the tax purpose of the Affordable

22  Care Act and it should be rejected starting of course as you

23  should with the tax.

24          There are actually three independent routes that get you

25  to an understanding that what Congress meant was that the tax

1  credits would be available on all of the Exchanges, State and

2  Federal.

3       First, if you look at Section 36B in the language that

4  the plaintiffs refer to, the particular phrase Exchange

5  established by the state under Section 1311 of the patient

6  protection Affordable Care Act.  Obviously, that can't be read

7  in isolation.  You would have to turn to the relevant section

8  to understand what Congress was referring to.

9       If you look at Section 3211 which is 42 USC 18431, there

10 on the billboard that plaintiffs' counsel have hopefully

11 provided, right there in Section B it says each State shall

12 establish an American Health Benefit Exchange.  So obviously,

13 that doesn't literally mean that each State shall because

14 States have those powers, so what does that language mean?

15      It means that the act that is creating a legal fiction

16 if you want to look at it that way, a legal fiction that every

17 State has established an Exchange.  What happens if a State

18 doesn't do so because not, the States are not going to be

19 compelled to do so and there needs to be back up.  Section

20 18041, Section 1321 of the Act tells you Secretary if the State

21 hasn't established the required Exchange, and that's the

22 phrase, the requirement refers back to 1803 1 that each State

23 shall, then the consequences, the Secretary shall establish and

24 operate such Exchange within the State.

25      So the Secretary stands in the shoes of the State.  It

1   is the legal fiction stands that the State has established the

2   Exchange.  The Secretary comes in to fill in the gap for what

3   the State is presumed to have done, but hasn't.

4        Second, if you need further confirmation of that point,

5   that's, that confirmation is provided by the definitional

6   provisions of the act itself.  The Affordable Care Act defines

7   Exchange as a term of art.  It means an American Health Benefit

8   Exchange established under Section 18031 by the code.  So when

9   you plug that language into 18041, 21 of the Act, the Secretary

10  shall establish and operate such American Health Benefit

11  Exchange established under 18031.

12       THE COURT:  Go back a second.

13       So you go to what's been codified as 42 USC 300 double

14  G-91 paren 20.

15       MR. MCELVAIN:  Sub D, Sub 21.

16       THE COURT:  D 21.  And it says the term Exchange

17  means American Health Benefit Exchange established under 18031

18  and 18031 is 1311, right?

19       MR. MCELVAIN:  Yes.

20       THE COURT:  And 1311 is where we were a minute ago

21  which says that every state shall establish an Exchange and you

22  say that's legal fiction because they don't, haven't all done

23  it and that takes you to 1321C.

24       But where 300GG takes you to is to 1311.  So I'm with

25  you so far.

1          MR. MCELVAIN:  Yes.

2          THE COURT:  So what do you say from there?

3          MR. MCELVAIN:  So given that language that the

4  Secretary shall establish such American Health Benefit Exchange

5  Established under 18031, the language in 18031 is each State

6  shall, so the way to reconcile those phrases is the Secretary

7  is standing in the shoes.  If you want to call it a legal

8  fiction --

9          THE COURT:  I didn't call it that, you did.

10         MR. MCELVAIN:  Sure.  And I'm happy to stick with it.

11         The premise stands that the State has established an

12  Exchange and what happens if the State refuses to do so, the

13  Secretary steps in and stands in the shoes of a State for that

14  purpose.  That is the entire premise of the structure of the

15  act and specifically of 18031 and 18041.

16         Now if there were any doubt after looking at the

17  interplay of those three sections and adding in the

18  definitional provision I think that's enough, I think that

19  answers the text.

20         But there's even a further textual confirmation in 36B

21  itself if you look at 36B Sub F which and 36B Sub F Sub 3.

22  Each Exchange from any person carrying out one or more

23  responsibilities of an Exchange under 18031 F 3 or 18041 C

24  shall report a variety of matters including the aggregate

25  amount of any advanced payments of the credit any information

1  provided to the Exchange including any change of circumstances

2  necessary to determine eligibility for an amount of such

3  credit.  It specifically calls out the Secretary's operation of

4  the Exchange under 18041 because the Secretary is going to

5  report these matters necessary to determine the tax credit.

6        THE COURT:  What it says is each Exchange or any one

7  carrying out of the responsibilities of an Exchange under

8  either 1311 or 1321 shall provide the following information.

9        MR. MCELVAIN:  Correct.

10        THE COURT:  Okay.

11        MR. MCELVAIN:  And so the plaintiffs' response to

12  that is well, you know, it's not literally absurd, you could

13  put that forward and then the Secretary just couldn't do

14  anything, it would be compliance of that phrase.  But the point

15  we are making is not that absurd result argument.  We just are

16  making the more common sense argument what did Congress intend.

17        Would Congress have put this Section in there and

18  specifically called out the Federal Exchange and the operations

19  of the Federal Exchange to perform these calculations if they

20  were starting from the premise that the Federal Exchange

21  wouldn't be administering these tax credits in the first place.

22        That's why it fundamentally doesn't make sense.  Not

23  that it's not impossible.  It's certainly possible for the

24  Secretary to do nothing in compliance with that provision, but

25  it's a very, very powerful clue of what Congress intended is

1   that the tax credits would be administered in the Federal

2   Exchange.

3           THE COURT:  Let me ask you this and I said this

4   before as I said to Mr. Carvin, you are much more familiar with

5   this statute.

6       His argument with respect to a number of statutes which

7   you wrote there, well there's nothing inconsistent with

8   Congress requiring Exchanges regardless of who created them to

9   provide certain information.  And so I think he would argue

10  that your implication of this provision, 26 USC 36B paren F is

11  so what, it's not really relevant.

12      So my question to you not having studied this Section is

13  are these items about which information is required A through F

14  under subsection 3 all related to the subsidies that we're

15  talking about here today?

16          MR. MCELVAIN:  I would need to consult with the

17  statute.  May I have a moment?

18          THE COURT:  Yes.  In other words -- please turn off

19  your cell phones.

20      So the question is what I'm guess I'm saying,

21  Mr. McElvain, your argument gets stronger the more relevant any

22  of these items is, and the more of them the merrier, to the

23  subsidies that are at issue here.  Otherwise, there's something

24  in Mr. Carvin's argument that they can ask for lots of

25  information some of which may be just useful to collect and

1    some of which may be useful to implement the statute.

2         Are these items directly relevant to implementing this

3    part of the statute?

4              MR. MCELVAIN:   Sub C is and Sub F is.   Those each go

5    to the credit or advance payments of the credit.

6         And the point is and again, this is not an absurd

7    results argument.   It's not literally impossible for this

8    Section to apply.   Under their theory the Secretary could

9    comply just by doing nothing.   So it's not an absurd results

10   point.   It's just a more common sense point of why would

11   Congress go to the trouble of specifically calling out the

12   Federal Exchange, specifically putting out this list where

13   three of the Fs, specifically relate to tax credits if what

14   Congress had in its mind was there would be no tax credits in

15   the Federal Exchange.

16        So again, if it's more of a common sense point and it

17   takes you to language of the D.C. Circuit Fund for Animals.

18   Well, if you're asking, if you're listing out essentially an

19   empty Act for the agency to perform, that's a powerful

20   indication that your interpretation of that provision is wrong.

21   It's the same principle that applies here.

22        So for those three reasons one, the interplay of 36B,

23   18031 and 1804, second the definition, and third, the operation

24   of 36B itself is a very, very, very powerful indication that

25   Congress meant for the tax credits to apply both for the State

1  and the Federal Exchanges.

2      THE COURT:  Although your first two arguments are

3  sort of variances of the same argument.

4      MR. MCELVAIN:  They work together to be sure, yeah.

5      But the point is that the Secretary stands in the shoes

6  of, of the exchange that the Act contemplated that the State

7  would create and in a sense directed the State to create.  And

8  that's reflected in the definition.

9      THE COURT:  One of the things that I found in your

10  brief that was less than helpful in my opinion, and maybe will

11  be fleshed out more in your summary judgment brief.  You seem

12  to put a lot of weight in the language such, such Exchanges.

13  And the catch phrase stands in the shoes of.

14      And so I looked at the, there's one case that you cited

15  Judge Garland's opinion with Judge Kavanaugh dissenting

16  language, Clinton versus somebody or somebody versus Clinton.

17  I think is, are there more, are there cases that you would

18  really want to highlight in terms of -- I mean, your argument

19  is I think, both sides are arguing that Chevron step one is the

20  answer, I think.  And that we don't have to get to Chevron step

21  two.

22      But in your case in either side's case you might be

23  wrong and I might have to get to Chevron step two.  But what

24  are the cases that say okay, you don't just look at, you have

25  several cases.  You don't look in isolation of just a phrase or

1    a clause in one sub part of a section of the statute. You have

2    to look at it in the context and that's what you have just been

3    talking about now.  But are there cases that talk about such,

4    the use of the word such or stands in the shoes of in terms of

5    statutory construction principles?

6              MR. MCELVAIN:  Sure and we cited them.  There's the

7    Miller v. Clinton case from the D.C. Circuit.

8              THE COURT:  That's the one I was thinking of.

9              MR. MCELVAIN:  There's the recent D.C. Circuit case

10   -- I'm sorry, I mean the recent Seventh Circuit case, Alliance

11   3BL Corporation also cited in our brief such is essentially a

12   legalese term.  That's a term the legislators use to let you

13   know they're talking about the exact same thing that they were

14   talking about before.

15        So to go through the same analysis in reverse order, you

16   start with that section, the Secretary shall establish and

17   operate such Exchange, you're suppose to go to the last

18   antecedent.  What's the last antecedent?  So it required an

19   Exchange.  What does the phrase required Exchange mean?

20   Because it's not apparent just from that clause what that

21   means.  You have to go back to 18031.  What's the quote unquote

22   requirement that they are talking about.  It's each State shall

23   not later than January, 2013 establish an Exchange.

24        So you can go run through the analysis forwards or

25   backwards, you get to the same result what is it referred to

1  is.

2          THE COURT:  You make it even more complicated.  I

3  have to go both forwards and backwards.

4          MR. MCELVAIN:  I'm happy if you just do it one way,

5  pick one way and stick with it.  But the bottom line it is the

6  same Exchange.  It is the 10831 Exchange, that Exchange that is

7  referenced throughout the Act.

8          THE COURT:  But even if you accept all of that, I

9  think Mr. Carvin is saying how do you get over the language

10  Exchange established by the state?

11          MR. MCELVAIN:  Well, Exchange established by the

12  START State under Section 1311 and then you go to 1311 and

13  again it's that phrase; each State shall establish an American

14  Health Plan of exchange.  So the entire point of the Act is

15  again, I'll use the phrase legal fiction.  I hope that it

16  doesn't get thrown back to me, but the entire premise is the

17  state has established an Exchange.  And under rules for what

18  happens if the Federal Government needs to step in in certain

19  circumstances, but the entire premise is there is the state

20  Exchange.  And that's why Congress created a nationwide system

21  referring to exchanges in that manner.

22          Now we referred specifically to 36B and the particular

23  provisions cited in 36B.  But the larger structure of the Act

24  confirms that as well.  And I would like to highlight one

25  particular problem with plaintiffs' theory actually really,

1  really quite central to the operation of the act.

2       Under their theory not only the result would be not only

3  the tax credits are not administered in the Federal Exchange,

4  under their theory the Federal Exchange wouldn't operate at all

5  because there would be nobody who could be a buyer who would

6  eligible to participate.

7       A qualified individual under the Act, the Act defines the

8  phrase qualified individual to mean a person is eligible to

9  participate in the Exchanges and a qualified individual means

10  an individual who resides in the State that established that

11  Exchange.

12       So under our theory the Federal Government is standing

13  in the shoes.  It's fulfilling the legal fiction that the State

14  has established the Exchange, the problem goes away.  They're a

15  qualified individuals in every State.

16       But under their theory if there is no State operated

17  Exchange, there are no qualified individuals and the Exchange

18  just disappears in a cloud of smoke.  That simply could not

19  possibly be what Congress intended to do in the Act.

20       Now their response to that is well, you know, you can

21  just ignore this because that's a problem under both theories.

22  But that's not true.  That's not a problem under our theory.

23  The Federal Government is fulfilling the promise that the State

24  has established an Exchange.  That's what Congress had in its

25  mind when it was using that phrase and so the system works.

1   But under their theory again, no qualified individuals, no

2   buyers, no plans to sell, nothing happens on the Exchange.

3         Now the other argument they say is well, if you look at

4   the text of 18032 the qualified individuals provision, it says

5   with respect to the Exchange and you can read that as just

6   applying to the state Exchanges and then the Federal Government

7   can just fill in the gaps for whatever might happen under the

8   Federal Exchange.

9         But I don't think that's a plausible -- if you look at

10  the text.  I don't think that's a plausible reading of what

11  Congress meant.  Congress would not have gone through all of

12  these details of establishing the Exchanges and created all of

13  these textual clues that the Federal Government Exchanges fall

14  into the same framework as the State Exchanges and then

15  silently take that away and say oh, all bets are off and HHS

16  can later fix it.  That simply does not appear to be what

17  Congress intended to do.

18        Another important point on this and their argument is

19  you can fix the qualified individual argument.  The difficulty

20  by interpreting that language only to apply to the state

21  Exchanges is they've contradicted themselves because on the

22  issue of abortion which has to do with the state's power to

23  issue abortion rules with State Exchanges, they've answered

24  that by saying well, you know, actually probably there it means

25  both State and Federal so the states probably do have that

1   power.  Well they can't have it both ways.

2        In their brief the way they describe what the argument

3   they are presenting to you was that they were agnostic whether

4   Exchange meant State or Federal.  Well, they can't be agnostic.

5   There are really fundamental problems that their theory would

6   create with the operation of the Affordable Care Act as a

7   whole.  And if they had one route, they're creating one set of

8   huge problems.  If they go another route they're creating

9   another set of huge problems.  And again, they can't disavow

10  those problems by saying oh, we don't really care which way the

11  Court goes.  There are fundamental inconsistencies with the

12  operation of the statute that arise no matter how the

13  plaintiffs end up describing their statutory theory.

14       Now speaking next to the legislative history.

15       THE COURT:  Do you agree that only becomes relevant

16  if you get to Chevron step two?

17       MR. MCELVAIN:  No.  My understanding is there's

18  authority a legislative history can be used at step one, Brown,

19  Williamson and other similar cases, but I'm perfectly happy to

20  win at step two as well.  That is something that I am happy to

21  win under either two or one.  And certainly at a minimum we've

22  advanced at least a reasonable reading of the statute.

23       But here's the point on the legislative history.  Both

24  plaintiffs and I have presented, have acknowledged the House

25  was proceeding on the assumption that there would be a National

1   Exchange and there would be tax credits on the National

2   Exchange.  That was sort of a foundational part of the House's

3   version of the bill.  There's certainly no question that at

4   least one House of Congress was absolutely on the record yes,

5   tax credits on the federally run Exchange.

6           THE COURT:  What relevance is there of their bill

7   becoming law?

8           MR. MCELVAIN:  Well, the point is the Senate passed

9   its bill and what plaintiffs say well, we don't care about what

10  the House thought because intervening events there was an

11  election of another senator and he had to go through

12  reconciliation instead of a conference where that might have

13  been sorted out.  But that doesn't matter because the question

14  of whether tax credits applied or not was certainly a matter

15  the House could have raised at reconciliation if they wanted

16  to.  It's a budgetary matter.  So they certainly could have

17  raised it.  And in fact they did actually address 36B in the

18  Reconciliation Act because they amended the amounts, they

19  raised it to the income level of 400 percent which would be the

20  amount that --

21          THE COURT:  They being who?

22          MR. MCELVAIN:  The House in their version of the

23  Reconciliation Act, inserted that and the Senate acceded to

24  that so that became part of the law.

25          So the House wouldn't have paid such close attention to

1 that issue, to the question of the amounts but then just

2 silently ignored the fact that tax credits were going away

3 entirely in some states.

4     Now the fundamental problem with the plaintiffs'

5 analysis of what the legislative history is there's just no

6 history at all on their side.  This would have been a major,

7 major component of the Affordable Care Act structure if

8 Congress intended to take away the tax credits from some of the

9 states.  It would have been discussed.  It would have come up

10 and they have cited to nothing.  There's no language anywhere

11 in the statute whatsoever where any legislative history that

12 the idea was even being considered let alone considered and

13 rejected.

14     And last week in the reply they cited to an Article from

15 the Harlen Texas News.  I encourage the Court to click on the

16 link of the web page provided you can read it.  It says

17 absolutely nothing at all about whether tax credits would be

18 available under the national Exchange.

19     The only other piece of evidence that they cited again

20 in their reply brief was the colloquy before the Senate Finance

21 Committee.  I encourage the Court to consult the source.  It

22 says absolutely nothing at all about whether tax credits would

23 be available on the National Exchange.  The only two items that

24 they purportedly dug up do not even remotely say what they have

25 cited.

1     But most fundamentally in addition to the tax and the

2  structure of the Act and legislative history there is the point

3  that Congress' purpose would be fundamentally undermined under

4  plaintiffs' theory.  Congress was well aware that the tax

5  credits were absolutely essential to the operation of the

6  exchanges.  You need the credits to encourage healthy people to

7  come in for the exchanges to operate, to keep premiums low, to

8  expand coverage.

9     Now plaintiffs' counsel says well, yeah, we agree

10  they're all essential and are very important and they actually

11  would be significantly hampered if we win, but the Court should

12  just ignore that because the Court shouldn't rewrite the

13  statute.  First of all, the Court is not rewriting the statute

14  as we've explained under the text.

15     The better reading of the statute is that tax credits

16  are available, but it's also more common sense point; what did

17  Congress intend?  Did Congress intend to insert a time bomb

18  under the Affordable Care Act that would dramatically hamper

19  its effectiveness subject to the veto of a state.

20     Now their answer to that is yeah, we think Congress

21  intended that, not citing to anything that, anything at all

22  contemporaneous except that Congress did consider that but they

23  said Congress intended because they needed incentives for the

24  states to set up the Exchanges.

25     Well, you have to assume that Congress had no other

1   incentives to offer when in fact they did.  They had

2   appropriations.  There's money available to the State to set up

3   State Exchanges.  There was the point that the Federal

4   Government would operate the Exchange in the absence of a State

5   operating Exchange and regulatory authority would flow from

6   that.  So there certainly were incentives for the States to

7   operate the Exchanges.

8        The notion that Congress had to go further and create

9   this enormous carrot or enormous stick of taking away the

10  operation of the Exchange entirely, taking away this

11  extraordinary valuable tax credit available to the citizens of

12  particular states simply doesn't make sense.

13       And certainly if such an enormous step were going to be

14  taken, you would expect Congress to express that point, explain

15  what it's doing not only in the legislative history, but have

16  explained what it was doing to the states so the states knew

17  that this was the intended purpose of the Act was as opposed to

18  hunting for a great interpretation two years later down the

19  road.

20       So for those reasons the tax structure, the history and

21  purpose, the Federal reading of the statute is that tax credits

22  are available in all of the Exchanges.  Certainly a reasonable

23  meaning, certainly we prevail under Chevron step one or step

24  two.

25       Turning now to irreparable injury.  This whole

1   discussion of course can be rendered moot very quickly if you

2   go to the irreparable injury.

3            THE COURT:  If you lose the motion to dismiss it's

4   not moot, it's just postponed.

5            MR. MCELVAIN:  Correct, correct.  But in terms of

6   specifically the preliminary injunction motion, it's quite

7   clear that they can't show irreparable injury.

8            Their claim at bottom is that Mr. Klemencic is subject

9   to a potential assessment under 5000A for not carrying

10  qualified insurance.  Even if he goes without insurance for a

11  year is $100.  Again, I cited 150 in the brief.  I'm happy to

12  use the 150 figure or you can even go one month and owe 12

13  bucks or whatever for one months worth of penalty.  That is not

14  irreparable injury.  Monetary harm alone is not irreparable

15  injury.  Even in cases where remote, not remotely like this

16  case where monetary injuries have been balanced to rise to the

17  level of being irreparable, they are great, they are certain,

18  they threaten the possibilities that the plaintiffs' business

19  could survive if they take that sort of hit.  An $18, $12, $100

20  penalty that they may owe 12 months down the road is simply not

21  even close to irreparable injury under that sort of analysis.

22           They say well, it's irreparable because there's this

23  mandate and we are obliged to comply with the law.  And you

24  can't force us of not complying with the law.  The entire

25  argument is being presented as if the NFIB decision from the

1   Supreme Court ever happened.  The Supreme Court in the NFIB

2   very clearly said that 5000A is a tax provision.  If you don't

3   get insurance, you're, you're still in compliance with the law.

4   You just owe a tax.

5        So it's a, it's not a choice between complying with the

6   law and being penalized like in Sackett or Escarte young or

7   some of the other decisions that they cited.  You are in full

8   compliance with the law if you go the route of not buying the

9   insurance, you are just subject to a tax and you can pay the

10  tax at a later date.

11       So for that reason it's quite clear that there's not

12  even remotely a case for irreparable injury here, and the PI

13  motion can be denied on that ground alone.

14       Just to briefly on the remaining factors if I may.

15            THE COURT:  Before you get to the remaining, let's

16  talk a little bit about the timing.  I want to be clear on what

17  happens with this particular plaintiff or whatever his

18  obligations or penalties on December 31st versus March 31st

19  versus February 15th.

20       We've got a date for enrollment if he wants to, if he

21  chooses to enroll -- wants is the wrong verb.  A date for

22  enrollment if he chooses to enroll.  We've got a date by which

23  he must obtain a certificate of exemption if the lawsuit comes

24  out in the way where he would still be exempt.

25            What are the relevant dates?

1          MR. MCELVAIN:  So the open enrollment period goes to

2     March 31st for this year.  Future years it will be a little

3     shorter period, for this year it will be March 31st.

4          In theory the 5000A tax penalty could kick in for the

5     failure to have qualified coverage in January, but there is a,

6     there's a three month exemption.

7          You have to have, there's a short coverage gap exception

8     from the tax penalty.  So you have to have gone for insurance

9     for three months in a row for you to be subject to the tax

10    penalty.

11         So actually the first month that somebody could

12    potentially be subject to the tax penalty would be March and if

13    you have coverage by February 15th, you will have coverage from

14    March, so in that sense February 15th is the date.  But

15    remember, what happens if you go without coverage for March you

16    would incur one months worth of the tax penalty which in

17    Mr. Klemencic's case is $12 or $18, but take the $12 figure, a

18    very low figure.

19         THE COURT:  What about the certificate of exemption

20    if somebody qualifies for that?

21         MR. MCELVAIN:  He can apply for the certificate of

22    exemption at any time up to the end of the enrollment period,

23    up to March 31st.

24         THE COURT:  So up to March 31st?

25         MR. MCELVAIN:  Correct.  And they would apply

1  respectively after that.  The certificate of exemption is just

2  that, a certificate.  He doesn't need that to litigate his

3  potential tax liability later.  He can just go straight to the

4  tax refund action and claim I shouldn't have been subject to

5  this $18 penalty.

6       Just very briefly on the remaining factors.  There's an

7  inherent harm to public interest from preventing an agency in

8  implementing a regulation that Congress has charged it with.

9       The plaintiffs have argued that it's an enormous public

10 interest in proceeding with this case now to get an answer to

11 their question, but for the reasons we've discussed before

12 they're not going to get the answer to that question now.  You

13 get a ruling with respect to one plaintiff that wouldn't bind

14 other plaintiffs.  So they would be injecting chaos into this,

15 they  would not be removing uncertainty from the system.

16 Particularly in the case that right now they are seeking a

17 preliminary injunction.  A preliminary injunction certainly

18 could not resolve anything.

19       THE COURT:  But what could provide an answer

20 particularly for these plaintiffs is a ruling for summary

21 judgment.  They could file a motion for summary judgment and I

22 enter an order staying your obligation to respond.  To expedite

23 I can deny the motion to dismiss, we could expedite the motion

24 for summary judgment.

25       MR. MCELVAIN:  The Court has the discretion to do so.

1  I think that there's no need to expedite for the same reasons

2  that there's no irreparable harm.  We're just talking about,

3  you know, a $100 penalty.  But certainly if we proceed to

4  summary judgment, I definitely do want a second brief.  There

5  are points that I would have loved to respond to in briefing.

6          THE COURT:  You haven't responded at all to the

7  motion for summary judgment.

8          MR. MCELVAIN:  No, correct.

9          THE COURT:  Except in the context of the preliminary

10 injunction papers.

11         MR. MCELVAIN:  Correct, but that's the point is that

12 we would need additional briefing.

13         THE COURT:  Okay.

14         MR. MCELVAIN:  I have nothing further.

15     Thank you, Your Honor.

16         MR. CARVIN:  Your Honor, you show amazing patience

17 and I'll try not to test it.  But I do want to go through what

18 I think opposing counsel called the legal fiction, it's

19 certainly fiction.  I don't think it's very legal.

20     He focuses on the words the states shall create

21 something under 1311 as if that brings anything to the table.

22 But remember, the words such Exchange which appear in 1321 and

23 the entire premise of 1321 is that the state has not done it.

24     In other words, the Secretary never steps into the shoes

25 unless the state has not done it, unless the fiction is gone,

1  right.  The fiction that the state is obliged goes away because

2  they knew was a fiction and they said well, what happens if

3  they don't adhere to our non-binding command.  Well, here's how

4  it works.

5      Well if that's the section we're talking about, you

6  can't say that Congress thought when they were authorizing the

7  Secretary to establish Exchange in lieu of the State

8  establishing the Exchange that they were somehow saying that

9  the state was establishing the Exchange.

10     You went through the reporting requirements with him and

11 two points on that, 36B F 3.  One is they expressly contemplate

12 Exchanges under Section 1311 or 1321.  So they knew there were

13 different Exchanges and they knew they were listing reporting

14 requirements for both of them.

15     And to answer Your Honor's question directly A, B, and D

16 have nothing to do with subsidies and it would be binding on

17 the Federal Exchanges under our theory.

18     The alternative would be to create this okay, now we'll

19 have, now we'll create a separate section and we'll have one

20 with all six of these and then we'll have another one with just

21 three of them.  That's just a wasted page.

22     So this tells you nothing other than reconfirming that

23 Congress thoroughly understood the difference between 1311 and

24 1321 Exchanges and was issuing a list as they say which both

25 Exchanges have to comply with.

1      The, you asked about the word such and I will just

2   briefly.  I don't care if you call it such or I don't care if

3   you call it the.  The point is that the Exchange is the same.

4   We all agree with that.

5      But the point for the subsidy provision is that the feds

6   are stepping into the shoes to borrow their formulation.  Well,

7   if you're stepping into somebody else's shoes that means you

8   are somebody different than the person in the shoes.  So when

9   the feds step into the shoes, it is no longer an Exchange

10  established by the State.  It's an Exchange established by the

11  feds because the State didn't establish it.

12     So whatever cathedral they want to erect around the word

13  such it doesn't get them anywhere near where they need to go.

14     This qualified individuals point.  Again, why they think

15  this flows from our argument as opposed to theirs.  This says

16  you are not a qualified individual unless you reside in the

17  State that establishes Exchange.  It is common ground between

18  us that the State didn't have to establish the Exchange.

19     And under their theory, it's not the State establishing

20  the Exchange, it's that you'll treat the federally established

21  Exchange as the State established Exchange which doesn't solve

22  this problem.

23     So I guess what they mean by if you adhere to their

24  theory they win.  Their theory at a certain level of generality

25  is ignore the statutory language so they can win every argument

1   by ignoring this statutory language like they're ignoring that

2   statutory language.

3        But if you want to get off the horns of this dilemma

4   it's really simple.  It says the term qualified individuals

5   with respect to an Exchange.  An Exchange we both agree means

6   an Exchange under 1311 which means that this only applies to

7   State Exchanges which are the ones that have the subsidy.

8        So, there's just no problem at all.  They keep saying

9   that's our argument oh, because we said we're agnostic.  Maybe

10  I should clarify.  I'm agnostic as to every legal issue that

11  doesn't effect this one.  But we have never resisted the notion

12  that Exchanges under 1311 that Exchange means Exchange under

13  1311.  We're perfectly happy with that.

14       In terms of prong two, whether we are at Chevron prong

15  two.  I will just briefly point out that even if we're there,

16  they can't have in the words of the D.C. Circuit, they can't

17  make nugatory certain restrictions in the statute.  That's

18  Chevron prong two, that's AFL CIO, 409 F.3d, 377.  If you could

19  also look at Massachusetts v. DOT, 93 F.3d 890.

20       The point is ambiguity gets you to the second prong, but

21  they've still got to reasonably resolve the ambiguity.  So even

22  if we want to say this isn't the best written statute in the

23  world, there's always some ambiguity, great.  But the way they

24  resolve it has to also be reasonable whether we're under prong

25  one or prong two.

1        Legislative history, your colloquy with opposing counsel

2    confirms what I said which is it doesn't add a whole lot, but

3    we are not relying on it, but I will make two points.

4    Mr. Jost, one of the principle architects to this.  The guy who

5    was invited to the White House signing ceremony proposed

6    exactly this.  It's in our briefs.  Said look, the best way to

7    accomplish this is to condition these subsidies on it.

8        They say would they ever have done something this major

9    without talking about it, but they miss the point that we

10   repeated ad nauseam which is nothing major got done in the

11   reconciliation because nothing major could get done because all

12   you could do with these minor things.

13       In terms of irreparable injury, I will only point out

14   yet again that all of his arguments assume that Mr. Klemencic

15   is going to define the individual mandate and he keeps saying

16   it's a tax so what do you care.  Well, a $150 dollars is a

17   $150.  And number two, for AIA purposes it is a penalty which

18   is the language that they use.

19       I know you can read NFIB, I'm pretty conversant with the

20   opinion.  No, they definitely said that penalties were taxed.

21   But my major point is that they assume that he doesn't mind

22   paying the penalty.  That's not at all true.  And if he does

23   give in to the Government coercion, then he is out of court

24   permanently.

25       And yes, it is a $150 to Mr. Klemencic but it's tens of

1    billions of dollars to Federal taxpayers, and I think to shrug

2    it off and say don't worry about this case because it's no big

3    deal really begs it's reality.

4          Thank you, Your Honor.

5              THE COURT:  Anybody else need to say anything?

6              (Pause.)

7              THE COURT:  So if everybody is free tomorrow at ten,

8    I'll give you an oral opinion.  Does that work?

9              MR. CARVIN:  Yes, Your Honor, thank you.

10             THE COURT:  So I'll see you at ten o'clock tomorrow

11   morning.

12             (Proceedings concluded at 1:07 p.m.)

13                              -oOo-

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

    I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the stenographic notes provided to me by the United States District Court, of the proceedings taken on the date and time previously stated in the above matter.

    I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____         _____
/s/Crystal M. Pilgrim, RPR                Date: November 26, 2013

$   Case 1:13-cv-00623-PLF

**$**
$10,000 [1]   21/20
$100 [5]   21/10 21/22
 104/11 104/19 108/3
$12 [5]   22/2 61/9 104/19
 106/17 106/17
$150 [10]   21/10 21/12
 21/23 22/18 22/19 39/16
 85/15 112/16 112/17
 112/25
$18 [20]   3/21 3/25 4/8
 4/8 22/17 32/9 33/16
 33/18 34/11 36/8 52/11
 52/12 52/23 53/1 54/4
 54/25 85/22 104/19 106/17
 107/5
$20,000 [2]   21/19 32/17
$21,000 [3]   32/17 32/21
 33/5
$25 [2]   34/12 55/1
$25,000 [3]   33/12 36/6
 54/15
$30,000 [1]   31/9
$40 [1]   55/2
$438 [2]   34/10 34/17
$463 [1]   34/13
$5,000 [1]   21/20
$51 [1]   33/13
$600 [1]   33/7
$6500 [1]   5/18
$8 [1]   22/2

**-**
-------------------------
 1/7
-oOo [1]   113/13

**/**
/s/Crystal [1]   114/12

**1**
10 [1]   34/25
10,000 [1]   31/10
1018 [1]   33/4
10831 [1]   96/6
10:05 [1]   1/6
11 [1]   76/9
11:45 [1]   68/10
11th [2]   32/8 33/5
12 [5]   32/16 65/1 68/11
 104/12 104/20
13-623 [2]   1/4 2/2
1311 [49]   68/25 69/6 70/9
 70/16 70/21 71/24 72/8
 72/17 72/19 72/24 73/2
 73/4 73/5 73/7 73/8 73/9
 73/13 73/15 73/21 73/22
 73/25 74/3 74/4 74/7 74/9
 74/13 74/14 74/15 74/16
 74/17 74/19 75/14 76/21
 76/25 78/13 78/15 88/5
 89/18 89/20 89/24 91/8
 96/12 96/12 108/21 109/12
 109/23 111/6 111/12
 111/13
1321 [20]   70/11 70/16
 70/20 70/21 71/22 71/22
 72/3 72/9 72/14 72/21
 73/22 73/25 74/6 77/18
 88/20 91/8 108/22 108/23
 109/12 109/24

1321C [1]   89/23
14th [1]   15/24
15 [2]   20/2 68/7
150 [2]   104/11 104/12
15th [5]   39/14 85/2
 105/19 106/13 106/14
18 [8]   28/23 28/25 42/18
 42/25 43/10 43/13 52/22
 54/3
180 [1]   11/8
18023 [1]   76/18
1803 [1]   88/22
18031 [10]   89/8 89/11
 89/17 89/18 90/5 90/5
 90/15 90/23 93/23 95/21
18032 [2]   71/7 98/4
1804 [1]   93/23
18041 [5]   88/20 89/9
 90/15 90/23 91/4
18043 [1]   71/15
18431 [1]   88/9
18th [1]   52/6
19 [1]   63/11
1:07 [1]   113/12
1st [4]   33/23 35/12 35/15
 84/8

**2**
20 [3]   1/18 33/10 89/14
20001 [2]   1/19 1/22
20001-2113 [1]   1/15
2013 [3]   1/6 95/23 114/12
2014 [13]   19/18 19/19
 19/21 19/22 19/25 20/2
 21/10 21/16 21/19 21/22
 32/14 84/8 84/9
2015 [7]   19/21 19/23 20/2
 20/4 20/6 20/17 39/14
2016 [2]   39/18 39/21
2017 [2]   86/9 86/19
2018 [3]   39/20 86/10
 86/19
21 [5]   1/6 36/6 89/9
 89/15 89/16
2113 [1]   1/15
218 [1]   51/14
25,000 [1]   33/6
26 [4]   24/6 74/3 92/10
 114/12
27th [8]   3/24 33/17 33/22
 34/9 34/16 35/5 35/15
 51/25

**3**
30 [1]   85/1
300 [1]   89/13
300GG [1]   89/24
30th [1]   84/25
31 [2]   52/16 84/9
31st [9]   84/11 84/16
 84/20 105/18 105/18 106/2
 106/3 106/23 106/24
3211 [1]   88/9
333 [1]   1/22
36 [4]   68/22 71/19 74/3
 83/17
36B [14]   7/15 12/5 75/11
 88/3 90/20 90/21 90/21
 92/10 93/22 93/24 96/22
 96/23 100/17 109/11
377 [1]   111/18

**Comment 63 Filed 12/30/13   Page 115 of 141**

390 [1]   33/6
3BE [1]   95/11

**4**
400 [1]   100/19
409 [1]   111/18
42 [2]   88/9 89/13
434 [1]   36/7
438 [2]   34/21 35/4
44 [2]   34/10 35/4
463 [2]   34/18 35/8
4980 [6]   6/16 6/24 7/6
 59/15 59/20 59/22
4980H [12]   24/9 24/12
 24/14 24/20 27/2 27/4
 27/6 27/12 27/18 27/19
 55/17 63/21

**5**
50 [6]   75/22 81/16 82/25
 83/1 83/4 83/6
5000A [7]   24/19 24/20
 27/17 27/19 104/9 105/2
 106/4
508 [1]   21/10
51 [1]   1/15

**6**
60 [1]   81/17
623 [2]   1/4 2/2

**7**
703 [3]   17/12 18/3 23/10
704 [3]   17/13 18/3 23/11
7421 [1]   24/6

**8**
890 [1]   111/19

**9**
91 [1]   89/14
93 [1]   111/19

**A**
A-P-A-C-H-E [1]   17/1
a.m [2]   1/6 68/10
Abbott [1]   85/11
ability [5]   6/25 7/5
 37/10 50/7 114/3
able [5]   34/4 62/6 64/1
 78/16 85/10
ably [1]   85/2
abortion [5]   76/18 76/22
 77/5 98/22 98/23
about [70]   5/13 6/20
 23/20 24/1 25/22 25/25
 26/2 29/17 35/8 35/19
 39/9 41/12 44/20 44/25
 45/12 46/9 47/14 48/11
 49/8 50/3 50/13 51/12
 59/14 60/2 60/5 61/11
 64/12 68/6 68/7 68/12
 71/8 71/18 74/25 75/7
 76/7 76/15 77/20 80/22
 81/1 81/6 82/13 82/14
 82/15 82/18 84/2 84/5
 84/8 84/11 86/11 86/13
 86/13 87/9 87/13 92/13
 92/15 95/3 95/3 95/13
 95/14 95/22 100/9 101/17
 101/22 105/16 106/19
 108/2 109/5 110/1 112/9

A   Case 1:13-cv-00623-PLF
about... [1]  113/2
above [2]  114/3 114/6
absence [3]  29/8 69/25 103/4
absent [3]  13/25 28/16 71/18
absolute [3]  44/17 54/5 54/20
absolutely [7]  13/13 13/19 28/7 100/4 101/17 101/22 102/5
absurd [9]  37/19 69/8 75/1 77/3 85/21 91/12 91/15 93/6 93/9
absurdity [2]  75/5 75/10
academic [2]  67/1 67/11
accede [1]  81/21
acceded [1]  100/23
accept [12]  4/8 36/3 37/9 37/12 52/12 74/7 74/13 74/25 75/2 76/20 77/2 96/8
accepting [1]  73/3
accomplish [1]  112/7
acknowledged [2]  15/5 99/24
acknowledges [1]  77/17
across [1]  67/18
act [77]  3/4 3/8 6/1 7/23 9/23 11/6 15/20 23/20 24/5 24/6 24/10 24/12 25/5 25/7 25/15 25/22 26/20 27/3 27/4 27/10 27/13 27/21 32/3 38/16 41/5 41/6 41/6 46/18 46/21 46/25 47/4 47/12 47/25 47/25 49/8 54/8 59/4 59/5 59/6 59/13 60/4 63/4 63/14 63/21 65/18 67/5 71/7 71/9 74/24 74/24 76/16 81/3 85/5 87/22 88/6 88/15 88/20 89/6 89/6 89/9 90/15 93/19 94/6 96/7 96/14 96/23 97/1 97/7 97/7 97/19 99/6 100/18 100/23 101/7 102/2 102/18 103/17
action [24]  2/2 15/19 17/13 17/18 17/23 18/1 18/1 23/3 23/6 23/14 41/16 53/21 56/25 60/10 61/7 61/10 62/8 62/9 62/13 85/5 85/6 107/4 114/8 114/10
actions [2]  21/4 57/12
activity [5]  30/20 31/2 31/6 31/18 37/22
actual [4]  21/14 26/12 33/5 52/16
actually [27]  3/22 5/4 13/5 13/15 14/17 15/13 15/13 15/18 18/20 19/10 22/25 32/2 39/9 42/2 55/1 55/20 59/20 64/4 72/21 74/23 78/20 87/24 96/25 98/24 100/17 102/10 106/11
ad [1]  112/10
add [2]  39/20 112/2

adding [2]  70/20 90/17
addition [4]  102/1 2/30/13
additional [3]  44/16 49/1 108/12
address [11]  10/15 29/10 29/23 43/5 58/6 64/18 65/4 65/9 65/12 65/14 100/17
addresses [2]  59/25 61/20
adequacy [1]  17/20
adequate [1]  23/9
adhere [2]  109/3 110/23
adjudicate [7]  12/23 13/2 16/19 28/19 50/7 50/22 55/20
adjudicated [2]  29/4 29/6
adjudicating [2]  13/18 57/11
adjustment [1]  21/21
adjustments [1]  21/12
administered [3]  17/16 92/1 97/3
administering [1]  91/21
administration [3]  16/20 21/5 63/3
administrative [3]  63/13 67/5 79/24
admitted [1]  12/8
ADP [1]  37/17
advance [1]  93/5
advanced [2]  90/25 99/22
affecting [1]  56/17
affordable [20]  3/4 3/5 3/8 4/24 5/19 6/1 7/23 11/6 12/5 12/18 37/8 54/8 63/3 70/3 87/21 88/6 89/6 99/6 101/7 102/18
AFL [1]  111/18
after [23]  18/13 18/21 19/6 19/7 19/8 20/4 20/6 20/14 20/15 20/21 20/22 30/19 40/11 40/20 46/5 64/14 73/10 79/10 82/5 85/11 86/1 90/16 107/1
afternoon [2]  68/14 87/19
again [2]  5/19 5/20
12/12 14/14 21/22 34/5 37/1 41/23 41/25 45/3 46/18 47/1 47/14 49/18 51/15 52/22 53/25 54/16 59/23 60/14 64/5 66/13 76/9 78/19 79/16 82/18 84/4 85/11 93/6 93/16 96/13 96/15 98/1 99/9 101/19 104/11 110/14 112/14
against [3]  26/3 26/17 27/7
agency [10]  17/23 22/4 37/2 37/3 37/4 37/6 43/23 62/17 93/19 107/7
agency's [1]  80/5
aggregate [1]  90/24
agnostic [4]  99/3 99/4 111/9 111/10
ago [3]  62/12 71/6 89/20
agree [11]  14/3 37/4 46/23 46/24 47/3 53/14 72/6 99/15 102/9 110/4 111/5
agreed [2]  48/9 67/19

agrees [1]  38/1
ahead [5]  22/25 23/2 50/4 58/15 61/17
AIA [10]  40/19 40/20 41/11 46/17 47/7 49/9 49/10 49/15 85/16 112/17
aided [1]  1/24
aims [1]  3/16
AIS [1]  41/9
al [4]  1/3 1/5 2/3 2/3
alert [1]  35/18
Alexander [2]  23/5 59/23
alienated [1]  70/4
alienating [1]  70/5
all [89]  2/12 2/19 3/6 3/16 4/14 5/14 6/17 9/25 10/2 10/18 11/16 13/23 14/4 14/16 20/16 29/14 30/6 30/11 30/19 31/1 31/25 33/12 36/3 39/3 40/11 43/17 44/1 44/11 44/18 46/6 47/16 50/1 50/15 52/13 52/18 52/23 54/5 58/10 66/12 66/12 67/1 69/8 72/3 73/3 73/7 73/17 73/25 74/19 75/4 75/5 75/22 77/3 80/8 80/9 81/6 81/9 81/11 82/14 82/23 82/25 83/1 83/4 83/6 83/11 85/17 86/15 86/18 88/1 89/22 92/14 96/8 97/4 98/11 98/12 98/15 101/6 101/17 101/22 102/10 102/13 102/21 103/22 108/6 109/20 110/4 111/8 112/11 112/14 112/22
allegation [1]  21/18
allege [2]  14/7 15/13
alleged [1]  14/10
alleging [1]  6/19
Alliance [1]  95/10
allow [4]  13/2 13/2 21/4 78/24
allowed [3]  13/9 15/4 15/17
allows [1]  81/16
almost [1]  76/6
alone [3]  101/12 104/14 105/13
along [2]  50/9 82/9
already [6]  12/22 32/24 43/15 47/16 48/3 86/24
also [21]  5/23 12/20 16/1 27/8 28/11 28/12 34/20 35/10 35/14 38/3 47/19 47/23 51/18 58/23 72/20 75/17 81/23 95/11 102/16 111/19 111/24
alternative [1]  109/18
alternatively [1]  74/1
although [2]  62/15 94/2
always [2]  45/11 111/23
am [14]  4/22 46/16 49/2 52/11 52/12 53/5 66/21 85/2 99/20 114/7 114/9
amazing [1]  108/16
ambiguity [4]  80/4 111/20 111/21 111/23
ambiguous [1]  80/12
amended [1]  100/18

**A**    Case 1:13-cv-00623-PLF

Amendment [2]   15/24 15/24
American [10]   23/5 31/5
  34/19 59/23 88/12 89/7
  89/10 89/17 90/4 96/13
amount [8]   21/9 21/17
  21/19 22/1 69/2 90/25
  91/2 100/20
amounts [4]   23/13 27/7
  100/18 101/1
analogous [1]   16/14
analysis [14]   14/4 17/14
  22/4 23/11 25/12 26/23
  47/17 47/19 52/13 82/9
  95/15 95/24 101/5 104/21
analyst [1]   44/22
analytical [1]   26/9
Animals [1]   93/17
anonymous [1]   27/16
another [10]   10/1 11/19
  27/17 56/8 59/10 98/18
  99/8 99/9 100/11 109/20
answer [11]   13/5 25/6
  35/14 49/21 49/22 94/20
  102/20 107/10 107/12
  107/19 109/15
answered [1]   98/23
answers [1]   90/19
antecedent [2]   95/18
  95/18
anti [32]   23/20 24/5 24/6
  24/10 24/12 25/4 25/6
  25/15 25/22 27/3 27/10
  27/13 27/21 41/5 41/6
  41/6 46/17 46/18 46/21
  46/24 47/4 47/12 47/24
  47/25 49/8 59/4 59/5 59/6
  59/13 65/18 65/22 65/23
anti-injunction [32]
  23/20 24/5 24/6 24/10
  24/12 25/4 25/6 25/15
  25/22 27/3 27/10 27/13
  27/21 41/5 41/6 41/6
  46/17 46/18 46/21 46/24
  47/4 47/12 47/24 47/25
  49/8 59/4 59/5 59/6 59/13
  65/18 65/22 65/23
any [56]   6/20 10/5 11/21
  24/3 26/9 27/10 27/10
  27/11 27/11 28/16 30/6
  31/4 31/19 31/23 38/9
  40/7 46/22 49/1 49/19
  52/15 53/12 57/24 58/10
  58/16 58/17 61/1 62/3
  64/16 67/19 68/2 71/6
  71/20 75/7 75/23 76/1
  76/4 77/2 79/5 81/4 81/18
  81/21 81/24 82/8 82/16
  86/21 87/13 90/16 90/22
  90/25 90/25 91/1 91/6
  92/21 101/11 106/22 114/8
anybody [4]   11/10 31/8
  71/13 113/5
anymore [1]   9/7
anyone's [1]   77/22
anything [17]   13/10 15/5
  33/24 41/9 48/10 49/20
  50/11 64/15 66/4 77/19
  80/21 91/14 102/21 102/21
  107/18 108/21 113/5

anyway [2]   20/17 22/25
anywhere [3]   74/20 101/10
  110/13
APA [15]   8/2 8/21 17/8
  17/17 18/3 43/6 43/16
  56/2 57/12 61/12 61/13
  62/1 62/4 62/13 66/10
Apache [3]   16/15 16/24
  16/25
apart [3]   46/18 68/1
  72/23
apartment [1]   16/15
Apartments [1]   16/24
apologize [2]   20/1 34/5
apparent [1]   95/20
apparently [3]   30/22
  43/19 74/22
appealable [1]   58/21
appear [2]   98/16 108/22
APPEARANCES [1]   1/12
appears [1]   24/21
appellant's [1]   87/9
appellee [1]   87/10
application [3]   7/18 18/3
  79/13
applied [2]   6/16 100/14
applies [15]   12/1 12/13
  13/4 16/9 26/5 27/19
  46/19 63/1 67/15 69/5
  72/20 78/14 78/16 93/21
  111/6
apply [56]   9/4 12/12 15/2
  16/7 17/19 17/22 22/16
  24/12 27/4 40/20 46/14
  46/25 47/12 48/4 49/10
  52/24 55/2 57/11 60/6
  62/14 65/19 67/18 70/17
  71/14 76/3 76/12 86/1
  93/8 93/25 98/20 106/21
  106/25
applying [1]   98/6
approach [1]   25/12
appropriations [1]   103/2
April [4]   20/2 39/14
  39/21 84/25
arbitrary [5]   8/3 8/24
  55/24 62/1 62/4
architects [1]   112/4
are [191]
area [2]   34/23 34/24
aren't [2]   13/23 14/5
arguable [1]   32/6
argue [10]   7/10 8/20 14/2
  28/13 37/19 42/24 68/18
  77/24 78/2 92/9
argued [3]   31/25 60/8
  107/9
arguing [5]   24/8 50/16
  62/24 63/25 94/19
argument [62]   4/9 10/25
  17/13 18/5 22/24 23/2
  25/7 26/4 32/22 35/8 37/2
  37/11 37/13 37/14 38/3
  38/6 41/1 44/6 46/15
  46/18 47/14 50/10 53/16
  61/11 61/25 63/11 63/11
  63/12 63/19 63/20 72/20
  75/1 75/10 76/6 76/9
  76/23 76/24 76/24 77/2
  77/9 80/14 80/16 80/24
  81/23 82/17 82/17 91/15

91/16 92/6 92/21 92/24
  93/7 94/3 94/18 98/3
  98/18 98/19 99/2 104/25
  110/15 110/25 111/9
arguments [10]   23/25 24/4
  44/16 61/12 66/23 73/23
  74/22 76/20 94/2 112/14
arise [1]   99/12
arisen [1]   13/16
arises [3]   55/17 55/17
  63/21
around [3]   26/19 49/23
  110/12
art [2]   19/11 89/7
Article [28]   3/11 4/16
  5/7 5/23 22/22 26/16 36/9
  44/18 45/12 45/18 48/18
  50/1 51/24 53/10 53/15
  53/23 54/12 55/5 55/9
  55/11 55/13 59/10 61/19
  64/13 66/8 67/17 67/21
  101/14
as [88]   3/23 5/17 5/22
  7/7 8/17 11/23 12/4 12/21
  13/20 15/23 15/25 17/8
  19/1 22/10 27/8 28/3
  28/25 29/16 29/16 31/8
  34/15 34/22 35/24 35/24
  36/3 38/1 38/5 38/21 39/8
  39/9 39/24 45/7 48/8
  48/12 49/3 49/14 51/14
  52/7 55/17 57/17 61/4
  61/13 61/16 61/18 62/4
  62/7 63/21 63/22 65/10
  66/25 69/15 69/22 70/3
  71/6 71/16 71/24 72/7
  74/12 76/17 78/11 78/21
  80/10 81/9 81/16 83/9
  83/13 86/4 86/4 86/19
  86/22 87/20 87/22 89/7
  89/13 92/4 96/24 98/5
  98/14 99/6 99/20 102/14
  103/17 104/25 108/21
  109/24 110/15 110/21
  111/10
aside [12]   7/11 7/19
  11/18 56/1 58/13 62/1
  62/4 62/8 62/8 62/10
  63/13 63/15
ask [7]   9/15 18/9 25/11
  81/2 81/3 92/3 92/24
asked [1]   110/1
asking [5]   43/21 49/18
  70/12 70/13 93/18
asks [1]   70/8
asserted [1]   12/22
asserting [3]   11/4 12/1
  12/7
assessable [2]   25/17 26/1
assessed [5]   18/13 19/9
  19/10 26/17 27/7
assessing [1]   27/2
assessment [16]   10/12
  11/2 13/14 17/24 17/25
  21/8 21/25 24/14 46/13
  48/1 55/17 57/16 60/4
  61/21 61/22 104/9
assessments [1]   47/8
assume [7]   31/8 31/14
  32/7 73/17 102/25 112/14
  112/21

**A**    Case 1:13-cv-00623-PLF

assumed [3]   71/14 81/24
 82/10
assuming [1]   81/9
assumption [2]   82/8 99/25
assure [1]   33/21
assured [1]   34/9
astray [1]   26/8
attached [4]   14/21 30/2
 30/9 54/11
attack [1]   60/22
attacking [1]   26/14
attempt [1]   55/20
attempted [3]   3/14 16/3
 28/22
attempting [1]   64/3
attention [2]   58/1 100/25
attribute [1]   76/16
authorities [1]   15/12
authority [10]   9/24 13/1
 19/2 31/7 31/12 62/1 62/4
 64/21 99/18 103/5
authorizing [1]   109/6
automatically [1]   57/17
available [31]   3/6 5/6
 5/9 7/16 16/17 23/6 23/7
 23/9 23/12 23/12 33/20
 33/21 43/15 43/23 52/1
 52/17 54/3 54/25 68/23
 68/23 74/20 79/17 80/19
 80/23 88/1 101/18 101/23
 102/16 103/2 103/11
 103/22
Avenue [3]   1/15 1/18 1/22
avoid [2]   31/13 83/18
aware [3]   34/3 52/8 102/4
away [9]   50/16 66/15
 97/14 98/15 101/2 101/8
 103/9 103/10 109/1
awkward [1]   73/14
awkwardness [1]   73/18

**B**

back [18]   29/16 32/18
 32/19 36/6 36/16 38/7
 40/23 42/16 53/17 73/10
 73/19 73/19 86/2 88/19
 88/22 89/12 95/21 96/16
backwards [2]   95/25 96/3
bait [1]   86/16
balanced [1]   104/16
banc [1]   17/12
bar [1]   25/15
bargaining [1]   83/10
bark [1]   80/24
barriers [1]   3/10
bars [1]   24/6
based [3]   33/4 49/6 51/25
basic [2]   71/4 85/19
basically [6]   8/23 17/20
 33/8 39/23 52/7 73/23
basis [2]   4/16 34/21
battle [1]   10/23
be [152]
became [1]   100/24
because [121]
become [1]   20/5
becomes [1]   99/15
becoming [1]   100/7
been [21]   4/1 9/10 9/14

13/20 15/17 24/20 28/23
34/14 57/7 68/8 77/1 78/11
82/4 86/18 89/13 95/2
100/13 101/6 101/9 104/16
107/4
before [23]   1/9 2/23
 12/23 15/7 16/13 16/17
 19/22 23/5 24/2 33/23
 40/11 43/17 51/13 52/6
 60/14 78/25 84/18 85/5
 92/4 95/14 101/20 105/15
 107/11
begin [1]   29/24
beginning [1]   54/19
begs [1]   113/3
behavior [2]   60/25 61/4
behind [1]   50/6
being [11]   4/25 5/13
 26/17 30/20 37/21 87/2
 100/21 101/12 104/17
 104/25 105/6
belabor [1]   51/3
belief [2]   9/15 53/6
believe [5]   14/15 25/9
 49/1 63/2 66/3
believes [1]   53/5
Bend [1]   16/24
benefit [7]   5/15 11/14
 88/12 89/7 89/10 89/17
 90/4
benefits [1]   5/18
BERRY [2]   1/14 2/8
best [6]   31/20 33/1 76/17
 111/22 112/6 114/3
bets [1]   98/15
better [10]   5/16 5/19
 26/7 40/10 44/24 52/22
 53/1 53/11 53/13 102/15
between [11]   6/11 6/20
 15/9 15/10 15/22 33/22
 35/15 75/13 105/5 109/23
 110/17
beyond [2]   31/6 37/13
big [5]   69/14 78/25 81/19
 86/18 113/2
bill [5]   81/12 81/13
 100/3 100/6 100/9
billboard [1]   88/10
billions [3]   69/20 86/11
 113/1
bind [4]   57/15 64/6 64/6
 107/13
binding [5]   56/4 58/10
 58/23 109/3 109/16
binds [1]   57/14
birth [1]   32/1
bit [2]   72/18 105/16
bizarre [1]   40/17
blanket [1]   75/21
board [1]   67/18
boards [1]   68/20
Bob [4]   48/22 48/23 59/24
 60/20
bomb [1]   102/17
borrow [1]   110/6
both [18]   2/22 19/20 26/6
 33/4 34/22 50/1 80/19
 80/23 93/25 94/19 96/3
 97/21 98/25 99/1 99/23
 109/14 109/24 111/5
bothered [1]   41/11

bottom [11]   17/5 18/6
 21/7 26/15 26/25 27/1
 33/3 53/11 54/4 96/5
 104/8
bought [1]   40/5
bound [1]   57/10
break [2]   29/15 68/7
breaker [1]   69/11
breaking [4]   60/23 60/24
 61/2 61/5
brief [19]   9/11 14/16
 21/11 21/20 21/23 29/19
 44/12 53/17 58/12 78/19
 82/18 84/9 94/10 94/11
 95/11 99/2 101/20 104/11
 108/4
briefing [2]   108/5 108/12
briefly [5]   2/21 105/14
 107/6 110/2 111/15
briefs [8]   3/24 14/13
 16/2 18/20 18/21 19/2
 69/23 112/16
bring [13]   7/24 8/19 18/2
 21/25 22/3 23/3 28/16
 48/1 56/23 57/6 60/21
 61/8 61/9
bringing [2]   27/1 59/19
brings [1]   108/21
bronze [4]   4/11 5/16 54/3
 54/7
Bronze's [1]   52/22
brought [6]   10/4 14/24
 15/11 16/16 21/4 64/2
Brown [2]   81/14 99/18
bucks [1]   104/13
budget [3]   81/15 81/16
 81/20
budgetary [1]   100/16
bunch [1]   75/15
burden [1]   83/16
business [25]   5/22 10/19
 24/7 24/7 26/13 27/2
 28/12 28/21 29/9 31/12
 47/13 48/6 48/11 49/11
 50/10 55/13 59/5 59/14
 61/16 61/18 65/24 67/13
 67/24 77/5 104/18
businesses [9]   27/7 38/6
 38/8 41/14 41/16 44/15
 44/16 45/4 70/6
buy [15]   4/14 22/5 22/7
 22/9 22/25 23/1 23/2 30/1
 52/14 52/24 52/25 54/1
 54/20 54/23 84/25
buyer [1]   97/5
buyers [1]   98/2
buying [6]   4/23 22/10
 22/17 54/6 54/21 105/8
buys [1]   22/10

**C**

CA [1]   1/4
calculate [3]   34/20 51/6
 51/19
calculated [1]   4/1
calculation [1]   18/23
calculations [6]   32/25
 32/25 52/1 52/4 52/5
 91/19
call [6]   28/9 85/15 90/7
 90/9 110/2 110/3

| | | |
|---|---|---|
| **C**   Case 1:13-cv-00623-PLF | | |

**called [2]** 91/18 108/18
**calling [3]** 38/11 47/1
 93/11
**calls [1]** 91/3
**came [2]** 30/8 40/16
**can [79]** 4/23 7/11 7/19
 8/25 9/4 9/18 9/22 15/1
 17/22 18/2 18/14 19/8
 22/9 32/16 32/18 33/1
 33/21 34/22 36/1 36/7
 36/22 37/4 39/11 40/3
 40/6 41/15 42/23 43/8
 44/2 44/19 45/11 46/3
 47/8 49/16 52/21 54/17
 57/15 61/8 61/9 63/17
 63/25 67/16 67/18 72/2
 73/1 73/11 74/8 76/18
 76/21 80/6 80/8 80/9
 80/10 80/19 84/12 85/7
 85/9 85/13 85/15 86/4
 87/1 92/24 95/24 97/20
 98/5 98/7 98/16 98/19
 99/18 101/16 104/1 104/12
 105/9 105/13 106/21 107/3
 107/23 110/25 112/19
**can't [47]** 6/7 7/8 9/3
 9/3 9/4 9/14 13/19 23/21
 26/23 29/4 31/5 35/25
 37/3 37/9 40/21 41/11
 43/5 44/17 44/24 46/10
 46/13 47/5 48/1 48/12
 49/4 55/19 56/24 59/9
 64/11 71/4 71/5 71/12
 76/13 82/16 84/24 85/22
 86/2 86/21 88/6 99/1 99/4
 99/9 104/7 104/24 109/6
 111/16 111/16
**candid [1]** 87/2
**candor [1]** 50/15
**cannon [1]** 71/4
**cannot [5]** 8/13 10/11
 13/13 15/6 24/10
**capricious [5]** 8/3 8/24
 55/25 62/2 62/5
**care [26]** 3/4 3/8 5/19
 6/1 7/23 8/6 11/6 48/17
 48/17 54/8 59/14 60/2
 60/5 63/3 87/9 87/22 88/6
 89/6 99/6 99/10 100/9
 101/7 102/18 110/2 110/2
 112/16
**careful [2]** 17/18 17/24
**carefully [1]** 16/6
**cares [1]** 87/6
**Carolina [1]** 31/23
**carrot [1]** 103/9
**carry [2]** 28/4 60/16
**carrying [3]** 90/22 91/7
 104/9
**CARVIN [10]** 1/13 2/6 2/9
 24/1 26/6 29/11 64/12
 68/4 92/4 96/9
**Carvin's [1]** 92/24
**case [89]** 2/16 2/18 3/9
 4/16 8/2 8/21 9/11 11/7
 11/19 13/17 14/2 16/1
 16/5 16/10 16/14 16/14
 16/15 16/15 16/23 17/8
 17/11 17/12 17/15 17/17

29/4 29/7 31/5 37/17
39/24 40/3 43/16 44/22
45/16 45/20 46/2 46/8
46/17 46/19 46/22 47/4
47/24 49/15 49/17 50/2
50/5 50/7 55/7 55/16
57/24 58/17 59/12 59/24
59/24 60/8 61/10 61/12
61/13 61/23 63/17 63/23
64/2 66/7 66/8 66/15
82/10 85/11 85/11 86/4
86/20 94/14 94/22 94/22
95/7 95/9 95/10 104/16
105/12 106/17 107/10
107/16 113/2
**cases [24]** 11/8 11/20
 12/13 13/23 13/24 14/6
 14/10 15/16 15/19 15/22
 28/16 31/20 44/11 44/21
 46/17 60/21 80/13 85/25
 94/17 94/24 94/25 95/3
 99/19 104/15
**Casey [1]** 64/22
**catastrophic [16]** 4/11
 4/22 4/23 5/3 5/14 5/15
 30/1 30/5 30/11 52/14
 52/19 52/20 52/25 54/1
 54/18 54/23
**catch [1]** 94/13
**cathedral [1]** 110/12
**causal [1]** 45/8
**cause [2]** 42/5 56/25
**CBCE [1]** 40/7
**CBO [1]** 82/7
**cell [1]** 92/19
**central [1]** 97/1
**ceremony [1]** 112/5
**cert [1]** 62/23
**certain [9]** 21/17 53/21
 54/11 55/2 92/9 96/18
 104/17 110/24 111/17
**certainly [22]** 19/2 30/23
 32/11 60/8 60/8 60/9
 66/25 69/16 87/8 87/9
 91/23 99/21 100/3 100/14
 100/16 103/6 103/13
 103/22 103/23 107/17
 108/3 108/19
**certainty [6]** 20/20 20/20
 20/21 20/24 36/17 52/18
**certificate [11]** 30/4
 32/1 39/11 84/15 84/19
 105/23 106/19 106/21
 107/1 107/2 114/1
**certify [2]** 114/2 114/7
**challenge [29]** 3/16 6/24
 7/14 8/3 11/17 11/22 13/3
 13/9 13/12 14/24 15/6
 16/11 17/9 17/15 17/20
 24/12 27/11 36/16 37/3
 37/4 45/21 45/22 46/12
 46/13 47/5 47/8 47/20
 85/10 85/13
**challenged [2]** 40/16
 43/18
**challenges [7]** 11/11
 11/21 15/19 26/21 26/21
 45/14 45/15
**challenging [7]** 11/20

16/4 38/2 38/15 43/7
48/25 48/10
**chambers [1]** 80/8
**chance [1]** 44/13
**change [7]** 35/16 35/17
 35/19 35/19 66/4 79/2
 91/1
**changed [1]** 52/12
**chaos [4]** 16/19 63/3 63/5
 107/14
**charged [1]** 107/8
**Charles [1]** 16/1
**chatted [1]** 2/21
**cheaper [1]** 5/19
**check [2]** 38/12 47/2
**Chevron [13]** 10/3 44/7
 66/16 66/17 79/25 80/1
 94/19 94/20 94/23 99/16
 103/23 111/14 111/18
**Chicken [1]** 28/23
**Chief [1]** 25/14
**chip [1]** 83/10
**choice [11]** 19/4 19/5
 22/17 23/8 55/10 60/9
 60/11 60/23 84/6 84/7
 105/5
**choices [4]** 22/5 22/7
 40/9 85/7
**choose [2]** 23/6 84/11
**chooses [2]** 105/21 105/22
**choosing [1]** 60/25
**chose [1]** 39/1
**chosen [1]** 39/15
**CIO [1]** 111/18
**Circuit [33]** 6/12 6/20
 16/15 16/18 17/12 17/24
 20/15 20/21 21/6 24/11
 25/1 25/3 25/6 25/9 25/16
 27/4 37/19 46/15 47/20
 48/3 58/22 62/19 62/20
 62/22 62/24 62/24 62/25
 64/6 93/17 95/7 95/9
 95/10 111/16
**Circuit's [4]** 25/23 26/4
 27/15 41/20
**Circuits [2]** 63/2 63/2
**circumstance [7]** 11/25
 14/18 16/7 40/25 56/8
 57/7 57/8
**circumstances [7]** 17/19
 18/22 53/23 54/5 54/22
 91/1 96/19
**circumvented [1]** 73/6
**citation [1]** 58/17
**cite [10]** 14/6 15/15 16/5
 31/5 44/22 45/11 45/16
 58/9 82/7 82/11
**cited [23]** 14/13 16/2
 16/6 16/14 21/10 21/20
 21/23 44/8 44/11 47/5
 57/22 57/25 58/4 94/14
 95/6 95/11 96/23 101/10
 101/14 101/19 101/25
 104/11 105/7
**citing [1]** 102/21
**citizen [1]** 40/3
**citizens [5]** 3/6 31/6
 69/20 85/12 103/11
**civil [1]** 2/2
**claim [42]** 3/13 4/22 5/24
 6/22 6/25 7/3 7/13 7/21

**claim...** [34]   7/22 8/19
  10/13 12/22 17/4 17/5
  18/4 18/6 21/7 22/22
  22/23 24/6 24/7 24/10
  26/15 28/20 28/21 28/22
  48/6 49/10 54/4 54/17
  56/13 57/6 57/10 57/13
  59/25 60/22 61/8 61/20
  61/20 64/19 104/8 107/4
**claimant** [1]   27/1
**claimed** [2]   5/3 5/4
**claims** [18]   3/12 4/11
  4/13 4/17 9/8 18/18 19/3
  21/5 21/5 21/8 23/4 28/12
  47/13 55/13 57/19 58/24
  64/5 65/1
**Clapper** [1]   42/23
**clarify** [1]   111/10
**Clark** [1]   37/17
**clause** [3]   46/2 95/1
  95/20
**cleaner** [1]   87/11
**clear** [24]   3/15 3/19
  13/17 15/3 30/7 30/10
  30/13 31/8 33/18 39/24
  44/12 49/2 51/24 55/19
  60/20 69/4 69/6 73/16
  75/9 82/23 86/4 104/7
  105/11 105/16
**clearly** [7]   30/4 39/6
  46/19 72/9 85/17 86/6
  105/2
**click** [1]   101/15
**Clinton** [6]   36/11 36/15
  42/16 94/16 94/16 95/7
**close** [2]   100/25 104/21
**closely** [1]   7/13
**cloth** [1]   78/9
**cloud** [1]   97/18
**clue** [1]   91/25
**clues** [1]   98/13
**code** [5]   15/8 24/22 27/13
  60/22 89/8
**codified** [1]   89/13
**coerce** [1]   83/5
**coercing** [1]   79/11
**coercion** [1]   112/23
**coercive** [1]   40/12
**cognizable** [4]   32/6 36/9
  53/9 54/12
**Cohen** [2]   17/11 46/15
**Cole** [1]   80/12
**collateral** [2]   63/24 64/4
**colleague** [2]   47/5 67/9
**collect** [2]   9/3 92/25
**collection** [8]   13/21
  17/24 27/22 47/8 48/2
  48/14 48/24 60/4
**collections** [1]   27/20
**colloquy** [3]   46/22 101/20
  112/1
**COLUMBIA** [2]   1/1 1/21
**come** [22]   2/4 2/14 6/3
  7/21 8/15 9/22 10/1 18/14
  19/14 29/16 32/18 34/11
  38/7 40/22 44/24 50/4
  54/19 61/23 63/17 80/21
  101/9 102/7
**comes** [7]   9/8 10/13 13/4

  36/15 70/8 89/2 105/23
**coming** [3]   10/8 33/19
  47/11
**command** [1]   109/3
**comment** [1]   9/19
**commitment** [1]   36/23
**Committee** [3]   80/18 82/11
  101/21
**common** [7]   28/1 52/24
  91/16 93/10 93/16 102/16
  110/17
**commute** [1]   69/2
**companies** [1]   70/1
**companion** [1]   59/24
**company** [3]   30/15 30/25
  38/13
**company's** [1]   82/21
**compelled** [3]   30/20 60/10
  88/19
**compelling** [4]   31/2 31/5
  68/19 69/8
**competitive** [1]   45/1
**complain** [3]   44/20 44/25
  45/11
**complaint** [8]   2/16 4/19
  4/20 22/6 48/7 48/8 48/13
  66/9
**complete** [2]   39/12 52/1
**completely** [7]   7/20 35/21
  42/18 46/7 46/23 48/22
  81/12
**complex** [1]   83/14
**complexity** [1]   50/21
**compliance** [7]   42/5 42/9
  84/17 91/14 91/24 105/3
  105/8
**complicated** [4]   50/12
  51/16 74/24 96/2
**complies** [1]   85/9
**comply** [16]   39/15 40/3
  40/11 40/12 41/19 41/21
  41/24 42/11 60/11 75/25
  84/12 85/9 85/20 93/9
  104/23 109/25
**complying** [4]   42/12 60/12
  104/24 105/5
**component** [1]   101/7
**comprehensive** [2]   3/5
  4/10
**computer** [1]   1/24
**computer-aided** [1]   1/24
**concede** [3]   49/9 65/18
  72/23
**conceded** [2]   40/18 47/24
**concern** [1]   21/2
**concerns** [1]   87/13
**conclude** [1]   49/25
**concluded** [1]   113/12
**conclusion** [1]   8/5
**condition** [1]   112/7
**conduct** [1]   57/4
**conference** [3]   81/14
  81/22 100/12
**conferences** [1]   81/11
**confirm** [2]   78/20 81/4
**confirmation** [3]   89/4
  89/5 90/20
**confirming** [1]   79/17
**confirms** [2]   96/24 112/2
**conflict** [1]   39/23
**confusion** [1]   46/22

**Congress** [59]   1/3 3/4 11/5
  11/5 11/13 11/24 12/4
  12/15 16/1 18/2 18/11
  18/14 27/17 27/23 36/13
  37/7 39/1 41/3 41/11
  41/25 49/15 69/9 69/18
  70/6 71/14 75/19 79/1
  80/22 81/2 82/23 83/18
  87/25 88/8 91/16 91/17
  91/25 92/8 93/11 93/14
  93/25 96/20 97/19 97/24
  98/11 98/11 98/17 100/4
  101/8 102/4 102/17 102/17
  102/20 102/22 102/23
  102/25 103/8 103/14 107/8
  109/6 109/23
**Congress'** [5]   12/2 12/10
  60/9 79/4 102/3
**congressional** [1]   82/16
**connection** [1]   45/8
**Connell** [1]   55/7
**consequence** [1]   38/23
**consequences** [3]   63/10
  76/17 88/23
**consider** [3]   20/11 21/7
  102/22
**considerations** [1]   83/24
**considered** [3]   20/25
  101/12 101/12
**consistent** [1]   56/20
**constitution** [3]   1/22
  32/3 43/19
**constitutional** [6]   11/17
  15/19 15/23 45/14 45/22
  53/22
**constitutionality** [1]
  11/11
**constructed** [1]   32/21
**construction** [5]   44/4
  71/4 79/21 80/10 95/5
**consult** [2]   92/16 101/21
**consultation** [1]   35/6
**contemplate** [1]   109/11
**contemplated** [2]   41/25
  94/6
**contemporaneous** [1]
  102/22
**context** [2]   95/2 108/9
**contingent** [4]   36/11
  36/20 42/17 42/21
**contraceptive** [1]   47/21
**contract** [3]   30/15 30/24
  53/20
**contractual** [1]   36/23
**contradicted** [1]   98/21
**contradicts** [2]   51/17
  51/18
**contrary** [13]   3/7 8/5 8/7
  8/24 11/5 12/2 12/10
  12/14 27/4 59/8 62/2 62/5
  87/21
**contributions** [2]   48/25
  55/9
**controversial** [2]   69/16
  83/13
**controversy** [2]   43/4
  43/25
**conversant** [1]   112/19
**convince** [1]   44/9
**convinced** [2]   86/5 86/5
**cook's** [1]   74/23

**C**   Case 1:13-cv-00623-PLF   Document 35-1   Filed 03/30/13   Page 121 of 141

**core** [2]   15/8 15/23
**corner** [1]   35/2
**Corporation** [1]   95/11
**correct** [16]   5/11 20/8
22/21 49/5 65/20 65/25
65/25 66/21 67/23 91/9
104/5 104/5 106/25 108/8
108/11 114/2
**correcting** [1]   29/24
**correctly** [2]   24/25 47/5
**cost** [20]   12/6 12/9 21/11
21/21 30/17 31/23 34/6
34/7 34/10 34/13 34/17
35/1 35/9 42/9 42/11 51/5
51/17 54/15 55/1 55/3
**costly** [1]   83/13
**costs** [2]   5/18 52/17
**could** [59]   5/15 7/4 7/21
7/24 8/19 10/15 11/20
17/17 17/18 17/19 18/22
18/24 21/25 27/24 29/6
31/8 32/20 35/8 40/16
43/16 44/7 52/9 52/17
57/3 57/10 57/13 57/20
59/18 61/19 61/23 64/5
64/6 65/8 69/12 70/7
70/19 71/3 78/19 79/11
80/17 84/14 84/16 84/17
91/12 93/8 97/5 97/18
100/15 100/16 104/19
106/4 106/11 107/18
107/19 107/21 107/23
111/18 112/11 112/12
**couldn't** [8]   6/16 8/17
23/3 31/18 69/19 81/10
81/14 91/13
**counsel** [11]   2/4 29/25
32/24 46/12 57/20 60/8
88/10 102/9 108/18 112/1
114/7
**country** [2]   14/19 14/20
**counts** [1]   22/10
**couple** [1]   52/9
**course** [14]   8/11 8/17
37/5 37/11 39/15 39/23
42/20 47/7 67/15 73/22
83/1 87/14 87/22 104/1
**court** [112]   1/1 1/20 1/20
1/21 2/13 3/3 3/23 4/2
4/16 6/7 6/14 7/11 7/17
7/18 7/20 8/6 8/10 8/13
8/18 12/24 13/4 13/20
15/4 15/8 16/13 16/14
16/17 16/20 17/17 18/9
18/17 18/19 18/22 18/24
19/1 19/3 19/3 19/8 19/13
19/15 20/13 20/13 20/16
20/18 20/22 23/4 23/18
24/19 25/5 25/13 27/24
29/15 33/19 33/22 34/3
34/21 35/14 39/18 39/19
40/1 40/16 40/20 41/7
42/2 43/18 43/19 43/23
44/9 44/24 45/23 46/1
50/8 50/20 50/21 52/8
55/9 56/10 56/19 56/24
57/13 57/14 57/21 58/1
58/9 59/21 59/23 61/19
62/23 64/5 64/9 64/21
**court's** [5]   2/22 24/13
25/24 47/19 57/10
**courtroom** [2]   8/14 8/15
**courts** [4]   13/1 15/21
21/5 46/5
**cousin** [1]   47/18
**cover** [1]   47/25
**coverage** [39]   3/6 4/22
4/23 5/3 5/5 6/5 21/15
24/16 30/2 30/5 30/6
30/11 52/19 52/19 52/20
52/22 52/22 52/25 53/1
54/1 54/2 54/3 54/6 54/7
54/10 54/18 54/23 54/25
55/3 68/22 71/8 75/15
84/13 102/8 106/5 106/7
106/13 106/13 106/15
**covering** [1]   5/17
**covers** [1]   54/24
**create** [10]   36/20 40/12
63/3 94/7 94/7 99/6 103/8
108/20 109/18 109/19
**created** [6]   22/16 40/2
78/23 92/8 96/20 98/12
**creating** [5]   24/15 63/5
88/15 99/7 99/8
**credit** [34]   6/2 6/10 7/1
7/8 7/24 16/12 25/21
25/25 26/1 26/1 26/1 26/3
26/3 26/14 26/15 26/18
28/24 38/14 47/14 51/6
51/14 51/20 53/5 55/18
57/15 57/18 58/18 59/7
90/25 91/3 91/5 93/5 93/5
103/11
**creditors** [1]   26/21
**credits** [35]   4/25 7/16
7/25 8/16 8/16 9/9 10/9
12/19 16/16 38/11 47/1
47/1 47/3 48/11 51/13
54/15 64/5 88/1 91/21
92/1 93/13 93/14 93/25
97/3 100/1 100/5 100/14
101/2 101/8 101/17 101/22
102/5 102/6 102/15 103/21
**crueler** [1]   86/19
**cruelest** [1]   86/16
**crystal** [3]   1/20 13/17
114/12
**cured** [1]   31/2
**current** [2]   51/5 78/22
**currently** [1]   31/21
**cuts** [1]   38/12

**D**

**D.C** [16]   1/5 17/12 17/24
20/15 20/21 21/6 37/19
41/20 46/15 58/22 62/22
64/6 93/17 95/7 95/9
111/16
**damages** [2]   39/3 85/23
**data** [3]   33/19 33/22
35/19
**date** [10]   3/24 33/21 35/6
105/10 105/20 105/21

**dates** [1]   105/25
**daughter** [1]   14/23
**daughters** [1]   14/20
**David** [1]   3/13
**day** [15]   1/14 23/1 24/7
26/24 31/18 33/23 35/6
54/16 55/1 59/14 66/24
67/1 67/15 76/10 83/11
**days** [1]   85/1
**DC** [3]   1/15 1/19 1/22
**de** [1]   44/9
**deadline** [1]   34/1
**deal** [11]   49/10 65/18
68/4 69/10 70/5 70/7
70/23 76/8 82/6 83/11
113/3
**dealing** [2]   46/1 69/3
**dealt** [3]   23/4 25/13
25/16
**debt** [6]   13/7 13/8 13/15
14/19 14/25 15/2
**December** [4]   84/11 84/16
84/19 105/18
**decide** [17]   18/10 40/1
40/21 41/4 43/16 49/17
50/2 50/4 50/9 50/22
64/15 64/16 65/23 66/10
66/16 66/21 80/4
**decided** [8]   30/10 35/7
40/20 56/22 65/15 65/21
66/7 87/5
**decides** [1]   19/13
**decision** [11]   25/24 26/5
35/21 41/20 50/15 57/21
57/22 58/17 79/11 85/5
104/25
**decisions** [3]   86/8 86/13
105/7
**declaration** [17]   4/2 4/21
6/4 6/15 30/1 30/2 30/9
33/4 33/17 34/17 35/5
41/17 51/16 51/25 52/5
52/16 53/3
**declaratory** [1]   8/23
**declare** [1]   39/21
**decline** [1]   20/7
**declines** [1]   22/13
**default** [1]   81/7
**defaulted** [1]   72/8
**defeat** [1]   35/22
**defendants** [3]   1/7 1/17
2/11
**defenses** [1]   78/21
**defer** [2]   46/5 60/9
**deference** [3]   10/3 10/5
80/4
**deferred** [2]   19/25 20/3
**define** [2]   85/7 112/15
**defines** [2]   89/6 97/7
**definitely** [3]   12/1 108/4
112/20
**definition** [4]   72/19
77/10 93/23 94/8
**definitional** [7]   72/16
72/24 73/13 74/12 78/18
89/5 90/18
**defying** [1]   85/14
**degrees** [1]   11/8
**denied** [2]   5/13 105/13

**denies** [1]  62/23
**deny** [5]  16/3 37/10 46/2
 68/5 107/23
**depart** [1]  35/21
**Department** [6]  1/18 31/21
 31/25 35/7 62/17 62/23
**departure** [1]  21/3
**depending** [1]  8/17
**depends** [3]  6/25 12/22
 57/13
**deprivation** [1]  32/5
**deprive** [1]  79/8
**describe** [4]  24/14 27/6
 80/25 99/2
**describes** [1]  27/8
**describing** [3]  14/18
 68/22 99/13
**designed** [1]  31/13
**detail** [2]  75/11 81/22
**details** [1]  98/12
**determination** [2]  65/17
 66/7
**determine** [3]  52/17 91/2
 91/5
**detours** [1]  50/20
**development** [1]  66/13
**did** [21]  14/7 25/15 31/15
 32/24 34/15 35/16 35/17
 38/16 69/18 72/10 76/11
 82/25 83/1 86/19 90/9
 91/16 100/17 102/16
 102/17 102/22 103/1
**didn't** [18]  9/6 25/18
 40/20 40/21 45/21 47/25
 56/22 71/11 77/15 77/17
 80/24 81/8 81/21 81/24
 82/8 90/9 110/11 110/18
**difference** [7]  6/11 6/20
 6/23 21/13 66/6 72/8
 109/23
**different** [25]  5/24 7/2
 9/19 14/6 15/22 21/1
 24/20 25/3 45/15 45/18
 48/12 49/19 50/8 54/21
 56/5 56/13 57/12 62/18
 62/19 67/4 76/15 81/12
 83/8 109/13 110/8
**differently** [1]  27/23
**difficult** [1]  69/16
**difficulty** [2]  26/18
 98/19
**dignify** [1]  83/24
**digress** [1]  38/5
**dilemma** [5]  30/13 40/2
 60/10 78/8 111/3
**dire** [2]  76/16 76/17
**direct** [5]  6/24 32/11
 38/23 45/8 46/10
**directed** [1]  94/7
**directions** [2]  76/11 83/8
**directive** [4]  75/19 75/22
 75/24 76/2
**directly** [8]  11/5 12/2
 12/10 12/14 38/20 77/1
 93/2 109/15
**disadvantage** [1]  45/1
**disagree** [7]  14/9 24/13
 25/1 25/2 26/5 37/2 48/4
**disappears** [1]  97/18

**disavow** [1]  99/9
**disclaims** [1]  18/3
**discreet** [1]  29/2
**discretion** [2]  2/22
 107/25
**discussed** [5]  2/19 12/22
 19/1 101/9 107/11
**discussing** [3]  77/1 81/18
 81/22
**discussion** [5]  24/19 75/6
 84/8 84/9 104/1
**disinclination** [1]  36/4
**dismiss** [16]  2/16 2/16
 23/23 23/24 29/14 30/3
 35/25 49/4 49/12 65/1
 65/2 65/10 66/1 68/5
 104/3 107/23
**dismissal** [1]  67/17
**dismissed** [2]  2/18 66/9
**dispute** [2]  36/12 52/10
**disputed** [2]  4/4 35/25
**disputes** [1]  15/25
**disrespect** [1]  87/4
**dissenting** [1]  94/15
**distinction** [1]  75/13
**distinguish** [2]  28/24
 56/14
**distinguished** [1]  25/19
**distinguishes** [1]  48/22
**distinguishing** [2]  25/8
 26/21
**DISTRICT** [12]  1/1 1/1
 1/10 1/21 1/21 18/17 19/3
 19/15 40/1 58/1 58/9
 114/5
**do** [82]  3/9 4/14 4/24
 7/19 9/24 9/25 10/2 10/21
 11/1 13/1 13/13 13/19
 15/6 18/9 18/16 19/14
 22/24 23/6 26/7 26/11
 27/3 29/13 30/7 35/1
 39/10 41/15 42/13 42/22
 45/23 46/3 46/22 47/13
 48/17 49/8 50/4 50/23
 51/7 51/11 52/9 52/24
 53/4 59/25 63/6 63/7 65/4
 65/9 65/17 66/11 71/2
 71/18 71/24 72/10 75/6
 76/4 78/25 79/11 82/3
 82/3 82/8 83/2 84/18
 85/20 88/18 88/19 90/2
 90/12 91/13 91/24 96/4
 96/9 97/19 98/17 98/22
 98/25 99/15 101/14 107/25
 108/4 108/17 109/16
 112/12 112/16
**docket** [2]  1/4 52/16
**does** [20]  11/10 12/12
 15/2 16/7 23/8 26/20 27/6
 32/15 33/9 33/16 49/10
 60/6 61/9 63/11 85/20
 88/14 95/19 98/16 112/22
 113/8
**doesn't** [67]  5/2 6/8 7/13
 20/5 22/15 23/7 26/9
 26/24 27/4 30/25 31/4
 31/7 31/9 31/23 32/23
 33/10 34/24 37/22 37/23
 39/25 41/9 43/7 44/14
 44/25 45/1 45/20 46/14
 46/25 47/12 48/4 50/7

**disagow** [1]  99/9
**disclaims** [1]  12/30/13
 53/14 53/20 55/14 55/16
 57/15 59/12 59/22 60/1
 62/3 65/19 67/9 69/23
 72/12 73/19 74/19 75/7
 76/1 76/13 77/8 77/23
 79/20 79/21 80/15 86/1
 88/13 88/18 92/22 96/16
 100/13 103/12 107/2
 110/13 110/21 111/11
 112/2 112/21
**dog** [1]  80/24
**doing** [7]  33/8 44/1 52/7
 83/15 93/9 103/15 103/16
**dollar** [2]  5/17 21/9
**dollars** [6]  4/10 22/19
 69/20 86/12 112/16 113/1
**domestic** [1]  44/23
**don't** [88]  2/19 4/13 7/18
 8/6 8/9 9/20 11/1 12/9
 19/9 19/13 20/23 20/24
 23/18 23/22 23/23 24/9
 24/15 26/8 26/14 27/2
 28/14 28/16 30/18 31/2
 31/11 31/15 36/14 40/9
 41/7 42/4 43/11 43/11
 43/13 44/2 46/16 50/8
 50/20 50/22 51/11 54/7
 54/9 55/8 56/6 56/7 56/9
 56/11 56/24 58/8 58/9
 58/20 59/1 59/17 62/1
 62/15 63/16 64/15 64/16
 67/12 67/21 68/7 69/21
 71/1 75/20 75/23 76/3
 77/2 77/24 78/5 80/1 81/2
 81/4 85/16 86/20 87/1
 89/22 94/20 94/24 94/25
 98/9 98/10 99/10 100/9
 105/2 108/19 109/3 110/2
 110/2 113/2
**done** [14]  15/15 40/4
 43/12 43/24 68/2 69/19
 86/24 89/3 89/22 108/25
 108/25 112/8 112/10
 112/11
**DOT** [1]  111/19
**double** [1]  89/13
**doubt** [2]  52/15 90/16
**down** [10]  20/13 34/23
 36/19 69/22 70/7 81/25
 82/2 86/6 103/18 104/20
**dramatically** [2]  70/22
 102/18
**drilled** [1]  81/6
**drives** [1]  69/25
**dug** [1]  101/24
**dynamic** [1]  39/25

**E**

**each** [19]  23/25 39/20
 64/19 64/23 65/12
 66/25 68/4 71/4 79/16
 88/11 88/13 88/22 90/5
 90/22 91/6 93/4 95/22
 96/13
**earlier** [3]  27/24 53/3
 87/6
**earning** [1]  54/14
**easy** [1]  11/3
**ECF** [1]  52/16
**economic** [1]  85/25
**effect** [11]  36/21 43/17

**E**    Case 1:13-cv-00623-PLF

effect... [9]  44/25 45/2
 50/7 54/15 56/18 61/15
 63/12 86/8 111/11
effected [5]  13/5 20/13
 37/14 38/20 47/23
effectively [1]  37/20
effectiveness [1]  102/19
effects [4]  10/18 10/19
 56/18 63/12
effort [4]  30/23 31/25
 35/22 50/17
either [24]  4/8 21/12
 21/23 22/7 22/17 26/8
 28/4 28/8 28/10 29/13
 34/19 34/25 40/3 60/12
 67/13 70/16 70/19 70/22
 74/5 74/5 87/2 91/8 94/22
 99/21
elected [1]  81/14
election [1]  100/11
eligibility [1]  91/2
eligible [5]  6/4 42/18
 69/24 97/6 97/8
eliminate [1]  73/18
else [6]  49/11 49/20
 64/15 65/22 66/4 113/5
else's [6]  13/7 16/11
 16/12 45/24 46/4 110/7
elsewhere [1]  24/21
emphasize [4]  30/18 38/25
 41/24 68/20
employed [1]  114/8
employee [8]  9/8 9/12
 10/13 39/20 47/15 57/6
 63/17 63/21
employee's [2]  45/4 86/8
employees [44]  6/2 6/4
 7/6 7/8 8/13 9/22 10/4
 12/24 19/24 24/16 28/14
 28/23 28/25 38/9 38/11
 38/17 38/23 39/4 39/5
 42/2 42/18 43/1 43/10
 43/13 45/7 55/18 56/4
 56/22 57/3 57/9 57/11
 57/14 57/15 57/18 58/24
 60/18 61/15 61/23 63/7
 64/2 64/6 64/7 71/8 86/13
employees' [5]  6/8 6/25
 7/9 55/21 64/4
employer [23]  6/15 6/19
 6/21 7/7 12/21 14/2 25/16
 27/25 28/6 29/1 38/9
 38/17 40/5 42/1 42/9
 47/23 48/7 48/15 48/16
 48/18 55/19 57/4 59/7
employer's [2]  19/19 39/3
employers [11]  6/1 7/4
 20/3 20/6 20/20 24/15
 43/3 63/1 63/6 86/8 86/12
employment [1]  60/9
empty [1]  93/19
en [1]  17/12
enacted [4]  3/4 11/9 12/4
 41/5
enacting [3]  11/6 12/5
 12/15
encourage [3]  101/15
 101/21 102/6
end [18]  8/25 22/25 24/7

26/23 31/3 31/18 54/16
 53/11 59/13 66/24 67/10
 67/15 76/10 84/21 84/22
 84/22 99/13 106/22
energy [2]  16/1 49/17
enforce [2]  39/1 39/2
enforcement [4]  38/16
 38/20 41/2 41/4
engage [8]  30/14 30/15
 30/20 31/2 31/6 31/18
 37/22 41/16
England [1]  41/17
English [1]  68/24
enjoin [2]  8/13 67/3
enjoined [1]  43/21
enjoining [2]  59/21 67/4
enormous [7]  38/19 40/12
 41/23 103/9 103/9 103/13
 107/9
enough [8]  25/20 36/20
 58/6 58/18 67/7 67/10
 85/3 90/18
enroll [2]  105/21 105/22
enrolled [1]  69/5
enrollment [4]  105/20
 105/22 106/1 106/22
ensuring [1]  61/5
enter [4]  53/19 53/20
 86/21 107/22
entered [1]  43/9
enticing [1]  83/7
entire [13]  6/24 21/16
 39/17 52/10 57/13 76/24
 78/8 90/14 96/14 96/16
 96/19 104/24 108/23
entirely [3]  85/6 101/3
 103/10
entirety [1]  62/10
entities [1]  73/1
entitle [1]  30/5
entitled [5]  7/23 8/16
 9/9 9/23 10/9
environmental [2]  56/6
 56/9
envision [1]  86/4
EPA [1]  56/16
equally [1]  69/7
erect [1]  110/12
error [1]  21/11
Escarte [1]  105/6
especially [1]  61/8
Esquire [5]  1/13 1/13
 1/14 1/17 1/17
essential [3]  30/19 102/5
 102/10
essentially [4]  16/19
 53/21 93/18 95/11
establish [21]  71/23 72/1
 72/4 72/4 73/1 73/15
 74/16 77/16 77/18 78/23
 88/12 88/23 89/10 89/21
 90/4 95/16 95/23 96/13
 109/7 110/11 110/18
established [59]  28/15
 37/8 68/24 69/5 70/9
 70/10 70/16 70/20 71/6
 71/9 72/9 72/11 72/13
 72/14 72/17 72/19 72/21
 73/4 73/4 73/10 73/12
 73/20 73/21 73/24 73/25
 73/25 74/2 74/2 74/4 74/6

74/10 74/14 74/15 75/13
 77/13 77/21 78/1 78/3
 78/17 79/19 88/5 88/17
 88/21 89/1 89/8 89/11
 89/17 90/5 90/11 96/10
 96/11 96/17 97/10 97/14
 97/24 110/10 110/10
 110/20 110/21
establishes [6]  74/9
 77/25 78/6 78/10 79/18
 110/17
establishing [5]  73/17
 98/12 109/8 109/9 110/19
establishment [1]  46/1
estimated [1]  85/1
estimates [2]  3/23 33/20
et [4]  1/3 1/5 2/3 2/3
eve [1]  35/18
even [53]  7/17 7/19 8/1
 9/6 11/6 12/17 13/4 16/4
 29/23 31/9 32/7 32/9
 32/20 32/21 35/24 36/3
 38/1 42/3 42/4 42/6 42/14
 42/23 44/3 44/18 48/4
 49/8 49/8 54/24 54/25
 61/14 64/3 64/6 68/8 73/3
 73/6 74/1 75/23 80/22
 81/8 82/4 86/18 90/20
 96/2 96/8 101/12 101/24
 104/10 104/12 104/15
 104/21 105/12 111/15
 111/21
evening [1]  34/12
event [3]  70/22 72/3 77/3
events [5]  52/7 69/15
 83/13 85/17 100/10
eventually [1]  39/17
ever [6]  11/10 58/8 80/14
 85/10 105/1 112/8
every [14]  5/15 26/2
 37/17 62/19 62/20 68/4
 82/12 85/20 86/6 88/16
 89/21 97/15 110/25 111/10
everybody [16]  2/13 20/14
 31/10 35/11 38/18 40/22
 40/22 43/20 68/8 75/24
 77/17 78/15 81/24 82/4
 82/9 113/7
everyone [1]  43/22
everything [1]  65/22
evidence [2]  56/20 101/19
exact [2]  71/7 95/13
exactly [7]  33/14 42/10
 46/12 55/22 74/11 83/17
 112/6
example [8]  13/6 14/12
 31/7 31/20 31/23 39/25
 42/16 76/17
examples [4]  12/16 56/6
 75/5 75/8
exceeds [1]  31/12
except [8]  24/2 25/18
 45/1 65/22 80/7 81/19
 102/22 108/9
exception [1]  106/7
excessively [1]  87/2
exchange [135]
exchanges [72]  3/19 6/3
 12/7 37/8 69/13 69/15
 70/2 71/19 73/1 73/7 73/8
 73/8 73/15 74/1 74/4 74/6

**E**    Case 1:13-cv-00623-PLF

exchanges... [56]   74/7
 74/9 74/10 74/19 74/21
 75/12 75/13 75/18 75/19
 75/20 76/3 76/4 76/12
 76/13 76/19 76/25 76/25
 77/4 77/18 78/15 79/18
 79/18 79/19 80/20 81/8
 81/13 82/14 82/15 82/24
 83/7 83/14 88/1 92/8 94/1
 94/12 96/21 97/9 98/6
 98/12 98/13 98/14 98/21
 98/23 102/6 102/7 102/24
 103/3 103/7 103/22 109/12
 109/13 109/17 109/24
 109/25 111/7 111/12
exempt [2]   48/25 105/24
exemption [10]   30/4 39/11
 46/3 84/15 84/19 105/23
 106/6 106/19 106/22 107/1
exercise [1]   50/22
exist [2]   16/5 77/19
existed [1]   33/22
exists [1]   77/24
expand [1]   102/8
expect [2]   36/4 103/14
expedite [3]   107/22
 107/23 108/1
expensive [1]   5/5
explain [3]   41/11 45/18
 103/14
explained [4]   25/14 86/19
 102/14 103/16
explicit [1]   12/4
exposing [1]   85/14
express [1]   103/14
expressly [1]   109/11
extensions [1]   37/19
extent [1]   24/2
extinguish [5]   6/8 6/25
 7/8 7/21 57/2
extra [1]   83/24
extraordinarily [1]   83/13
extraordinary [1]   103/11
eye [1]   60/21

**F**

F-O-R-M-I-G-E [2]   14/13
 14/15
F.3d [2]   111/18 111/19
face [4]   5/25 26/19 61/21
 61/22
faced [1]   60/10
faces [1]   21/8
facing [1]   42/17
fact [28]   3/18 4/3 4/4
 4/9 5/7 5/20 5/21 7/12
 9/13 10/2 10/9 11/4 12/19
 22/22 27/18 28/3 32/17
 35/25 50/6 53/7 53/7
 54/25 72/12 73/7 73/22
 100/17 101/2 103/1
factors [4]   83/25 87/14
 105/14 107/6
factual [1]   66/13
failed [3]   71/23 71/25
 72/10
fails [2]   72/3 74/16
failure [1]   106/5
fair [3]   57/23 67/7 67/9

fairly [1]   39/24
fairness [1]   86/25 12/30/13
fall [3]   10/21 84/16
 98/13
familiar [1]   92/4
far [1]   89/25
Farm [1]   41/20
FDA [1]   56/16
fear [2]   7/4 30/6
February [7]   84/18 84/21
 84/22 85/2 105/19 106/13
 106/14
federal [63]   3/18 6/9
 13/1 13/6 13/15 13/20
 14/24 15/21 18/17 18/18
 19/3 22/16 43/1 43/22
 44/8 44/9 44/10 45/14
 45/21 46/6 47/9 47/12
 56/25 57/1 70/11 70/21
 71/8 73/8 74/2 74/6 75/18
 75/20 76/4 76/12 76/13
 77/4 79/18 80/19 82/13
 82/24 86/2 88/2 91/18
 91/19 91/20 92/1 93/12
 93/15 94/1 96/18 97/3
 97/4 97/12 97/23 98/6
 98/8 98/13 98/25 99/4
 103/3 103/21 109/17 113/1
federally [4]   37/8 77/5
 100/5 110/20
feds [5]   72/2 79/6 110/5
 110/9 110/11
feeble [1]   35/22
felt [1]   2/22
few [2]   75/8 85/4
fiction [12]   88/15 88/16
 89/1 89/22 90/8 96/15
 97/13 108/18 108/19
 108/25 109/1 109/2
Fifth [1]   16/18
fights [1]   76/15
figure [12]   21/10 21/12
 21/24 40/23 52/11 52/12
 52/23 54/2 54/4 104/12
 106/17 106/18
figures [1]   33/14
figuring [1]   49/17
file [8]   31/9 31/10 31/11
 31/14 31/15 52/5 87/1
 107/21
filed [4]   33/17 51/16
 51/25 86/20
filing [1]   31/19
fill [2]   89/2 98/7
final [5]   17/9 17/23 52/3
 86/21 87/13
finalize [1]   52/2
finally [5]   4/1 36/3
 46/21 78/8 79/13
Finance [2]   80/18 101/20
financial [2]   32/7 36/21
financially [1]   114/9
find [4]   29/22 63/14
 64/12 64/13
finding [1]   64/14
fine [4]   7/22 25/12 52/11
 52/23 53/5 56/10 70/18
 74/18
finish [1]   23/20
first [26]   2/23 2/23 3/11
 5/17 8/17 10/21 11/16

13/15 15/24 19/3 41/12
 44/16 47/16 47/18 59/18
 60/24 75/4 75/10 79/3
 81/1 85/14 88/3 91/21
 94/2 102/13 106/11
five [2]   67/19 68/6
fix [3]   71/16 98/16 98/19
fleshed [1]   94/11
flooding [1]   75/22
floods [1]   75/23
floor [2]   32/15 81/20
flow [2]   75/7 103/5
flows [3]   77/1 77/1
 110/15
focus [1]   79/13
focuses [1]   108/20
focusing [1]   50/17
follow [5]   5/12 8/11 9/2
 77/20 84/13
following [1]   91/8
follows [2]   25/5 57/17
footnote [1]   47/6
force [4]   16/10 39/5
 69/12 104/24
forced [6]   30/14 30/24
 53/19 60/11 84/6 84/7
forces [1]   37/22
forcing [3]   31/11 31/13
 32/12
forego [4]   23/8 30/6
 30/11 52/18
foregoing [1]   114/2
foreign [1]   44/24
foremost [1]   3/11
foreseeable [1]   11/23
forget [1]   17/15
forgot [2]   21/11 21/21
form [3]   33/25 75/8 79/13
Formige [3]   14/12 14/15
 46/8
forms [2]   17/13 23/11
formulation [1]   110/6
forum [2]   3/9 18/2
forward [13]   2/4 2/12 6/9
 7/22 9/22 10/8 10/13
 17/18 23/15 25/15 50/2
 66/15 91/13
forwards [2]   95/24 96/3
found [2]   17/17 94/9
foundational [1]   100/2
four [3]   40/23 63/2 82/18
Fourth [13]   6/12 6/20
 24/11 25/1 25/3 25/6 25/9
 25/16 25/23 26/4 27/4
 27/15 48/3
framework [1]   98/14
frank [1]   20/24
frankly [4]   12/8 12/14
 33/3 46/15
free [12]   5/6 5/8 5/9
 15/3 22/10 22/13 31/24
 43/1 50/6 55/19 56/23
 113/7
freedom [3]   30/20 53/19
 53/22
Friday [5]   4/2 33/5 34/12
 34/15 51/17
FRIEDMAN [1]   1/9
front [1]   49/16
Fs [1]   93/13
fulfilling [2]   97/13

**F**   Case 1:13-cv-00623-PLF Document 95-13

fulfilling... [1]   97/23
full [3]   30/3 84/20 105/7
fully [2]   25/19 72/6
functions [2]   76/7 76/7
Fund [1]   93/17
fundamental [4]   13/21
 99/5 99/11 101/4
fundamentally [6]   3/7
 29/7 87/21 91/22 102/1
 102/3
further [12]   16/9 22/22
 27/15 55/20 64/9 83/24
 89/4 90/20 103/8 108/14
 114/7 114/9
future [3]   7/5 57/22
 106/2

**G**

G-91 [1]   89/14
gain [2]   7/4 10/11
gaining [1]   59/19
gamble [2]   32/12 41/23
game [4]   20/14 20/18
 84/14 84/17
gap [2]   89/2 106/7
gaps [1]   98/7
Garland's [1]   94/15
GC [2]   28/21 41/17
general [4]   40/15 75/24
 76/2 76/11
generality [1]   110/24
generalized [2]   53/6 54/9
generally [1]   46/16
generous [1]   5/5
genuine [1]   14/25
get [73]   5/15 6/6 6/7 7/8
 8/9 9/24 10/4 10/5 11/14
 15/2 18/9 20/9 20/16 24/2
 25/19 28/24 29/13 30/18
 30/22 32/1 32/1 32/18
 36/22 38/17 39/4 42/19
 42/20 42/21 43/1 43/20
 44/21 45/24 46/10 49/19
 50/18 52/21 53/5 56/15
 57/15 59/10 59/15 59/18
 63/16 63/23 63/25 66/19
 68/3 68/9 73/19 73/19
 74/19 78/16 80/14 81/21
 83/2 84/13 85/3 86/2
 87/24 94/20 94/23 95/25
 96/9 96/16 99/16 105/3
 105/15 107/10 107/12
 107/13 110/13 111/3
 112/11
gets [15]   5/10 5/16 6/2
 22/12 22/13 33/12 34/5
 39/19 40/4 43/20 57/18
 67/20 79/7 92/21 111/20
getting [9]   5/4 22/9
 26/19 38/23 41/8 45/5
 46/4 53/11 83/6
give [24]   7/25 8/16 31/7
 31/24 32/24 34/22 39/5
 39/11 41/18 55/21 69/14
 69/20 71/17 74/11 75/24
 76/11 77/11 79/5 80/4
 82/16 83/3 83/15 112/23
 113/8
given [10]   4/25 5/19 21/2

21/18 27/20 32/14 36/1
37/21 95/19 90/3 12/30/13
gives [2]   53/9 55/10
giving [5]   53/8 70/24
 75/21 76/2 79/3
gladly [1]   69/17
global [1]   79/13
go [83]   2/23 6/9 13/14
 17/18 18/16 18/17 18/22
 18/25 19/2 19/3 19/8
 22/25 23/2 23/14 23/17
 23/25 26/11 30/21 32/1
 34/15 34/23 34/25 36/6
 36/22 38/10 39/11 39/16
 40/4 41/7 42/2 42/16
 42/19 42/19 43/1 43/14
 47/9 50/4 55/20 58/15
 58/22 61/6 61/17 63/11
 65/7 66/15 67/21 68/8
 71/3 71/22 73/10 74/20
 76/15 77/11 79/21 80/3
 81/14 81/15 82/18 82/20
 85/8 85/21 86/1 86/14
 89/12 89/13 93/4 93/11
 95/15 95/17 95/21 95/24
 96/3 96/12 99/8 100/11
 103/8 104/2 104/12 105/8
 106/15 107/3 108/17
 110/13
goes [17]   17/12 18/5
 18/23 33/6 33/12 34/7
 34/8 38/17 50/2 60/14
 66/15 75/14 97/14 99/11
 104/10 106/1 109/1
going [50]   17/25 20/9
 20/12 22/3 23/1 23/2
 25/15 30/7 31/19 32/10
 32/16 39/2 39/2 39/16
 40/22 41/18 41/18 41/18
 41/21 41/23 42/6 42/10
 42/13 42/15 42/20 43/1
 46/5 47/16 62/23 66/21
 66/22 78/19 79/5 79/6
 79/8 81/1 81/11 82/13
 83/22 86/6 86/15 86/23
 87/4 87/10 88/18 91/4
 101/2 103/13 107/12
 112/15
Golden [1]   28/23
gone [6]   14/21 35/13
 40/17 98/11 106/8 108/25
good [7]   2/10 3/2 16/18
 29/20 68/14 81/25 87/19
goodness [1]   68/15
got [33]   10/23 17/2 24/24
 30/21 31/10 36/23 39/10
 39/14 39/16 43/4 49/16
 50/10 50/18 51/13 51/13
 72/7 73/8 73/8 73/23
 75/14 75/22 79/3 81/14
 82/5 83/3 83/4 84/10 85/7
 85/23 105/20 105/22
 111/21 112/10
gotten [1]   50/13
governing [1]   46/11
Government [38]   13/11
 13/19 15/10 15/21 16/21
 26/19 29/25 31/1 36/10
 38/1 40/2 40/10 45/2
 45/13 46/23 52/9 53/3
 53/8 62/5 62/14 69/22

70/21 72/6 74/2 77/4
78/21 82/13 83/19 85/15
 85/23 86/11 96/18 97/12
 97/23 98/6 98/13 103/4
 112/23
Government's [5]   2/15
 9/11 26/24 86/7 87/3
governs [1]   60/3
grab [1]   69/17
grading [2]   34/23 34/24
granted [1]   67/20
granting [1]   49/12
great [5]   21/2 50/10
 103/18 104/17 111/23
greatly [1]   79/15
grievance [2]   53/7 54/10
grievances [1]   57/3
ground [2]   105/13 110/17
group [1]   5/22
GS [1]   32/16
guaranteed [1]   36/10
guess [4]   10/2 33/16
 92/20 110/23
guidance [1]   51/9
guide [1]   51/18
guy [1]   112/4
guys [1]   26/6

**H**

had [41]   11/24 13/25
 14/22 15/13 22/5 24/20
 27/20 33/18 33/20 35/13
 36/16 43/19 47/20 49/25
 50/6 53/13 54/19 55/20
 57/6 58/10 65/2 66/8
 69/19 71/15 71/16 71/17
 72/8 75/6 77/18 81/15
 81/21 83/2 83/9 84/18
 93/14 97/24 99/7 100/11
 102/25 103/1 103/8
hadn't [1]   83/10
HALBIG [2]   1/3 2/3
half [2]   75/5 76/8
hamper [1]   102/18
hampered [1]   102/11
hand [3]   35/1 36/1 51/8
handed [1]   51/10
hang [1]   39/2
happen [2]   57/21 98/7
happened [3]   35/15 81/18
 105/1
happens [13]   9/7 56/5
 71/25 77/15 81/7 82/2
 88/17 90/12 96/18 98/2
 105/17 106/15 109/2
happy [7]   23/17 90/10
 96/4 99/19 99/20 104/11
 111/13
hard [1]   11/22
harder [1]   49/23
hardly [1]   22/21
hardship [3]   22/22 23/2
 23/13
hardships [1]   21/7
Harlen [1]   101/15
harm [4]   6/18 104/14
 107/7 108/2
harmed [2]   4/25 57/4
has [72]   3/14 3/15 5/20
 7/18 13/7 13/17 13/20
 15/5 20/25 22/17 23/4

H    Case 1:13-cv-00623-PLF    Document 1-30, 19 30/17 0/13

has... [61]   24/11 29/22
30/21 31/10 31/25 33/5
34/16 35/20 36/12 36/24
38/4 39/10 39/11 39/14
39/14 39/15 39/16 40/2
40/6 40/8 41/3 45/15 49/4
49/9 49/15 50/18 51/4
52/13 54/11 55/4 56/17
57/20 60/8 64/9 64/13
64/17 64/24 65/21 67/16
69/22 72/7 75/19 75/22
78/1 79/5 84/10 85/7
85/11 86/18 88/17 89/1
90/11 96/17 97/14 97/24
98/22 107/8 107/25 108/23
108/25 111/24
hasn't [3]   77/20 88/21
89/3
have [232]
haven't [8]   23/19 33/21
33/24 43/9 50/13 86/24
89/22 108/6
having [3]   13/21 30/10
92/12
he [142]
he'd [1]   3/21
he's [7]   30/10 30/11
36/23 40/4 46/25 53/2
66/19
heads [1]   39/3
health [12]   3/5 12/6
33/25 35/11 43/2 76/8
88/12 89/7 89/10 89/17
90/4 96/14
healthy [1]   102/6
hear [2]   8/18 24/1
hearing [4]   1/9 21/5
35/18 114/9
hearts [4]   9/15 9/16 9/16
9/20
height [2]   56/10 56/12
help [3]   2/13 33/1 68/20
helpful [2]   2/25 94/10
helpfully [1]   69/23
helps [1]   72/20
her [2]   14/19 14/20
here [44]   2/15 3/17 6/7
6/12 6/22 6/23 7/10 7/15
10/2 10/11 11/4 12/7
12/21 17/12 25/2 28/14
28/14 29/5 35/23 36/22
36/23 42/4 42/5 46/14
47/10 55/3 55/21 55/23
56/13 56/15 57/9 62/9
63/25 64/25 68/20 71/12
74/23 79/12 80/14 86/22
92/15 92/23 93/21 105/12
here's [3]   8/8 99/23
109/3
HHS [18]   33/15 34/15
34/19 35/13 35/21 35/22
36/7 36/12 39/11 43/8
43/14 43/15 51/4 51/12
51/17 51/18 62/23 98/15
Hibbs [4]   15/15 45/11
45/14 47/4
high [1]   70/5
higher [1]   87/5
highlight [2]   94/18 96/24

him [15]   5/6 5/9 5/14
32/12 37/22 37/25 49/10
50/6 50/17 55/1 109/10
himself [1]   50/4
hints [1]   80/22
his [24]   21/16 21/17
21/18 21/22 22/3 22/5
22/6 22/6 26/6 30/9 30/19
30/20 32/12 40/5 53/3
53/6 53/22 55/3 55/4
85/22 92/6 105/17 107/2
112/14
history [19]   12/16 79/22
79/24 80/2 80/6 80/13
80/17 81/4 82/2 99/14
99/18 99/23 101/5 101/6
101/11 102/2 103/15
103/20 112/1
hit [2]   42/22 104/19
hmm [1]   22/14
Hobson [1]   60/23
holding [3]   25/5 27/19
46/18
Holly [1]   47/20
Honor [15]   2/6 2/21 3/2
14/9 29/20 32/25 35/18
36/24 51/23 68/14 87/19
108/15 108/16 113/4 113/9
Honor's [1]   109/15
HONORABLE [1]   1/9
hook [1]   36/8
hope [2]   68/7 96/15
hopefully [1]   88/10
Hopson [1]   60/11
horns [1]   111/3
hot [1]   76/7
hour [2]   32/8 33/5
House [11]   1/12 81/8
81/12 81/21 99/24 100/4
100/10 100/15 100/22
100/25 112/5
House's [1]   100/2
how [32]   8/8 9/20 13/21
17/16 23/18 34/4 34/20
35/9 38/6 38/25 39/9
39/22 41/25 51/6 51/7
51/19 56/5 58/20 59/12
60/1 64/12 69/2 69/3 69/3
71/10 75/7 80/5 80/24
83/2 96/9 99/12 109/3
however [4]   3/9 67/12
73/18 74/18
huge [1]   83/9 99/8 99/9
hundred [3]   21/9 22/18
76/11
hundreds [1]   4/10
hunting [1]   103/18
hurdles [1]   23/21
hurt [4]   69/23 82/19
82/19 82/20
hurting [1]   38/11
hurts [2]   69/24 70/1
hypothesize [1]   42/14
hypothesizing [1]   40/14
hypothetically [1]   62/21

I

I'll [19]   17/3 22/24
22/24 30/18 32/24 33/3
36/24 37/1 41/14 41/23

42/16 64/10 72/17 75/8
78/19 96/15 108/17 113/8
113/10
I'm [29]   4/8 4/25 21/23
22/20 25/22 32/16 32/25
47/16 50/10 51/2 51/15
52/23 54/23 67/4 74/18
83/21 84/14 87/2 87/8
89/24 90/10 92/20 92/20
95/10 96/4 99/19 104/11
111/10 112/19
i.e [1]   26/3
ID [3]   31/21 31/24 32/2
idea [2]   77/6 101/12
identical [2]   69/1 76/6
identifiable [1]   29/2
identified [2]   33/21
33/24
identify [2]   2/4 32/16
ideological [3]   54/10
54/20 55/4
ignore [4]   62/25 97/21
102/12 110/25
ignored [1]   101/2
ignoring [2]   111/1 111/1
II [1]   4/16
III [25]   3/11 5/7 5/23
23/22 26/16 36/9 44/18
45/12 48/18 50/1 51/24
53/10 53/15 53/24 54/12
55/5 55/9 55/11 55/13
59/10 61/19 64/13 66/8
67/17 67/21
IIIs [1]   45/19
illegal [1]   85/13
illogical [1]   72/18
immediately [1]   58/22
imminent [1]   27/12
immunity [1]   85/24
impact [2]   13/25 62/6
impartial [1]   83/23
impermissible [1]   44/13
implement [2]   35/17 93/1
implemented [1]   35/16
implementing [3]   83/14
93/2 107/8
implication [1]   92/10
implicitly [1]   83/19
important [10]   24/17
24/18 27/9 27/21 43/2
61/7 61/7 83/20 98/18
102/10
impose [1]   62/14
imposes [1]   27/12
impossible [4]   30/23
85/12 91/23 93/7
incentive [1]   85/20
incentives [6]   69/14
70/24 71/1 102/23 103/1
103/6
include [2]   21/11 75/17
included [1]   49/15
includes [1]   73/21
including [2]   90/24 91/1
income [11]   18/23 21/17
21/17 21/19 21/22 32/14
33/5 70/5 70/5 79/7
100/19
incomplete [1]   15/17
inconsistencies [1]   99/11
inconsistency [2]   44/12

**I** Case 1:13-cv-00623-PLF

inconsistency... [1]
 72/23
inconsistent [4]  8/4
 18/11 79/14 92/7
increase [1]  16/12
increased [1]  43/20
incredibly [1]  30/21
incur [2]  61/9 106/16
incurred [1]  13/8
incurring [6]  5/18 22/1
 30/6 60/12 60/25 61/6
Indeed [1]  69/8
independent [2]  83/23
 87/24
indicated [1]  71/6
indication [2]  93/20
 93/24
indicia [1]  82/16
indispensable [3]  28/11
 28/13 29/8
individual [27]  3/13 3/14
 25/13 27/25 28/3 29/21
 37/16 37/24 37/25 40/16
 40/24 48/8 48/10 48/13
 57/2 77/11 84/12 84/17
 84/20 85/8 97/7 97/8 97/9
 97/10 98/19 110/16 112/15
individual's [2]  78/5
 78/14
individuals [9]  20/1
 77/10 77/22 97/15 97/17
 98/1 98/4 110/14 111/4
information [11]  3/23
 34/2 35/10 52/1 68/16
 79/16 90/25 91/8 92/9
 92/13 92/25
infringement [2]  7/5
 53/22
inherent [1]  107/7
inherently [1]  37/13
initial [4]  23/2 29/25
 62/7 71/20
initially [4]  3/22 5/4
 41/12 72/18
injecting [1]  107/14
injunction [55]  1/9 2/17
 2/18 8/11 8/12 8/18 8/22
 9/2 9/2 9/3 9/3 9/4 15/20
 23/20 24/5 24/6 24/10
 24/12 25/4 25/6 25/15
 25/22 27/3 27/10 27/13
 27/21 29/17 30/9 41/5
 41/6 41/6 43/9 46/17
 46/18 46/21 46/24 47/4
 47/12 47/24 47/25 49/8
 59/4 59/5 59/6 59/13
 65/18 65/22 65/23 66/19
 66/23 68/13 104/6 107/17
 107/17 108/10
injuries [2]  15/13 104/16
injury [50]  3/15 4/22 5/7
 5/14 5/21 5/25 6/21 6/21
 13/25 14/3 14/3 14/4 14/8
 31/7 31/13 32/2 32/6 39/6
 42/4 42/5 42/8 42/12
 42/15 43/5 43/7 43/10
 48/18 50/16 50/18 53/9
 53/9 53/23 54/12 54/12
 55/6 55/15 61/20 61/20

84/2 84/3 84/4 85/25
 103/25 104/2 104/7 104/14
 104/15 104/21 105/12
 112/13
INS [1]  62/18
insert [1]  102/17
inserted [1]  100/23
instead [1]  100/12
instructed [1]  85/2
insurance [57]  4/14 4/14
 4/24 4/24 5/5 5/8 12/5
 12/6 12/9 12/10 12/18
 22/3 22/5 22/7 22/9 22/10
 22/10 22/11 22/13 22/17
 22/25 23/1 23/3 28/4 28/7
 28/8 30/5 30/15 30/22
 30/24 31/3 36/22 38/13
 38/19 39/6 40/5 40/5 40/6
 42/11 52/15 52/17 54/5
 54/20 54/21 60/17 60/18
 70/1 70/2 76/19 82/21
 84/25 85/3 104/10 104/10
 105/3 105/9 106/8
insured [1]  75/15
insurer [2]  33/25 47/2
intend [3]  91/16 102/17
 102/17
intended [8]  18/11 91/25
 97/19 98/17 101/8 102/21
 102/23 103/17
intent [1]  82/17
interest [25]  10/22 11/2
 11/7 11/12 11/15 11/21
 11/24 12/1 12/7 13/17
 37/18 37/20 38/3 38/5
 38/7 39/7 46/10 48/19
 53/19 86/3 86/7 86/7 86/7
 107/7 107/10
interested [7]  4/12 4/21
 5/4 37/7 38/10 54/6
 114/10
interfere [1]  16/20
Internal [4]  15/8 24/22
 27/13 60/22
interplay [3]  25/23 90/17
 93/22
interposition [1]  15/10
interpret [9]  44/7 44/10
 70/12 70/13 71/5 71/12
 72/25 75/7 78/4
interpretation [8]  7/23
 43/24 68/19 76/5 77/22
 77/23 93/20 103/18
interpreted [1]  80/5
interpreting [2]  7/15
 98/20
interpretive [1]  7/15
interrelated [1]  38/21
interrupt [1]  24/23
intervening [1]  100/10
intricately [1]  38/2
invalid [1]  13/10
invalidate [2]  43/6 44/3
invalidating [1]  44/1
invent [1]  44/17
invented [2]  34/18 78/9
invited [1]  112/5
involve [3]  26/20 30/23
 45/21
involved [5]  17/15 31/21
 45/21 46/4 46/10

involves [1]  25/21
involving [1]  15/19
ironclad [2]  13/13 13/19
irrelevant [2]  52/10
 80/13
irreparability [1]  85/19
irreparable [17]  50/16
 50/18 84/2 84/4 85/22
 86/1 103/25 104/2 104/7
 104/14 104/14 104/17
 104/21 104/22 105/12
 108/2 112/13
IRS [15]  17/16 17/23
 18/10 31/8 31/10 31/18
 39/12 43/8 55/24 70/8
 70/15 71/21 73/19 83/10
 86/6
is [455]
isn't [7]  4/4 8/21 17/9
 26/3 61/11 61/13 111/22
isolation [2]  88/7 94/25
issue [41]  2/23 4/4 7/3
 10/1 10/8 10/15 10/18
 10/19 11/4 12/20 17/3
 18/23 19/11 20/9 21/1
 26/10 29/9 46/6 46/7
 49/19 51/23 55/15 57/14
 59/3 59/21 61/19 62/20
 63/23 64/4 64/25 65/16
 66/3 66/22 66/23 67/1
 67/12 92/23 98/22 98/23
 101/1 111/10
issued [5]  8/10 18/10
 26/15 55/24 56/16
issues [17]  10/17 15/20
 15/23 24/2 29/10 29/14
 36/25 49/23 57/21 60/7
 65/12 66/12 67/18 67/20
 67/22 67/23 68/5
issuing [1]  109/24
it [279]
it's [125]
items [5]  81/19 92/13
 92/22 93/2 101/23
its [10]  24/19 25/23 34/1
 62/10 75/23 81/3 93/14
 97/24 100/9 102/19
itself [8]  4/19 4/20
 17/21 27/10 63/12 89/6
 90/21 93/24

**J**

JACOB [2]  1/13 2/7
JACQUELINE [2]  1/3 2/3
January [3]  84/8 95/23
 106/5
job [1]  83/14
jobs [2]  32/15 33/9
JOEL [2]  1/17 2/10
join [1]  43/19
joined [1]  48/7
Joint [1]  82/11
JONATHAN [2]  1/14 2/7
JONES [5]  1/14 48/22
 48/23 59/24 60/20
Jost [1]  112/4
JUDGE [5]  1/10 57/1 62/3
 94/15 94/15
judges [3]  4/16 58/2
 62/16
judgment [18]  4/5 8/23

## J

judgment... [16]   57/10
 57/14 57/24 65/10 66/5
 66/12 86/22 86/22 87/1
 87/13 94/11 107/21 107/21
 107/24 108/4 108/7
judgments [1]   44/13
judicial [2]   49/15 83/24
judiciary [3]   82/22 83/21
 83/23
jumped [1]   34/12
June [1]   86/17
jurisdiction [2]   56/17
 63/13
just [79]   5/12 6/16 8/22
 11/22 13/19 14/18 15/24
 24/23 25/20 25/22 26/9
 27/25 32/24 33/3 35/6
 41/3 42/14 44/13 46/7
 49/7 50/4 50/11 51/2 51/3
 51/4 51/16 51/24 54/9
 55/19 57/1 59/8 61/12
 62/5 62/25 68/20 69/19
 69/23 71/14 72/22 75/6
 75/24 82/9 82/17 82/19
 82/22 82/23 83/6 86/4
 86/19 91/13 91/15 92/25
 93/9 93/10 94/24 94/25
 95/2 95/20 96/4 97/18
 97/21 98/5 98/7 101/1
 101/5 102/12 104/4 105/4
 105/9 105/14 107/1 107/3
 107/6 108/2 109/20 109/21
 110/1 111/8 111/15
Justice [7]   1/18 31/21
 31/25 35/7 62/16 62/23
 80/7
Justice's [1]   25/14
justifies [1]   71/20
justify [2]   21/3 44/16

## K

KATHLEEN [2]   1/5 2/3
Kavanaugh [1]   94/15
keep [9]   38/11 40/13
 41/14 42/6 47/1 67/3
 78/19 102/7 111/8
keeps [1]   112/15
key [4]   12/19 36/9 38/25
 49/13
kick [2]   7/7 106/4
Kickapoo [1]   44/12
kicks [4]   6/1 38/18 71/23
 84/20
kind [3]   50/11 54/6 81/22
kinds [3]   53/21 57/12
 72/25
Klemencic [34]   3/14 5/8
 21/8 29/21 30/3 32/9
 32/15 34/5 36/18 37/1
 37/14 39/10 40/5 40/18
 41/13 46/24 49/9 49/18
 49/25 50/4 50/16 51/7
 51/19 52/14 61/8 64/13
 65/19 65/21 66/18 78/6
 84/6 104/8 112/14 112/25
Klemencic's [7]   4/21 30/1
 36/4 51/24 76/20 86/14
 106/17
knew [7]   69/12 69/14

know [38]   2/19 8/11 9/20
 20/14 20/18 20/23 23/18
 34/12 39/3 40/10 40/21
 40/24 43/4 45/1 51/9
 51/15 55/14 56/6 56/7
 56/24 57/7 58/20 62/16
 62/21 67/14 71/10 79/7
 81/6 83/12 86/9 86/10
 87/1 91/12 95/13 97/20
 98/24 108/3 112/19
knowledge [1]   24/11
knows [1]   54/2

## L

label [1]   54/7
Labs [1]   85/11
lack [3]   3/11 5/23 61/19
lacking [1]   20/24
lagging [1]   50/6
landed [1]   13/7
language [41]   8/4 15/18
 16/6 26/19 67/5 67/6 69/1
 69/6 70/17 70/18 70/23
 71/3 71/5 71/5 71/7 71/11
 71/12 71/17 72/24 73/13
 75/2 76/15 76/19 77/13
 79/20 80/20 88/3 88/14
 89/9 90/3 90/5 93/17
 94/12 94/16 96/9 98/20
 101/10 110/25 111/1 111/2
 112/18
large [2]   6/1 24/15
larger [2]   12/19 96/23
last [15]   4/13 33/5 34/12
 35/16 35/17 39/25 51/3
 52/9 52/16 68/6 79/22
 82/17 95/17 95/18 101/14
late [1]   68/9
later [8]   6/6 65/10 68/8
 95/23 98/16 103/18 105/10
 107/3
latest [1]   32/8
Laughter [2]   58/3 58/14
launch [1]   36/4
law [35]   7/7 8/5 8/7 8/24
 28/15 31/14 36/14 39/1
 39/2 39/24 40/24 40/25
 55/18 57/17 60/20 60/23
 60/24 61/2 61/6 62/2 62/3
 62/5 63/21 76/18 83/20
 83/21 85/13 87/11 100/7
 100/24 104/23 104/24
 105/3 105/6 105/8
lawfulness [1]   11/11
laws [1]   43/17
lawsuit [9]   8/20 10/4
 16/7 48/12 48/14 56/4
 59/15 60/2 105/23
lawsuits [1]   56/23
lawyers [1]   9/18
lead [2]   26/8 84/25
leads [2]   26/16 67/13
least [8]   5/3 30/23 47/18
 52/14 64/14 65/17 99/22
 100/4
leave [1]   7/19
lecture [1]   83/22
legal [13]   60/12 60/16
 82/9 88/15 88/16 89/1

legalese [1]   95/12
legion [1]   44/11
Legislate [1]   79/24
legislative [16]   12/16
 79/22 80/2 80/6 80/13
 80/17 81/4 82/2 99/14
 99/18 99/23 101/5 101/11
 102/2 103/15 112/1
legislators [1]   95/12
legs [1]   38/4
less [5]   4/10 5/5 31/8
 70/2 94/10
let [7]   24/23 25/11 79/8
 86/13 92/3 95/12 101/12
let's [9]   20/11 23/20
 29/13 31/7 31/14 50/3
 65/21 84/2 105/15
level [6]   10/3 32/4 55/2
 100/19 104/17 110/24
Levin [7]   16/1 45/16
 45/19 45/20 45/21 45/24
 46/7
levy [1]   27/18
Lewis [1]   64/22
liabilities [3]   12/23
 13/3 16/13
liability [17]   15/7 15/9
 15/25 16/4 16/11 16/22
 17/7 20/4 36/11 36/20
 42/17 42/21 44/20 45/5
 45/6 60/13 107/3
liberty [8]   6/13 6/14
 6/19 7/2 25/8 47/17 53/18
 53/22
LIEBER [2]   1/17 2/11
lien [9]   13/7 13/9 13/10
 13/16 14/21 14/24 15/2
 15/5 46/13
liens [3]   27/18 46/9
 46/11
lieu [1]   109/7
light [1]   86/20
like [33]   9/11 9/12 11/22
 16/10 23/4 28/11 28/15
 28/18 29/13 29/24 32/15
 33/9 33/11 39/18 42/3
 44/22 46/1 46/2 48/5 51/7
 51/8 51/19 55/7 56/9
 56/22 61/1 62/16 69/19
 78/2 96/24 104/15 105/6
 111/1
likelihood [1]   68/17
likely [1]   19/17
limitations [2]   27/20
 52/8
line [9]   26/15 26/25 27/1
 33/4 33/23 36/12 36/17
 53/11 96/5
lines [1]   76/7
link [1]   101/16
list [3]   76/7 93/12
 109/24
listen [2]   44/22 69/20
listing [2]   93/18 109/13
literally [7]   70/4 72/25
 75/6 78/4 88/13 91/12
 93/7
litigate [8]   10/1 14/25
 15/4 16/21 17/6 62/20

L    Case 1:13-cv-00623-PLF    Document 142    Filed 02/13

litigate... [2]   64/3
107/2
litigation [5]   9/21 35/20
42/24 63/23 65/13
little [7]   7/13 39/9
62/12 73/14 73/16 105/16
106/2
live [1]   58/25
lives [1]   86/9
living [2]   21/12 21/21
Lobby [1]   47/20
long [4]   20/10 39/9 49/3
69/4
longer [2]   43/8 110/9
look [37]   7/13 9/11 13/14
17/11 21/21 26/12 26/25
37/25 39/1 42/3 45/23
46/1 46/9 50/11 52/15
53/17 72/15 72/16 74/3
75/10 77/15 79/2 80/1
80/6 80/25 83/20 88/3
88/9 88/16 90/21 94/24
94/25 95/2 98/3 98/9
111/19 112/6
looked [1]   94/14
looking [1]   90/16
lose [2]   65/2 104/3
loses [1]   58/21
loss [1]   55/25
lot [11]   26/7 42/11 44/21
49/17 63/8 68/16 75/11
81/13 82/1 94/12 112/2
lots [2]   20/12 92/24
Louisiana [1]   1/15
loved [2]   52/5 108/5
low [4]   70/5 79/7 102/7
106/18
lower [1]   35/1
lowest [11]   34/6 34/10
34/13 34/17 34/25 35/7
35/12 51/4 51/13 51/14
51/17
lunch [1]   68/8

M

machine [1]   1/24
made [7]   20/25 30/10
33/17 35/20 41/1 46/7
73/16
maintain [1]   78/22
major [6]   101/6 101/7
112/8 112/10 112/11
112/21
make [36]   3/5 12/5 12/8
12/17 24/24 26/4 26/9
27/24 28/1 31/4 33/11
35/8 36/22 37/1 37/10
37/13 38/6 40/22 41/23
42/7 47/13 48/5 51/15
69/18 74/20 75/9 76/6
77/10 78/19 80/19 86/13
91/22 96/2 103/12 111/17
112/3
makes [16]   22/21 27/22
29/12 31/8 31/10 32/17
32/21 33/9 36/6 44/12
47/7 70/2 75/12 79/4 79/9
83/25
making [12]   12/18 32/16

32/23 37/7 48/25 80/16
80/22 80/24 81/10 86/8
91/15 91/16
mandate [29]   25/13 25/16
27/25 27/25 28/4 37/16
37/24 38/1 38/9 38/17
40/16 40/24 42/1 43/12
47/15 47/21 47/24 48/7
48/15 48/16 48/19 60/12
60/16 84/13 84/17 84/20
85/8 104/23 112/15
mandates [2]   28/9 39/20
manipulation [1]   36/2
manner [1]   96/21
March [12]   84/9 84/12
84/23 84/25 105/18 106/2
106/3 106/12 106/14
106/15 106/23 106/24
Massachusetts [2]   1/18
111/19
material [1]   5/13
matter [21]   7/7 8/17
17/23 17/25 18/24 26/24
34/25 55/14 55/18 59/13
59/22 60/1 62/7 63/21
72/12 80/20 99/12 100/13
100/14 100/16 114/6
matters [17]   15/9 17/6
72/13 81/16 85/16 90/24
91/5
maximum [2]   21/9 21/16
may [22]   3/2 11/7 14/3
15/23 18/21 23/6 24/1
24/3 34/1 36/6 54/14
54/15 62/6 63/11 83/10
86/17 86/20 92/17 92/25
93/1 104/20 105/14
maybe [15]   8/17 8/23
22/24 36/13 36/13 56/23
66/13 66/15 73/13 73/14
73/16 75/8 76/17 94/10
111/9
MCELVAIN [7]   1/17 2/10
3/1 49/22 51/1 87/18
92/21
me [19]   2/7 2/11 4/25 5/1
10/24 18/21 24/23 25/11
26/8 30/5 39/11 52/12
54/24 58/9 62/12 62/22
92/3 96/16 114/4
mean [22]   11/10 23/7 23/8
41/9 44/8 44/10 62/15
70/12 70/13 71/3 71/6
71/12 76/13 84/14 86/3
88/13 88/14 94/18 95/10
95/19 97/8 110/23
meaning [1]   103/23
means [22]   70/10 72/6
72/17 72/25 75/18 75/19
76/21 76/21 76/25 78/12
79/6 79/20 88/15 89/7
89/17 95/21 97/9 98/24
110/7 111/5 111/6 111/12
meant [4]   87/25 93/25
98/11 99/4
mechanism [1]   45/8
medicaid [9]   43/19 43/20
43/21 78/22 79/2 79/9
79/12 82/3 83/4
Medicare [1]   69/19
meet [3]   11/3 11/22 14/4

mentioned [2]   53/17 87/20
merrets [12]   23/18 24/2
24/3 29/11 37/3 37/5 37/9
37/10 37/12 49/19 50/19
68/18
merrier [1]   92/22
message [1]   49/13
met [1]   14/5
MICHAEL [2]   1/13 2/6
microphone [1]   2/14
might [13]   2/23 10/1
11/24 36/19 54/14 54/21
55/1 57/7 58/11 94/22
94/23 98/7 100/12
Miller [1]   95/7
millions [1]   28/19
mind [6]   24/24 49/23 51/9
93/14 97/25 112/21
minimum [2]   35/24 99/21
minor [2]   34/6 112/12
minute [6]   4/13 35/16
35/17 68/7 71/6 89/20
minutes [3]   29/15 66/22
68/6
misleading [2]   34/19
34/21
misnomer [1]   62/9
misnomers [1]   28/3
miss [1]   112/9
misstatement [1]   60/15
modest [1]   39/9
Mole [6]   34/14 34/19
34/23 34/24 35/6 35/20
Mole's [2]   34/16 35/5
moment [3]   30/18 56/25
92/17
Monday [1]   1/6
monetary [4]   38/14 85/18
104/14 104/16
money [9]   31/24 32/12
42/11 43/1 47/9 47/11
79/7 82/12 103/2
month [13]   3/21 22/1 22/3
22/17 33/6 33/17 33/18
34/13 36/8 85/22 104/12
106/6 106/11
monthly [1]   21/25
months [6]   84/13 85/4
104/13 104/20 106/9
106/16
moot [3]   67/16 104/1
104/4
more [23]   5/5 5/16 6/2
7/7 7/13 12/5 12/9 12/18
28/20 33/11 58/11 66/13
90/22 91/16 92/4 92/21
92/22 93/10 93/16 94/11
94/17 96/2 102/16
Moreover [2]   36/1 77/23
morning [9]   2/10 3/2
29/20 34/15 34/16 50/11
68/17 84/5 113/11
most [6]   3/25 21/20 21/21
60/6 62/16 102/1
motion [23]   2/16 2/17
23/23 23/24 30/3 35/25
49/4 49/12 50/17 65/1
65/2 65/9 66/1 66/19
67/20 68/5 104/3 104/6
105/13 107/21 107/23
107/23 108/7

motions [2]   2/15 29/14
motive [1]   48/19
movant [1]   66/20
move [3]   29/11 66/10
 79/10
Mr [15]   2/9 24/1 26/6
 29/11 35/6 49/8 50/3
 50/16 52/13 64/12 68/3
 87/18 92/4 92/24 112/14
Mr. [41]   3/1 4/21 5/8
 9/12 21/8 29/21 30/3 32/9
 32/15 34/5 34/14 34/19
 34/23 35/20 36/18 37/1
 39/10 40/5 40/18 41/13
 46/24 49/9 49/22 49/25
 51/1 51/7 51/19 51/24
 61/8 64/13 65/19 66/18
 78/6 84/6 86/14 92/21
 96/9 104/8 106/17 112/4
 112/25
Mr. Carvin [1]   96/9
Mr. Employee [1]   9/12
Mr. Jost [1]   112/4
Mr. Klemencic [26]   5/8
 21/8 29/21 30/3 32/9
 32/15 34/5 36/18 37/1
 39/10 40/5 40/18 41/13
 46/24 49/9 49/25 51/7
 51/19 61/8 64/13 65/19
 66/18 78/6 84/6 104/8
 112/25
Mr. Klemencic's [4]   4/21
 51/24 86/14 106/17
Mr. McElvain [4]   3/1
 49/22 51/1 92/21
Mr. Mole [4]   34/14 34/19
 34/23 35/20
much [14]   28/20 32/16
 34/4 53/11 53/11 53/13
 53/13 58/20 59/25 60/25
 69/3 77/10 87/17 92/4
multiple [2]   3/10 11/20
must [6]   28/7 64/22 64/23
 75/2 75/18 105/23
my [20]   4/22 10/7 10/24
 21/11 21/20 21/23 24/24
 32/25 42/16 47/4 63/8
 63/10 63/12 68/15 77/20
 92/12 94/10 99/17 112/21
 114/3

N

naked [1]   82/17
name [4]   16/23 54/11
 56/21 77/12
names [1]   75/15
narrow [2]   11/25 12/12
national [4]   99/25 100/1
 101/18 101/23
nationwide [3]   3/5 7/18
 96/20
naturally [1]   70/6
nature [1]   6/18
nauseam [1]   112/10
near [2]   54/16 110/13
neater [1]   87/11
necessary [2]   91/2 91/5
necessity [1]   31/12
need [27]   26/11 28/14

28/16 29/22 33/4 50/15
 52/23 64/18 65/4 65/12
 65/13 66/24 67/14 74/20
 77/11 78/9 81/4 83/20
 86/10 89/4 92/16 102/6
 107/2 108/1 108/12 110/13
 113/5
needed [3]   69/9 69/9
 102/23
needless [1]   50/20
needs [11]   30/16 40/1
 50/21 66/18 73/19 75/24
 84/15 84/24 85/5 88/19
 96/18
neither [2]   30/16 114/7
Nelson [1]   69/10
Nevada [1]   75/22
never [20]   11/12 13/15
 13/16 37/5 38/13 39/4
 40/3 40/13 41/16 41/22
 42/6 43/16 44/20 45/18
 46/6 54/19 81/6 85/9
 108/24 111/11
new [7]   14/23 33/19 33/22
 34/2 36/11 36/12 52/3
newly [3]   32/10 32/21
 34/18
News [1]   101/15
next [14]   10/13 12/20
 17/3 26/12 57/22 57/25
 58/18 59/3 60/7 64/2
 66/22 85/4 87/12 99/14
NFIB [8]   24/19 27/9 40/15
 40/15 47/19 104/25 105/1
 112/19
NFIB's [1]   79/10
nine [1]   84/13
Ninth [1]   62/24
no [72]   1/4 3/15 5/7 5/14
 5/20 7/22 11/16 13/24
 13/25 14/9 15/2 22/19
 23/13 23/14 27/18 28/3
 28/7 28/13 31/10 33/22
 34/2 35/5 35/9 35/19
 35/19 36/10 36/14 36/17
 38/4 39/13 43/8 43/22
 44/7 44/12 44/13 45/13
 49/14 58/10 60/16 60/23
 63/22 64/9 64/18 67/21
 70/24 72/13 75/4 75/18
 76/25 77/4 77/21 83/17
 87/3 93/14 97/16 97/17
 98/1 98/1 98/2 99/12
 99/17 100/3 101/5 101/10
 102/25 108/1 108/2 108/8
 110/9 111/8 112/20 113/2
nobody [8]   42/23 56/9
 58/1 70/7 79/7 82/6 87/6
 97/5
non [3]   76/2 80/10 109/3
non-binding [1]   109/3
non-sensical [1]   76/2
non-traditional [1]   80/10
none [3]   17/4 67/16 67/17
nope [1]   86/17
normal [6]   8/21 19/12
 41/2 44/19 45/12 75/21
north [2]   31/23 70/12
not [233]
notably [1]   71/18
notation [1]   28/1

note [2]   51/11 78/19
notes [2]   10/24 114/4
nothing [17]   3/19 71/19
 75/6 83/15 83/16 91/24
 92/7 93/9 98/2 101/10
 101/17 101/22 108/14
 109/16 109/22 112/10
 112/11
notion [7]   5/12 34/4
 57/13 74/8 76/25 103/8
 111/11
notwithstanding [1]   27/5
November [1]   114/12
novo [1]   44/9
now [52]   3/18 4/1 4/13
 5/22 7/10 15/15 20/25
 24/11 26/6 30/17 31/1
 31/11 33/19 34/13 40/21
 41/14 41/21 42/16 43/13
 48/17 51/11 52/3 52/21
 54/2 54/13 54/24 55/12
 56/3 57/19 68/12 70/8
 78/12 84/6 85/2 85/4 85/7
 86/10 90/16 95/3 96/22
 97/20 98/3 99/14 101/4
 102/9 102/20 103/25
 107/10 107/12 107/16
 109/18 109/19
nowhere [1]   54/16
nugatory [1]   111/17
nuisance [1]   56/23
nullity [1]   41/7
number [13]   2/2 4/6 4/7
 11/21 21/23 29/22 34/16
 34/21 35/4 76/7 85/25
 92/6 112/17
numbers [6]   4/3 22/18
 51/9 52/2 52/3 52/21
numbing [1]   51/9
numerous [3]   14/10 15/12
 15/16
NW [3]   1/15 1/18 1/22

O

o'clock [2]   68/11 113/10
oath [3]   34/9 34/14 35/10
object [2]   53/3 53/7
objection [6]   54/5 54/10
 54/20 55/3 55/4 55/4
obligation [2]   83/3
 107/22
obligations [1]   105/18
obliged [3]   73/15 104/23
 109/1
obtain [1]   105/23
obvious [3]   36/2 68/21
 81/5
obviously [18]   2/17 2/22
 37/18 37/24 41/6 41/24
 43/2 47/17 48/11 72/12
 78/25 80/15 83/22 83/23
 84/24 85/3 88/6 88/12
occurred [1]   18/21
October [5]   1/6 33/23
 35/12 35/15 52/6
odd [3]   32/15 33/8 47/10
off [6]   16/19 30/11 92/18
 98/15 111/3 113/2
offer [9]   28/7 28/8 69/18
 73/11 81/10 81/25 82/3
 83/16 103/1

**O**

offered [2]   34/7 77/7
offering [1]   38/19
office [2]   32/1 34/23
official [1]   1/20
offset [2]   12/6 12/10
often [1]   12/12
oh [7]   13/14 15/16 20/1
 45/13 98/15 99/10 111/9
Ohio [1]   45/25
oil [2]   44/23 44/24
okay [17]   10/16 23/5
 23/16 31/16 34/7 44/1
 50/24 64/8 68/6 68/12
 72/15 72/17 74/13 91/10
 94/24 108/13 109/18
Olde [1]   41/17
once [4]   21/6 21/6 58/8
 81/18
one [107]   2/15 2/24 5/17
 6/2 7/7 10/1 10/18 11/8
 11/25 12/13 13/13 16/9
 21/16 21/22 22/1 22/1
 22/2 24/23 25/3 25/18
 25/20 25/21 26/18 27/12
 27/15 27/17 27/20 27/24
 28/21 31/5 33/25 35/6
 38/16 38/23 39/4 39/20
 42/1 42/17 42/25 44/7
 45/19 45/19 46/3 49/16
 51/2 51/3 51/8 52/14
 52/16 57/17 58/21 59/4
 59/7 59/9 59/10 60/7 61/9
 61/12 63/23 64/14 64/17
 65/1 65/17 66/7 66/12
 68/4 69/17 73/1 73/2
 73/11 73/23 76/8 76/23
 77/16 78/8 78/21 80/1
 80/12 83/11 87/10 90/22
 91/6 93/22 94/9 94/14
 94/19 95/1 95/8 96/4 96/5
 96/24 99/7 99/7 99/18
 99/21 100/4 103/23 104/12
 104/13 106/16 107/13
 109/11 109/19 109/20
 111/11 111/25 112/4
one's [1]   86/7
one-twelfth [1]   22/1
ones [2]   73/12 111/7
only [38]   3/14 4/23 7/3
 9/4 11/14 12/17 17/19
 17/22 21/6 26/18 36/5
 36/21 37/3 53/2 60/5
 64/25 66/19 67/24 69/4
 69/4 69/22 73/6 73/12
 74/7 76/21 78/14 78/16
 81/9 85/13 97/2 97/2
 98/20 99/15 101/19 101/23
 103/15 111/6 112/13
ooo [1]   113/13
open [1]   106/1
opener [1]   60/21
operate [8]   28/10 88/24
 89/10 95/17 97/4 102/7
 103/4 103/7
operated [1]   97/16
operates [1]   60/15
operating [1]   103/5
operation [10]   12/19
 57/17 57/24 91/3 93/23

operations [1]   91/18
opinion [9]   25/14 25/23
 58/8 58/9 58/17 94/10
 94/15 112/20 113/8
opposed [5]   5/17 65/10
 81/16 103/17 110/15
opposing [3]   32/24 108/18
 112/1
opposite [4]   11/9 41/3
 70/14 72/22
opposition [3]   3/24 30/2
 86/23
oral [1]   113/8
order [11]   2/19 55/15
 58/22 59/21 67/2 67/7
 67/14 67/14 68/5 95/15
 107/22
ordinary [4]   15/24 21/3
 21/4 21/5
originally [1]   22/6
other [52]   2/16 4/24 5/22
 10/19 13/3 13/18 14/5
 17/13 23/11 24/1 25/19
 29/23 34/3 39/18 49/18
 51/2 53/16 54/13 56/6
 56/14 57/12 59/11 61/1
 61/14 62/6 63/2 64/16
 65/5 67/6 67/22 72/14
 74/25 75/1 79/25 80/8
 80/13 81/13 83/5 83/25
 84/9 86/17 87/10 87/13
 92/18 98/3 99/19 101/19
 102/25 105/7 107/14
 108/24 109/22
others [2]   49/24 66/15
otherwise [5]   55/25 81/5
 82/6 92/23 114/10
our [51]   3/23 3/24 4/9
 6/4 7/23 9/15 9/15 9/20
 9/22 9/23 14/13 16/2
 17/19 18/20 21/11 25/6
 28/23 29/25 37/10 37/12
 38/9 38/23 43/10 44/6
 44/11 46/19 48/5 50/17
 55/15 55/15 59/6 62/9
 63/18 71/20 74/25 76/10
 76/23 78/7 78/20 79/14
 82/3 86/7 87/3 95/11
 97/12 97/22 109/3 109/17
 110/15 111/9 112/6
ours [2]   29/16 75/2
ourselves [1]   28/25
out [52]   2/13 5/18 8/13
 22/22 30/8 30/17 31/24
 32/11 32/22 33/1 33/14
 35/9 35/24 36/1 36/22
 38/17 39/24 40/23 41/10
 42/3 43/13 44/15 44/21
 46/8 47/11 47/20 49/17
 57/1 59/15 69/23 70/19
 72/18 78/9 80/13 80/18
 81/6 81/11 82/4 84/16
 90/22 91/3 91/7 91/18
 93/11 93/12 93/18 94/11
 100/13 105/24 111/15
 112/13 112/23
out-of-pocket [6]   5/18
 30/17 31/24 32/11 32/22
 35/9

outcome [1]   114/10
outset [4]   4/15 4/18
 53/14 87/20
outside [2]   41/5 47/3
over [9]   13/20 13/20
 15/25 21/17 39/3 43/25
 52/9 66/12 96/9
overcome [1]   23/21
overturn [5]   7/11 11/13
 16/16 63/25 67/2
overturned [1]   7/17
overturns [1]   7/20
owe [5]   21/9 22/2 104/12
 104/20 105/4
owed [2]   13/15 14/19
owes [1]   15/25
owing [1]   29/1
own [9]   6/9 7/22 7/24
 8/19 9/8 9/22 32/12 45/6
 57/9
owner [1]   14/23

**P**

P-R-O-C-E-E-D-I-N-G-S [1]
 2/1
p.m [1]   113/12
page [6]   30/3 47/6 51/10
 51/12 101/16 109/21
pages [2]   82/18 114/3
paid [3]   19/17 19/22
 100/25
palismatic [1]   74/11
paper [2]   51/3 51/8
papers [1]   108/10
para [1]   39/25
para-dynamic [1]   39/25
paragraph [1]   52/16
paren [2]   89/14 92/10
part [8]   15/14 49/12 65/4
 86/23 93/3 95/1 100/2
 100/24
participate [4]   53/4 55/8
 97/6 97/9
particular [16]   3/12 3/13
 10/20 12/15 13/11 16/8
 16/10 24/19 25/5 26/25
 58/12 88/4 96/2 96/25
 103/12 105/17
particularly [5]   20/24
 42/24 58/21 107/16 107/20
parties [17]   8/14 12/23
 12/24 13/2 13/2 15/11
 16/10 16/13 16/17 28/11
 28/14 28/17 28/20 29/9
 45/16 58/12 114/8
party [7]   13/4 13/17 14/1
 15/7 16/4 45/12 46/19
party's [2]   29/23 44/20
pass [3]   41/11 76/18
 81/16
passage [1]   80/18
passed [3]   3/4 11/13
 100/8
passes [1]   36/13
passing [1]   25/20
past [1]   9/24
patience [1]   108/16
patient [1]   88/5
PAUL [1]   1/9
Pause [1]   113/6
pay [35]   3/19 3/21 4/7

pay... [32]    4/10 19/6
19/7 19/9 19/9 19/13
19/14 20/6 20/7 28/5 31/3
32/10 32/22 32/23 33/16
33/18 36/13 36/14 36/19
38/18 38/22 38/23 39/16
40/8 40/22 42/6 42/15
43/11 43/11 54/2 82/13
105/9
payable [2]    20/2 20/4
paying [10]    22/18 33/6
33/7 34/11 41/1 41/3
42/12 61/3 85/18 112/22
payment [3]    25/17 26/1
36/18
payments [3]    36/11 90/25
93/5
pays [1]    58/1
penalized [2]    22/8 105/6
penalties [4]    84/20 85/15
105/18 112/20
penalty [22]    21/14 22/2
22/18 26/1 30/6 38/9
38/19 38/22 61/9 85/15
85/18 104/13 104/20 106/4
106/8 106/10 106/12
106/16 107/5 108/3 112/17
112/22
people [28]    11/14 20/12
29/3 37/4 37/4 38/13 40/9
40/12 43/17 45/11 46/9
48/24 51/6 51/7 51/18
56/14 62/6 62/20 69/24
69/25 70/5 70/6 79/9
82/19 82/19 84/11 86/14
102/6
percent [4]    21/16 21/22
76/12 100/19
perfect [1]    79/9
perfectly [7]    4/8 20/23
60/21 74/18 75/21 99/19
111/13
perform [2]    91/19 93/19
perhaps [3]    31/20 45/1
87/2
period [3]    106/1 106/3
106/22
Perk [1]    80/12
permanently [1]    112/24
permitted [1]    13/11
person [4]    44/7 90/22
97/8 110/8
person's [1]    13/18
personal [1]    14/25
perspective [4]    79/5
86/12 87/3 87/3
persuade [1]    10/24
persuasive [1]    58/11
phones [1]    92/19
phrase [12]    24/21 25/17
88/4 88/22 91/14 94/13
94/25 95/19 96/13 96/15
97/8 97/25
phrased [2]    64/12 67/12
phrases [1]    90/6
PI [3]    50/16 50/19 105/12
pick [2]    56/6 96/5
picture [1]    81/19
piece [4]    51/3 51/8 51/8

place [9]    13/11 13/16
39/18 41/12 56/18 56/19
59/18 60/24 91/21
plain [1]    75/2
plainest [1]    68/24
plaintiff [22]    6/15 11/3
11/23 11/24 23/12 29/21
40/10 43/6 49/3 49/16
53/25 55/7 56/11 64/17
64/19 64/22 64/23 64/24
65/16 65/17 105/17 107/13
plaintiffs [61]    1/4 1/13
2/7 3/11 3/13 5/22 5/23
6/22 7/10 7/14 8/19 10/2
10/9 10/19 10/19 10/21
12/7 12/14 12/21 13/24
14/2 14/6 14/7 14/7 14/10
15/12 15/15 16/3 17/4
21/1 26/13 28/13 48/8
48/10 48/11 48/13 49/11
49/18 50/9 50/10 55/13
61/18 62/9 64/14 65/5
65/13 65/24 66/8 66/14
66/25 67/13 67/14 67/16
67/24 88/4 99/13 99/24
100/9 107/9 107/14 107/20
plaintiffs' [15]    2/17 3/7
7/21 26/13 29/3 57/20
66/10 87/20 88/10 91/11
96/25 101/4 102/4 102/9
104/18
plan [15]    4/10 4/11 4/11
5/14 5/15 5/16 27/2 28/21
34/7 34/17 35/8 51/5
51/18 59/5 96/14
planning [1]    36/22
plans [7]    24/8 28/12 29/9
59/14 61/16 76/8 98/2
plausibility [1]    55/2
plausible [3]    53/12 98/9
98/10
plausibly [1]    54/17
plead [2]    59/12 60/1
pleadings [1]    53/13
please [5]    2/4 3/3 7/25
45/20 92/18
pled [1]    59/21
plug [1]    89/9
pocket [6]    5/18 30/17
31/24 32/11 32/22 35/9
podium [1]    2/14
point [66]    2/12 4/9 5/12
9/21 10/7 16/9 17/5 26/7
27/15 27/24 33/16 35/24
36/9 38/5 38/20 38/25
42/3 44/21 47/19 48/5
51/2 51/15 52/13 54/17
57/9 58/16 59/9 59/7
60/14 65/11 65/13 67/11
67/16 72/18 73/10 75/4
77/20 80/13 84/1 85/4
85/18 85/19 89/4 91/14
93/6 93/10 93/10 93/16
94/5 96/14 98/18 99/23
100/8 102/2 102/16 103/3
103/14 108/11 110/3 110/5
110/14 111/15 111/20
112/9 112/13 112/21
pointed [1]    69/23

pointing [1]    83/8
pointes [8]    39/8 75/4 75/9
77/16 78/20 108/5 109/11
112/3
policies [2]    35/21 35/22
policy [2]    82/17 83/6
politically [1]    83/12
poor [3]    69/24 79/8 82/19
popular [1]    28/9
popularly [1]    28/2
position [6]    26/24 47/10
50/8 62/19 85/12 86/14
possibilities [1]    104/18
possibility [2]    5/13 6/5
possible [3]    68/24 86/16
91/23
possibly [4]    28/25 36/19
58/11 97/19
postponed [1]    104/4
potential [10]    5/25 18/25
20/3 40/7 40/8 60/25 62/8
73/18 104/9 107/3
potentially [7]    5/25 18/6
18/7 21/8 24/8 60/5
106/12
pouring [1]    86/16
power [7]    6/8 7/19 19/3
27/19 50/22 98/22 99/1
powerful [3]    91/25 93/19
93/24
powers [2]    27/22 88/14
practical [1]    63/10
pre [3]    18/3 41/2 41/4
pre-application [1]    18/3
pre-enforcement [2]    41/2
41/4
precise [1]    51/18
precisely [3]    44/4 70/13
83/15
predicate [1]    49/23
preempted [1]    83/11
preemptor [1]    54/8
preliminary [11]    1/9 2/17
29/17 30/9 66/19 66/23
68/13 104/6 107/17 107/17
108/9
premise [6]    90/11 90/14
91/20 96/16 96/19 108/23
premised [1]    76/24
premium [5]    25/21 25/25
26/14 46/25 70/1
premiums [7]    3/18 12/6
34/20 47/3 75/15 82/20
102/7
present [3]    8/14 32/20
56/15
presented [4]    25/2 25/3
99/24 104/25
presenting [1]    99/3
President [1]    36/15
pressure [1]    40/12
presumed [1]    89/3
pretty [2]    59/25 112/19
prevail [1]    103/23
prevent [3]    6/5 7/5 47/11
prevented [2]    4/22 52/7
preventing [2]    47/9 107/7
previously [1]    114/6
price [5]    35/12 52/15
52/21 54/1 54/24
principle [8]    13/21 15/8

principle... [6]   15/14
 16/4 16/21 79/21 93/21
 112/4
principles [4]   15/22 21/3
 21/4 95/5
prior [1]   46/22
probably [8]   20/16 32/10
 57/8 59/1 78/12 79/10
 98/24 98/25
problem [11]   63/6 77/19
 77/24 82/4 96/25 97/14
 97/21 97/22 101/4 110/22
 111/8
problems [6]   31/1 32/7
 99/5 99/8 99/9 99/10
procedural [2]   15/4 86/25
procedure [5]   39/17 40/17
 63/14 67/5 85/21
procedures [2]   17/16
 18/14
proceed [7]   2/20 3/12
 9/21 17/17 24/10 29/7
 108/3
proceeding [14]   4/15 6/9
 10/1 10/8 10/14 11/8
 12/25 18/2 23/11 57/22
 57/25 58/18 99/25 107/10
proceedings [5]   1/24
 65/11 68/11 113/12 114/5
process [6]   13/22 30/14
 30/21 40/1 41/8 63/23
produce [1]   36/5
produced [1]   1/24
profits [1]   82/21
program [1]   53/4
prohibit [1]   76/22
prohibiting [2]   76/18
 77/5
project [2]   32/14 54/14
projected [1]   32/17
projects [1]   21/18
promise [1]   97/23
prong [10]   44/7 80/12
 80/14 80/15 111/14 111/14
 111/18 111/20 111/24
 111/25
pronouncement [1]   51/5
property [7]   13/6 13/8
 14/20 14/21 14/23 15/3
 46/10
proposed [1]   112/5
proposition [1]   16/5
protect [1]   28/25
protection [1]   88/6
protest [2]   20/6 22/7
prove [1]   77/12
proved [1]   69/15
proven [1]   83/14
provide [9]   24/15 42/11
 43/8 60/18 76/13 79/15
 91/8 92/9 107/19
provided [10]   3/23 18/14
 35/11 40/6 56/2 88/11
 89/5 91/1 101/16 114/4
providing [1]   18/3
provision [26]   5/8 28/6
 28/7 38/1 38/2 43/19
 68/21 69/1 71/22 72/2
 72/20 73/11 75/3 75/11

provisions [4]   74/25 75/1
 89/6 96/23
provisos [1]   78/23
prudential [11]   10/15
 10/18 12/21 23/23 36/25
 44/18 50/1 60/7 64/13
 66/8 67/17
public [9]   28/15 28/16
 28/18 34/20 35/22 43/17
 86/3 107/7 107/9
pull [2]   44/15 80/17
purchase [3]   30/5 52/19
 52/20
pure [2]   53/6 87/11
purely [1]   54/9
purportedly [1]   101/24
purporting [1]   67/2
purpose [36]   3/8 11/5
 11/5 12/2 12/2 12/11
 12/17 12/18 26/12 27/11
 27/21 48/1 48/5 48/6 48/9
 48/12 48/14 48/20 48/21
 59/6 59/9 59/9 59/10
 59/12 59/19 60/3 60/3
 69/7 69/8 81/3 81/3 87/21
 90/14 102/3 103/17 103/21
purposes [8]   12/15 23/10
 23/10 37/11 55/13 59/13
 85/17 112/17
pursue [3]   23/8 26/13
 57/3
pursuing [1]   23/13
put [10]   11/18 34/1 40/9
 54/7 68/20 83/4 83/9
 91/13 91/17 94/12
putting [4]   85/12 87/8
 87/12 93/12

Q

QHP [1]   35/1
qualified [23]   28/8 60/18
 76/8 77/9 77/11 77/21
 78/4 78/11 78/14 78/16
 97/7 97/8 97/9 97/15
 97/17 98/1 98/4 98/19
 104/10 106/5 110/14
 110/16 111/4
qualifies [1]   106/20
qualifying [2]   18/8 28/4
question [26]   7/19 13/5
 25/11 28/12 49/14 49/21
 49/22 55/12 63/8 63/10
 64/11 64/16 65/23 66/10
 68/19 81/2 83/2 87/11
 92/12 92/20 100/3 100/13
 101/1 107/11 107/12
 109/15
questions [4]   35/14 36/24
 49/1 64/9
Quick [1]   28/23
quickly [2]   42/14 104/1
quite [17]   3/15 12/4
 15/22 24/17 24/20 30/4
 30/13 46/15 60/20 64/12
 69/4 69/22 70/6 71/2 97/1
 104/6 105/11
quotation [2]   15/17 15/18
quote [2]   60/16 95/21

R

raise [5]   45/24 45/25
 59/4 64/11 66/12
raised [5]   60/14 67/20
 100/15 100/17 100/19
raising [3]   6/24 46/4
 64/25
rare [2]   11/7 12/13
ratchet [1]   35/7
rates [4]   4/1 30/8 30/10
 34/1
rather [2]   54/11 85/21
rational [1]   44/7
razor [1]   32/22
reach [2]   8/5 43/13
reached [1]   58/17
reaction [1]   83/17
read [14]   8/8 16/6 45/20
 46/17 47/17 58/8 58/10
 72/13 74/8 82/12 88/6
 98/5 101/16 112/19
reading [9]   9/23 53/12
 63/18 78/20 79/14 98/10
 99/22 102/15 103/21
ready [2]   68/8 68/12
real [13]   13/24 13/25
 14/8 14/8 14/11 15/13
 42/4 42/5 42/8 43/22 55/3
 55/4 81/5
reality [1]   113/3
realize [1]   10/23
really [21]   5/14 28/9
 40/21 44/14 50/14 59/18
 61/9 79/8 81/1 83/20
 83/20 85/16 87/1 92/11
 94/18 96/25 97/1 99/5
 99/10 111/4 113/3
reason [25]   5/24 10/11
 11/9 16/18 17/22 23/14
 29/8 34/4 38/15 44/8
 44/13 45/15 48/17 48/18
 53/2 59/9 59/10 59/14
 59/19 60/2 60/5 61/7
 81/24 86/21 105/11
reasonable [7]   41/21
 41/24 43/24 44/4 99/22
 103/22 111/24
reasonably [4]   11/23
 42/24 86/5 111/21
reasoning [4]   17/19 24/13
 24/18 27/16
reasons [9]   17/4 18/5
 29/22 30/18 32/20 93/22
 103/20 107/11 108/1
receive [2]   54/10 55/18
receiving [2]   55/5 55/8
recent [7]   17/11 22/4
 52/7 69/15 83/13 95/9
 95/10
recess [2]   29/19 68/10
recognize [3]   11/2 45/9
 45/9
recognized [1]   13/20
recognizing [1]   74/22
reconcile [1]   90/6
reconciliation [6]   81/15
 100/12 100/15 100/18
 100/23 112/11
reconfirm [1]   36/4
reconfirming [1]   109/22

**R** Case 1:13-cv-00623-PLF

record [2]  2/5 100/4
recorded [1]  1/24
records [1]  56/20
red [1]  69/16
Redressability [9]  9/25
 55/12 57/7 58/7 58/19
 59/8 63/19 63/20 67/13
redressable [2]  57/19
 57/20
redressed [1]  55/15
reduce [2]  45/3 45/4
Reduction [1]  26/20
reductions [1]  47/6
refer [2]  33/3 88/4
reference [4]  15/18 25/20
 74/7 82/12
referenced [1]  96/7
referred [4]  27/24 28/2
 95/25 96/22
referring [4]  15/18 45/14
 88/8 96/21
refers [3]  27/10 27/14
 88/22
reflected [1]  94/8
reform [1]  61/7
refuge [1]  79/22
refund [19]  17/21 18/1
 18/14 19/14 21/3 23/3
 23/6 40/4 40/13 41/8
 41/10 41/15 41/16 41/22
 61/10 85/5 85/6 85/21
 107/4
refunds [1]  17/16
refuse [3]  22/8 69/19
 81/10
refuses [1]  90/12
reg [5]  31/15 39/12 43/6
 44/2 44/3
regard [5]  37/1 41/1 41/2
 41/23 58/11
regardless [5]  22/5 26/10
 71/13 77/19 92/8
regime [1]  85/8
registration [1]  31/22
regress [1]  43/7
regressed [1]  43/10
regs [2]  84/10 84/15
regulated [1]  37/20
regulation [43]  3/16 7/11
 7/12 7/14 7/15 7/17 7/20
 7/22 8/3 8/7 8/22 8/24
 9/5 9/7 9/13 9/14 10/3
 11/12 17/9 17/9 18/10
 20/14 20/19 39/22 55/24
 56/10 56/17 57/2 61/14
 62/4 62/10 62/13 62/15
 62/22 63/1 63/13 63/16
 63/16 64/1 64/2 67/2
 87/12 107/8
regulations [2]  56/6 56/9
regulatory [1]  103/5
reinforces [1]  79/15
reject [2]  54/14 75/2
rejected [4]  3/9 36/1
 87/22 101/13
relate [2]  67/23 93/13
related [3]  38/2 92/14
 114/7
relates [2]  13/10 28/12

relating [2]  15/9 79/16
relationship [2]  15/18
 45/2
relatively [2]  23/14 79/7
relevance [1]  100/6
relevant [13]  24/3 24/3
 38/20 74/23 77/13 79/25
 85/17 88/7 92/11 92/21
 93/2 99/15 105/25
reliance [1]  25/24
relief [10]  6/7 7/4 10/11
 49/19 55/21 55/23 56/1
 56/15 61/19 65/8
rely [5]  9/14 13/23 47/17
 59/25 64/1
relying [3]  4/19 48/23
 112/3
remaining [3]  105/14
 105/15 107/6
remedy [7]  8/10 17/21
 23/7 23/8 23/12 23/13
 61/8
remember [4]  40/18 64/11
 106/15 108/22
remote [1]  104/15
remotely [4]  45/20 101/24
 104/15 105/12
removing [1]  107/15
render [3]  58/24 71/4
 76/1
rendered [2]  67/16 104/1
repeated [1]  32/10
reply [5]  30/8 30/10
 45/13 101/14 101/20
report [6]  75/14 75/23
 80/18 82/11 90/24 91/5
Reporter [1]  1/20 1/20
 2/13
Reporter's [1]  29/16
reporting [3]  75/11
 109/10 109/13
reports [1]  81/22
represent [1]  62/17
required [7]  60/17 71/24
 84/19 88/21 92/13 95/18
 95/19
requirement [4]  45/13
 78/14 88/22 95/22
requirements [4]  44/19
 75/12 109/10 109/14
requires [1]  86/25
requiring [2]  31/17 92/8
reside [1]  110/16
resident [4]  77/12 77/13
 78/6 78/10
resides [1]  97/10
resist [1]  77/2
resisted [1]  111/11
resolve [6]  39/22 74/18
 80/3 107/18 111/21 111/24
resolved [3]  4/5 20/9
 35/25
respect [28]  10/17 20/5
 25/4 25/10 27/15 29/9
 29/14 38/18 45/16 46/24
 47/13 49/3 49/7 49/11
 51/23 54/13 59/4 59/5
 65/16 65/17 65/23 66/14
 77/9 78/11 92/6 98/5
 107/13 111/5
respectfully [3]  24/13

relating [2]  15/9 79/16
reached [1]  13/13
relationship [fixed at 141]
 25/9 23/3
respectively [11]  107/1
respond [2]  107/22 108/5
responded [1]  108/6
response [3]  76/10 91/11
 97/20
responses [1]  76/23
responsibilities [2]
 90/23 91/7
Restaurant [1]  28/24
Restaurants [1]  28/21
restrain [2]  27/21 48/24
restraining [3]  27/11
 48/1 60/4
restrictions [2]  27/18
 111/17
result [5]  70/25 83/18
 91/15 95/25 97/2
resulting [1]  13/25
results [2]  93/7 93/9
resumed [1]  68/11
return [6]  31/9 31/11
 31/11 31/14 31/15 31/20
returns [2]  19/18 19/19
revenue [5]  13/21 15/8
 24/22 27/13 60/22
reverse [1]  95/15
review [1]  41/4
revise [3]  33/20 70/18
 70/20
revised [1]  32/10
revising [1]  70/22
revision [1]  32/8
rewrite [4]  9/1 71/3
 82/22 102/12
rewriting [1]  102/13
riders [1]  50/6
right [54]  2/12 3/9 7/1
 7/9 9/6 9/12 9/13 12/22
 14/16 17/10 19/13 19/16
 19/16 20/24 23/23 23/24
 25/14 26/11 32/5 35/1
 38/12 40/4 41/14 42/5
 42/10 42/16 42/16 45/2
 45/24 46/9 47/7 47/8
 47/22 50/7 50/15 54/24
 57/6 61/4 61/16 64/16
 65/3 66/14 66/16 66/16
 70/16 77/16 77/24 80/11
 82/1 85/19 88/11 89/18
 107/16 109/1
rights [12]  6/8 28/15
 28/16 28/18 28/19 29/3
 29/4 29/6 32/3 55/21
 56/14 57/2
ripe [10]  17/4 20/5 22/23
 41/15 41/21 42/15 43/4
 60/8 65/16 66/7
ripeness [6]  17/3 18/5
 21/4 21/7 23/10 43/3
rise [4]  31/7 32/4 53/21
 104/16
risk [9]  32/11 39/4 40/6
 40/7 40/7 41/18 42/17
 42/23 42/25
road [3]  36/19 103/19
 104/20
ROTH [2]  1/13 2/7
roughly [1]  85/1
route [5]  61/6 73/6 99/7
 99/8 105/8

**R**   Case 1:13-cv-00623-PLF

routes [1]   87/24
row [1]   106/9
RPR [2]   1/20 114/12
Ruciello [1]   71/10
rule [15]   16/9 27/17
 27/17 40/15 40/15 41/10
 44/17 44/18 44/19 45/15
 46/7 46/19 56/3 63/11
 71/21
ruled [1]   6/12
rules [5]   20/14 20/18
 41/2 96/17 98/23
ruling [4]   27/5 66/25
 107/13 107/20
run [19]   39/4 40/6 41/18
 69/10 69/13 69/14 69/21
 72/2 72/7 76/22 77/5
 78/15 79/17 80/20 81/8
 82/24 83/7 95/24 100/5
running [5]   70/2 71/19
 77/4 77/6 79/6
runs [2]   32/11 71/13

**S**

Sackett [2]   85/11 105/6
sacrales [1]   40/7
said [63]   4/21 6/20 8/6
 9/1 9/13 11/22 12/17 15/4
 16/18 19/24 22/6 23/5
 24/11 25/18 25/20 29/25
 31/8 31/10 31/14 31/15
 32/8 33/19 34/24 34/24
 39/1 44/14 45/23 46/1
 46/23 48/3 53/3 54/13
 54/19 54/23 55/8 55/9
 55/14 57/6 57/20 68/23
 69/10 69/19 70/15 71/1
 71/15 73/14 79/2 79/5
 80/19 81/9 82/8 83/11
 85/12 87/6 92/3 92/4
 102/23 105/2 109/2 111/9
 112/2 112/6 112/20
sake [1]   29/16
same [26]   18/5 21/12
 24/21 28/6 38/6 48/8
 48/12 48/13 49/18 51/14
 62/6 62/20 72/1 72/7
 72/12 75/10 76/9 93/21
 94/3 95/13 95/15 95/25
 96/6 98/14 108/1 110/3
sarcastic [1]   46/16
satisfied [1]   43/2
satisfies [1]   45/12
satisfy [2]   44/18 80/15
say [85]   4/18 7/16 7/22
 8/6 8/15 9/3 9/3 9/4 9/22
 13/14 14/14 17/19 17/25
 18/15 22/7 23/21 25/1
 31/19 34/12 37/7 37/8
 38/21 39/13 39/25 40/9
 40/21 42/4 43/4 44/1
 44/22 46/9 49/16 50/3
 52/24 55/19 55/21 57/3
 62/10 63/18 65/10 67/21
 70/9 70/19 71/9 71/22
 71/25 72/14 72/15 72/18
 73/11 73/20 74/8 74/13
 74/19 74/25 75/14 75/17
 75/17 75/21 76/2 76/20

**D**   77/7 77/15 77/20 78/24
 79/21 80/23 83/17 85/4
 85/25 87/7 89/22 90/2
 94/24 98/3 98/15 100/9
 101/24 104/22 109/6
 109/24 111/22 112/8 113/2
 113/5
saying [30]   3/23 6/12
 7/24 8/1 8/23 8/23 9/8
 14/24 15/16 25/9 26/4
 38/8 41/15 42/6 42/8
 45/25 46/2 50/11 55/24
 58/8 82/2 83/19 84/14
 92/20 96/9 98/24 99/10
 109/8 111/8 112/15
says [48]   3/20 3/20 23/1
 24/10 28/7 28/16 30/4
 31/1 34/17 35/4 35/13
 36/14 37/17 38/16 43/23
 45/11 45/13 46/12 47/5
 47/7 47/25 51/17 56/9
 56/10 61/25 62/3 63/22
 70/14 72/3 72/24 74/4
 74/13 76/18 76/19 78/9
 78/10 78/22 79/15 88/11
 89/16 89/21 91/6 98/4
 101/16 101/22 102/9
 110/15 111/4
Scalia's [1]   80/7
scenario [2]   22/12 22/15
scheme [5]   3/5 38/16
 38/21 39/10 86/5
scientific [1]   56/20
Scott [1]   81/14
scoundrels [1]   79/22
scurring [2]   82/7 82/8
SEBELIUS [2]   9/19 94/25
second [21]   8/20 9/7 9/11
 10/8 24/23 34/6 34/10
 34/13 34/17 34/25 35/7
 35/12 51/4 51/17 63/17
 75/5 89/4 89/12 93/23
 108/4 111/20
secondary [2]   56/18 56/18
Secretary [33]   70/11
 70/11 71/19 72/4 72/7
 72/10 72/14 73/2 73/3
 73/22 73/24 74/3 74/9
 74/16 77/25 78/2 79/15
 88/20 88/23 88/25 89/2
 89/9 90/4 90/6 90/13 91/4
 91/13 91/24 93/8 94/5
 95/16 108/24 109/7
Secretary's [1]   91/3
section [40]   6/16 6/24
 7/15 12/4 21/10 24/8
 27/12 55/17 68/25 69/6
 70/9 70/11 70/19 70/21
 70/21 72/16 73/13 73/14
 73/21 74/12 74/15 75/14
 78/18 88/3 88/5 88/7 88/9
 88/11 88/19 88/20 89/8
 91/17 92/12 93/8 95/1
 95/16 96/12 109/5 109/12
 109/19
sections [1]   90/17
see [5]   33/4 35/1 38/13
 53/17 113/10
seek [6]   6/9 7/1 17/6
 19/14 55/23 56/15
seeking [6]   6/15 7/6 7/11

**28/19 63/16 107/16**
seem [23]   41/8 94/11
seems [1]   47/18
seen [4]   30/10 62/15
 62/18 70/25
sell [1]   98/2
Senate [11]   69/9 69/12
 80/18 81/9 81/9 81/12
 81/19 81/20 100/8 100/23
 101/20
senator [2]   69/10 100/11
send [1]   75/23
sense [18]   26/9 27/10
 27/23 29/12 31/4 47/7
 52/24 79/4 79/9 83/25
 91/16 91/22 93/10 93/16
 94/7 102/16 103/12 106/14
sensible [1]   69/7
sensical [1]   76/2
sentence [1]   30/4
separate [3]   15/20 18/2
 109/19
September [8]   3/24 33/17
 33/22 34/9 34/16 35/5
 35/15 51/25
serious [3]   40/6 42/17
 42/21
serves [2]   69/7 81/3
service [2]   28/23 43/2
set [18]   7/11 16/19 29/2
 45/9 54/21 56/1 60/23
 62/1 62/4 62/8 63/13
 63/15 79/3 81/20 99/7
 99/9 102/24 103/2
setting [2]   62/8 62/10
Seventh [2]   62/24 95/10
several [2]   9/19 94/25
shall [14]   88/11 88/13
 88/23 88/23 89/10 89/21
 90/4 90/6 90/24 91/8
 95/16 95/22 96/13 108/20
shape [1]   75/7
she [1]   14/22
SHEILA [2]   1/17 2/11
shifts [1]   36/10
shoes [13]   73/2 88/25
 90/7 90/13 94/5 94/13
 95/4 97/13 108/24 110/6
 110/7 110/8 110/9
short [1]   106/7
shorter [1]   106/3
shorthand [1]   1/24
should [21]   3/8 8/18
 13/16 16/18 18/7 23/25
 29/11 34/3 39/22 56/1
 60/11 62/25 65/8 66/4
 73/14 78/2 80/5 87/22
 87/23 102/11 111/10
shouldn't [5]   41/4 60/9
 82/22 102/12 107/4
show [11]   3/14 7/12 15/1
 28/22 50/18 64/22 64/23
 84/24 86/18 104/7 108/16
showing [1]   4/3
shows [2]   22/22 71/10
shrug [1]   113/1
sic [1]   16/1
side [5]   10/7 24/1 26/10
 86/18 101/6
side's [1]   94/22
sides [1]   94/19

significance [1]   74/12
significantly [1]   102/11
signing [2]   86/15 112/5
silently [2]   98/15 101/2
silly [4]   10/24 11/1 37/2
 37/13
silver [7]   34/7 35/1 35/8
 51/5 51/13 51/14 51/18
similar [8]   16/15 17/4
 17/14 18/5 47/20 60/21
 77/9 99/19
simple [2]   68/19 111/4
simpler [1]   26/3
simply [12]   4/14 5/7
 10/11 16/5 38/4 50/8
 52/10 53/7 97/18 98/16
 103/12 104/20
since [3]   41/25 72/11
 79/20
sincere [1]   53/6
single [3]   49/3 64/24
 65/16
situation [5]   13/24 25/2
 36/18 36/19 71/15
situations [2]   25/18
 62/15
six [3]   67/20 71/1 109/20
skipped [2]   14/19 14/20
slightly [1]   5/23
slimily [1]   55/5
small [2]   23/14 34/11
smoke [3]   56/9 56/11
 97/18
smoking [2]   56/17 56/19
so [205]
solemnly [1]   34/9
solve [3]   77/23 78/5
 110/21
some [41]   18/9 20/19
 20/21 26/9 27/6 27/20
 39/18 41/10 44/19 44/25
 45/15 49/22 50/6 52/15
 52/21 53/23 54/1 54/2
 58/12 62/17 65/11 65/13
 66/14 67/2 67/6 67/23
 68/20 74/8 76/2 76/3 77/7
 81/19 84/8 86/17 86/23
 92/25 93/1 101/3 101/8
 105/7 111/23
somebody [20]   11/19 11/20
 13/7 16/11 16/12 16/16
 19/12 44/2 45/24 46/4
 53/19 56/16 80/25 83/16
 94/16 94/16 106/11 106/20
 110/7 110/8
somehow [8]   29/6 34/13
 37/14 43/7 73/20 76/16
 79/14 109/8
something [15]   4/19 5/13
 9/12 11/13 26/16 46/5
 52/25 53/8 76/4 79/3 83/3
 92/23 99/20 108/21 112/8
soon [1]   87/1
sooner [1]   86/9
sorry [4]   22/20 51/2
 86/18 95/10
sort [18]   7/3 8/18 11/23
 15/25 18/4 18/4 26/8 39/2
 53/8 53/18 59/25 68/5

sorted [1]   100/13
sorts [2]   27/22 27/22
source [1]   101/21
south [1]   70/12
sovereign [1]   85/23
speak [1]   2/13
speaking [1]   99/14
special [2]   29/10 40/24
specific [7]   28/20 29/2
 35/21 40/15 46/11 46/14
 71/17
specifically [13]   15/6
 24/14 24/21 28/22 56/14
 90/15 91/3 91/18 93/11
 93/12 93/13 96/22 104/6
spend [2]   49/17 86/11
spending [1]   63/8
spends [1]   85/22
stack [2]   56/10 56/11
stage [5]   4/5 8/10 42/24
 66/1 66/2
stake [8]   13/24 14/8
 14/11 15/1 15/13 15/23
 29/3 64/4
standing [57]   3/12 3/15
 4/16 5/2 5/23 5/24 10/15
 10/18 12/21 23/22 23/24
 26/16 28/22 29/21 29/22
 29/23 30/19 35/23 36/10
 36/16 36/20 36/21 36/23
 36/25 37/11 43/3 49/3
 49/4 49/25 50/1 51/24
 53/10 53/15 53/18 53/24
 54/13 55/10 55/11 55/14
 61/19 63/14 64/14 64/15
 64/16 64/17 64/19 64/23
 64/24 64/25 65/2 65/15
 65/22 66/8 67/17 67/21
 90/7 97/12
stands [7]   88/25 89/1
 90/11 90/13 94/5 94/13
 95/4
start [4]   5/17 29/20
 95/16 96/12
starting [2]   87/22 91/20
state [99]   15/19 15/21
 41/20 44/7 44/10 45/20
 45/25 46/3 46/5 46/6
 56/24 68/25 69/6 70/9
 70/19 70/20 71/13 72/3
 72/10 73/5 73/8 73/12
 73/21 74/4 74/10 74/15
 74/16 75/13 75/19 77/13
 77/15 77/20 78/1 78/2
 78/6 78/10 78/15 78/23
 79/5 79/16 79/17 79/18
 80/19 81/8 82/14 82/15
 88/1 88/5 88/11 88/13
 88/17 88/17 88/20 88/22
 88/24 88/25 89/1 89/3
 89/21 90/5 90/11 90/12
 90/13 93/25 94/6 94/7
 95/22 96/10 96/12 96/13
 96/17 96/19 97/10 97/13
 97/15 97/16 97/23 98/6
 98/14 98/20 98/23 98/25
 99/4 102/19 103/2 103/3
 103/4 103/23 108/25 109/1
 109/7 109/9 110/10 110/11

state's [1]   98/22
stated [1]   114/6
statement [2]   29/24 57/23
states [55]   1/1 1/10 1/21
 14/12 43/9 43/18 53/9
 58/24 69/9 69/12 69/17
 70/24 71/1 71/16 71/23
 71/25 72/7 73/1 73/15
 73/17 73/24 75/22 76/18
 76/21 76/22 77/3 77/4
 77/6 77/17 78/17 78/22
 79/8 79/11 81/7 82/2
 82/25 83/1 83/2 83/4 83/6
 83/7 83/12 83/17 88/14
 88/18 98/25 101/3 101/9
 102/24 103/6 103/12
 103/16 103/16 108/20
 114/4
statute [53]   8/4 8/7 8/8
 8/15 9/23 10/22 11/11
 12/15 12/19 15/21 18/12
 26/7 28/10 31/13 32/13
 32/18 37/21 39/23 43/24
 44/2 44/5 45/9 45/19
 46/11 46/13 47/18 50/14
 57/5 60/15 63/18 70/13
 71/25 72/1 77/22 80/1
 80/5 81/5 86/23 87/12
 92/5 92/17 93/1 93/3 95/1
 99/12 99/22 101/11 102/13
 102/13 102/15 103/21
 111/17 111/22
statutes [4]   15/21 28/10
 74/8 92/6
statutory [19]   15/25
 21/18 31/6 31/12 34/1
 45/15 45/21 68/19 70/23
 71/4 71/17 79/20 79/21
 80/9 95/5 99/13 110/25
 111/1 111/2
staying [1]   107/22
stenographic [1]   114/4
step [17]   26/12 63/23
 79/25 80/1 80/3 80/9
 94/19 94/20 94/23 96/18
 99/16 99/18 99/20 103/13
 103/23 103/23 110/9
stepping [2]   110/6 110/7
steps [3]   73/2 90/13
 108/24
stick [4]   78/25 90/10
 96/5 103/9
still [28]   7/21 8/7 8/19
 9/22 10/12 15/14 31/17
 42/15 49/10 52/2 56/22
 57/15 57/16 58/4 61/22
 62/6 63/1 63/17 64/3
 65/22 73/3 74/9 74/19
 78/5 80/14 105/3 105/24
 111/21
stipulate [1]   82/25
stone [1]   81/20
stop [11]   26/23 33/10
 45/5 47/9 48/6 48/9 48/14
 48/15 48/21 59/6 59/7
stopped [1]   48/23
straight [3]   33/14 38/14
 107/3
straighten [1]   81/11

straightforward [6]  8/2
8/2 50/14 61/12 61/13
68/18
strange [1]  86/23
stranger's [1]  44/25
strangers [1]  45/7
stronger [1]  92/21
struck [2]  20/13 86/6
structure [6]  7/6 90/14
96/23 101/7 102/2 103/20
studied [1]  92/12
stuff [5]  58/10 75/15
75/16 76/8 81/20
sub [8]  89/15 89/15 90/21
90/21 90/21 93/4 93/4
95/1
subject [22]  14/23 18/7
18/7 24/8 24/9 37/15
37/15 37/17 37/18 37/25
38/9 40/19 60/5 60/17
60/19 61/3 102/19 104/8
105/9 106/9 106/12 107/4
submission [1]  71/20
submit [2]  27/3 29/4
submitted [1]  4/2
subsection [1]  92/14
subsidies [35]  5/20 32/13
53/4 53/5 55/5 69/21
69/24 69/25 73/12 74/20
75/17 75/18 75/20 76/3
76/9 76/13 76/14 77/20
79/6 79/16 79/17 80/19
82/12 82/23 82/24 82/25
83/5 83/6 83/9 83/21
86/15 92/14 92/23 109/16
112/7
subsidy [40]  5/10 22/13
22/15 30/13 30/14 32/18
34/5 34/6 34/8 34/11 36/5
37/7 37/14 37/15 37/15
37/21 37/25 38/12 38/15
38/17 38/24 39/5 42/18
43/9 43/14 43/15 45/6
47/14 48/9 48/15 51/20
68/21 68/23 69/2 69/3
72/11 72/20 73/11 110/5
111/7
substantial [2]  42/23
42/25
substitute [1]  70/19
success [1]  68/17
such [21]  15/23 28/3
49/14 63/22 72/4 88/24
89/10 90/4 91/2 94/12
94/12 95/3 95/4 95/11
95/17 100/25 103/13
108/22 110/1 110/2 110/13
sue [3]  37/5 44/2 85/23
suffer [1]  5/24
suffered [3]  3/15 6/21
39/15
suffering [3]  5/14 14/3
43/5
suffers [1]  5/20
sufficient [6]  14/4 24/16
32/2 32/4 53/21 53/23
suit [18]  3/10 7/24 15/14
17/20 27/1 27/11 39/8
40/13 41/15 41/16 41/22

48/5 48/6 48/20 48/21
56/21 59/19 60/3 12/30/13
suits [3]  15/11 15/16
48/1
summary [12]  4/5 65/10
66/4 66/11 86/22 87/1
94/11 107/20 107/21
107/24 108/4 108/7
superfluous [2]  71/5 76/1
supplemental [2]  4/2 52/4
supplier [1]  44/23
suppliers [1]  44/24
suppose [4]  51/19 65/21
84/15 95/17
Supreme [13]  20/16 20/22
23/4 24/18 25/13 25/24
39/19 59/23 62/22 64/21
82/5 105/1 105/1
sure [8]  24/24 33/10
48/17 79/8 82/5 90/10
94/4 95/6
surely [1]  32/5
survive [2]  66/18 104/19
switch [3]  36/24 41/14
86/17
switched [1]  32/9
swore [2]  34/14 35/10
system [7]  40/3 55/8
84/14 84/18 96/20 97/25
107/15

**T**

table [4]  30/12 83/5 83/9
108/21
tag [1]  50/9
take [22]  9/18 14/12
28/20 29/15 31/19 39/9
50/20 54/25 62/17 62/19
68/7 70/8 70/24 73/6
74/23 82/6 83/2 83/12
98/15 101/8 104/19 106/17
taken [3]  103/14 114/5
114/9
takes [6]  31/25 37/19
53/20 89/23 89/24 93/17
taking [5]  3/12 30/11
70/4 103/9 103/10
talk [8]  29/17 46/8 50/13
68/12 74/24 84/2 95/3
105/16
talked [4]  23/20 80/25
81/6 84/11
talking [17]  25/25 41/12
49/7 68/6 71/8 71/18
82/14 82/15 84/5 92/15
95/3 95/13 95/14 95/22
108/2 109/5 112/9
talks [3]  26/2 51/12
82/13
tangible [1]  86/9
task [2]  69/16 70/25
tax [201]
Taxation [1]  82/11
taxed [2]  19/12 112/20
taxes [17]  9/4 26/3 26/22
27/8 27/12 31/19 40/22
42/12 42/22 44/25 45/12
45/24 46/4 48/2 48/24
48/24 61/24
taxpayer [6]  14/18 14/21
15/10 46/9 46/11 61/1

taxpayers [5]  13/3 16/21
20/20 83/1 113/1
team [1]  26/6
technically [2]  84/10
84/16
tell [4]  43/8 43/14 59/1
86/17
telling [2]  54/24 71/25
tells [7]  46/12 51/6 51/7
69/2 72/2 88/20 109/22
ten [7]  29/15 34/24 34/24
34/24 66/22 113/7 113/10
tens [1]  112/25
Tenth [1]  47/20
term [11]  5/19 19/11
24/16 24/19 27/9 37/2
89/7 89/16 95/12 95/12
111/4
terminology [2]  28/2 28/9
terms [20]  5/16 6/18
12/20 24/21 27/6 27/8
32/7 38/14 53/12 53/13
68/17 79/11 81/13 81/20
86/3 94/18 95/4 104/5
111/14 112/13
terrified [1]  61/21
territories [2]  71/15
71/16
test [6]  12/1 12/12 21/25
22/3 42/23 108/17
Texas [1]  101/15
text [14]  90/19 98/4 98/10
102/14
textual [3]  27/8 90/20
98/13
than [18]  4/11 5/5 7/7
26/4 26/7 28/20 31/9
49/23 53/12 53/13 54/11
72/14 81/12 85/21 94/10
95/23 109/22 110/8
thank [12]  2/6 2/9 33/2
50/25 51/21 51/22 83/17
87/16 87/17 108/15 113/4
113/9
that [682]
that's [115]
the zone [1]  10/21
their [114]  5/2 5/24 6/3
6/9 6/24 6/25 7/5 7/22
7/24 8/19 9/8 10/13 12/22
12/22 14/3 15/14 15/17
17/5 17/6 18/6 18/23 19/4
19/5 22/15 22/24 23/1
24/7 24/16 28/20 28/22
28/22 29/4 29/6 29/8 32/8
33/20 34/4 36/21 37/9
38/14 39/4 39/5 39/6
40/22 42/18 43/7 43/16
43/18 45/4 45/6 45/13
45/25 46/18 47/17 48/14
48/19 48/19 49/12 51/5
51/19 54/4 55/18 56/11
56/13 57/3 57/9 57/13
58/24 59/10 61/20 61/20
61/23 61/24 64/22 70/1
72/20 74/17 75/5 76/24
76/24 77/2 77/23 78/7
78/22 80/14 80/17 82/17
82/20 83/5 86/8 86/12
86/13 86/22 93/8 97/2
97/4 97/16 97/20 98/1

**T**   Case 1:13-cv-00623-PLF

| | | |
|---|---|---|
| **their...** [15]   98/18 99/2<br>99/5 99/13 100/6 100/22<br>101/6 101/20 102/20 104/8<br>107/11 110/6 110/19<br>110/23 110/24 | 12/16 15/3 15/16 16/18<br>19/22 23/13 23/14 28/6<br>28/8 28/13 33/25 34/2<br>35/5 35/9 35/19 39/24<br>41/10 42/25 44/12 44/17<br>44/19 44/21 45/18 46/11<br>63/22 63/22 67/21 71/19<br>72/13 72/25 76/4 78/21<br>82/1 84/8 84/8 86/21<br>90/20 92/7 92/23 94/14 | 86/15 95/8<br>**thinks** [1]   50/21<br>**third** [17]   4/17 8/14 13/2<br>13/2 13/4 14/1 15/7 15/11<br>16/4 16/13 16/15 44/20<br>45/12 45/16 46/19 62/24<br>93/23<br>**Thirty** [1]   71/1<br>**Thirty-six** [1]   71/1<br>**this** [226] |
| **theirs** [1]   110/15 | | |
| **them** [43]   18/25 26/17<br>29/7 36/5 36/17 37/5 39/5<br>39/16 40/20 41/24 42/11<br>43/14 43/21 44/9 45/5<br>46/2 47/1 55/21 56/15<br>57/11 59/1 59/15 65/2<br>69/14 69/18 70/3 71/14<br>74/19 75/21 77/11 78/24<br>81/16 83/3 83/5 83/24<br>86/2 86/17 92/8 92/22<br>95/6 109/14 109/21 110/13 | 95/6 95/9 99/17 100/3<br>101/5 101/10 103/2 104/22<br>105/11 106/6 106/7 107/6<br>108/1 108/2 111/8 111/23<br>**therefore** [12]   8/4 8/25<br>13/16 22/16 34/10 36/15<br>37/5 37/10 38/10 55/25<br>75/2 82/21 | **thoroughly** [1]   109/23<br>**those** [27]   6/8 7/8 11/8<br>14/7 24/1 24/4 27/8 27/22<br>27/22 28/25 31/1 55/20<br>57/11 64/6 68/2 71/1<br>74/21 76/8 83/7 83/23<br>88/14 90/6 90/17 93/4<br>93/22 99/10 103/20<br>**though** [4]   11/6 66/6<br>75/23 82/4 |
| **themselves** [5]   14/8 14/8<br>17/16 85/14 98/21 | **these** [44]   4/25 9/9 12/18<br>14/4 14/7 23/25 32/25<br>33/1 33/8 33/14 40/9 43/9<br>43/10 43/13 46/9 46/25<br>49/22 50/20 51/9 66/12<br>69/13 71/17 71/19 74/8<br>74/25 75/1 75/9 76/16<br>81/19 82/24 83/20 86/15<br>91/5 91/19 91/21 92/13<br>92/22 93/2 98/12 98/13<br>107/20 109/20 112/7<br>112/12 | **thought** [10]   3/24 19/24<br>23/19 27/16 62/12 70/6<br>82/4 82/6 100/10 109/6<br>**threat** [5]   7/4 10/12<br>57/16 61/21 61/22<br>**threaten** [1]   104/18<br>**three** [10]   35/17 77/16<br>78/12 87/24 90/17 93/13<br>93/22 106/6 106/9 109/21<br>**threshold** [8]   2/23 3/10<br>9/25 14/5 21/18 21/19<br>65/12 66/3 |
| **then** [71]   8/11 9/7 13/8<br>15/2 19/14 25/6 25/6<br>25/11 26/18 29/14 29/16<br>30/8 30/24 32/5 32/18<br>34/8 34/11 36/7 37/18<br>38/2 38/17 38/18 39/12<br>39/14 39/15 39/16 39/17<br>39/19 40/8 40/13 41/6<br>41/21 42/22 43/4 43/24<br>44/2 44/15 46/3 46/8 49/4<br>49/22 54/7 54/21 56/10<br>57/7 57/21 62/20 66/9<br>66/15 69/22 72/15 75/14<br>76/15 77/7 77/8 77/21<br>78/25 80/5 82/3 83/11<br>85/14 85/21 86/3 88/23<br>91/13 96/12 98/6 98/14<br>101/1 109/20 112/23 | **they** [360]<br>**they'd** [2]   10/12 69/14<br>**They'll** [1]   31/24<br>**they're** [32]   6/12 6/23<br>7/23 11/12 38/11 38/15<br>41/17 41/18 41/18 41/22<br>42/10 42/13 42/16 42/20<br>57/16 63/16 63/25 66/16<br>69/3 71/8 71/24 73/25<br>74/9 74/19 77/8 95/13<br>97/14 99/7 99/8 102/10<br>107/12 111/1 | **threw** [1]   57/1<br>**through** [24]   19/14 23/25<br>29/13 30/21 39/17 40/17<br>41/7 41/7 49/15 68/9<br>68/24 71/3 75/8 76/19<br>78/12 85/8 85/21 92/13<br>95/15 95/24 98/11 100/11<br>108/17 109/10<br>**throughout** [3]   25/17<br>74/24 96/7<br>**thrown** [2]   68/16 96/16 |
| **theories** [1]   97/21 | **they've** [4]   82/5 98/21<br>98/23 111/21 | **thus** [1]   62/5 |
| **theory** [29]   3/7 5/2 6/3<br>29/3 29/25 32/10 32/21<br>43/16 43/18 62/6 78/7<br>78/7 87/20 93/8 96/25<br>97/2 97/4 97/12 97/16<br>97/22 98/1 99/5 99/13<br>102/4 106/4 109/17 110/19<br>110/24 110/24 | **thin** [1]   32/22 | **tied** [2]   34/6 37/24 |
| | **thing** [12]   8/21 9/7 13/13<br>28/3 28/6 34/3 46/3 49/14<br>50/3 54/13 63/22 95/13 | **time** [17]   20/10 23/15<br>26/2 30/7 39/19 50/21<br>52/2 52/14 52/18 54/18<br>63/9 85/1 85/3 86/17<br>102/17 106/22 114/5 |
| | **things** [8]   14/5 19/24<br>60/8 66/11 71/17 81/13<br>94/9 112/12 | **times** [1]   78/12 |
| **there** [88]   2/18 3/10 4/18<br>5/7 6/15 6/19 7/3 8/10<br>8/14 9/1 10/17 11/20 13/1<br>14/10 14/17 14/18 15/12<br>15/20 17/25 18/21 18/25<br>22/24 26/23 27/18 28/3<br>28/9 28/15 29/2 29/8<br>33/22 35/20 36/20 39/24<br>41/10 43/19 44/21 45/23<br>46/6 46/20 46/22 48/23<br>49/1 49/14 50/9 52/8<br>52/15 57/5 57/7 60/16<br>60/20 60/23 62/3 65/1<br>65/15 74/1 77/21 79/12<br>84/25 87/24 88/9 88/11<br>88/19 90/2 90/16 91/17<br>92/7 93/14 94/17 94/17<br>95/3 96/19 97/5 97/16<br>97/17 98/24 99/5 99/11<br>99/25 100/1 100/6 100/10<br>102/2 103/3 103/6 106/5<br>108/4 109/12 111/15 | **think** [72]   2/22 7/18 9/10<br>9/12 11/1 11/13 20/24<br>22/21 23/25 25/22 26/11<br>29/12 29/13 30/19 36/1<br>39/22 41/8 42/6 44/23<br>46/22 48/22 49/2 49/13<br>50/8 50/10 50/22 54/17<br>55/2 56/25 59/15 59/17<br>59/17 62/16 64/18 67/4<br>67/9 67/12 68/8 68/17<br>68/21 72/21 75/8 77/3<br>77/6 79/10 79/14 83/19<br>84/8 84/11 84/19 85/1<br>85/2 85/16 86/4 86/21<br>86/25 87/10 90/18 90/18<br>92/9 94/17 94/19 94/20<br>96/9 98/9 98/10 102/20<br>108/1 108/18 108/19<br>110/14 113/1 | **timing** [2]   39/8 105/16<br>**today** [11]   2/7 2/11 21/2<br>33/24 34/22 36/18 42/15<br>43/5 45/13 46/8 92/15<br>**together** [1]   94/4<br>**told** [8]   34/20 35/12 41/3<br>43/11 43/15 59/8 62/12<br>81/2<br>**tolerate** [1]   82/22<br>**tomorrow** [3]   36/6 113/7<br>113/10<br>**too** [1]   81/25<br>**took** [2]   36/16 36/17<br>**tool** [1]   80/10<br>**tools** [1]   80/9<br>**top** [1]   79/9<br>**torturous** [2]   30/21 85/8<br>**totally** [4]   52/11 62/18<br>62/18 62/19 |
| **there's** [58]   5/13 9/24 | **thinking** [4]   26/9 80/22 | **tour** [1]   74/23 |

**T**

traditional [2]   80/9
 80/10
transcript [3]   1/9 1/24
 114/3
transcription [1]   1/24
transfer [1]   38/14
transferred [3]   13/8
 14/19 14/22
Treasury [9]   3/16 7/14
 10/3 20/25 38/12 47/2
 47/10 47/12 86/2
treat [4]   27/23 71/16
 78/2 110/20
treating [1]   44/23
tried [2]   16/20 46/8
trigger [1]   61/24
triggered [3]   42/1 48/15
 69/4
triggers [3]   37/16 45/6
 61/5
trouble [1]   93/11
true [15]   36/3 37/9 38/8
 50/11 54/11 54/12 54/15
 59/1 64/3 65/19 80/7 82/5
 97/22 112/22 114/2
truth [1]   32/9
try [5]   9/1 44/9 62/14
 68/9 108/17
trying [21]   9/10 9/25
 10/2 11/13 11/14 16/11
 16/12 16/16 30/22 33/1
 45/3 45/4 45/5 45/23
 46/16 47/11 48/23 51/15
 68/3 83/18 86/1
turn [11]   17/3 28/11
 46/21 51/10 69/22 70/7
 81/25 82/2 83/25 88/7
 92/18
turned [1]   82/4
turning [6]   12/20 24/5
 55/12 59/3 60/7 103/25
turns [2]   7/5 72/11
tweets [1]   81/19
twelfth [1]   22/1
twin [1]   47/19
two [40]   2/15 10/17 25/18
 27/23 28/10 35/14 39/8
 44/15 45/18 63/2 63/22
 66/11 72/25 73/23 75/4
 76/23 78/20 79/25 80/3
 80/9 80/14 80/15 83/8
 85/7 94/2 94/21 94/23
 99/16 99/20 99/21 101/23
 103/18 103/24 109/11
 111/14 111/15 111/18
 111/25 112/3 112/17
typical [2]   28/18 62/13

**U**

U.s [1]   1/18
U.S.C [1]   24/6
Uh [1]   22/14
Uh-hmm [1]   22/14
ultimate [8]   17/5 17/6
 26/12 26/15 26/25 27/1
 57/23 65/7
ultimately [3]   18/6 58/16
 87/4
UN [1]   16/1

unaffordable [1]   12/9
unambiguous [4]   44/6 80/1
 80/16 80/21
unbelievably [1]   83/14
uncertainty [1]   107/15
uncommon [1]   27/9
unconstitutional [4]   6/16
 32/5 69/13 85/13
under [137]
underlying [5]   14/25 15/1
 15/7 15/9 57/5
undermined [1]   102/3
underneath [1]   13/14
understand [9]   20/25
 25/19 26/7 28/1 39/10
 44/3 46/16 67/25 88/8
understandably [1]   71/2
understanding [3]   25/23
 87/25 99/17
understands [1]   43/22
understood [1]   109/23
undoing [2]   70/23 70/25
unearth [1]   86/23
unfair [1]   29/7
unfortunately [1]   19/1
UNITED [7]   1/1 1/10 1/21
 14/12 23/5 59/23 114/4
university [10]   6/13 6/14
 6/19 7/2 25/8 47/17 48/23
 48/25 59/24 60/20
unless [9]   25/22 29/13
 36/24 50/21 78/23 83/25
 108/25 108/25 110/16
unlike [3]   14/7 27/19
 84/5
unquote [2]   60/16 95/21
unrealistic [1]   85/6
unreasonable [1]   80/15
unrelated [1]   17/23
unthinkable [1]   78/24
until [5]   20/6 39/14
 39/21 78/23 84/18
unwelcomed [1]   70/25
up [38]   2/22 5/12 10/1
 33/6 33/13 34/4 34/8 34/8
 34/12 35/6 35/7 35/13
 36/6 39/17 45/9 46/7
 49/11 51/8 51/10 60/23
 68/20 69/25 73/7 79/3
 80/21 82/20 83/11 84/25
 86/15 88/19 99/13 101/9
 101/24 102/24 103/2
 106/22 106/23 106/24
upheld [1]   20/19
upholds [1]   62/22
upon [2]   25/24 85/18
urge [2]   74/12 87/14
us [15]   7/25 8/16 9/15
 20/16 35/18 37/10 40/23
 43/11 46/12 47/18 52/7
 76/16 83/3 104/24 110/18
USC [4]   74/3 88/9 89/13
 92/10
use [20]   8/16 9/13 21/23
 24/16 27/6 27/8 37/2
 52/11 52/23 71/7 71/10
 71/11 80/8 80/9 80/10
 95/4 95/12 96/15 104/12
 112/18
used [5]   24/14 24/20
 25/17 28/2 99/18

useful [3]   92/25 93/1
usage [3]   24/20 26/2 78/21
 97/25
using [4]   67/3 67/4 67/5
usually [1]   11/2

**V**

vacate [4]   8/22 56/1
 62/21 62/21
vacated [6]   8/25 9/14
 10/6 56/19 61/14 62/13
vacating [1]   67/4
vacation [1]   62/25
validity [1]   15/5
valuable [2]   79/4 103/11
value [2]   58/18 58/20
variances [1]   94/3
variety [1]   90/24
various [1]   23/21
vehicle [1]   18/25
verb [1]   105/21
version [2]   100/3 100/22
versus [9]   2/3 26/21
 36/11 59/23 64/22 94/16
 94/16 105/18 105/19
very [44]   7/2 11/2 11/7
 11/25 12/1 12/12 16/6
 16/18 17/14 17/18 17/24
 27/9 27/9 27/20 29/2
 29/18 40/6 42/14 42/17
 42/21 49/2 55/7 56/13
 57/12 68/18 69/15 69/16
 74/24 75/12 77/9 79/4
 86/9 87/17 91/25 91/25
 93/24 93/24 93/24 102/10
 104/1 105/2 106/18 107/6
 108/19
veto [2]   36/17 102/19
vetoes [1]   36/15
view [14]   17/8 18/4 20/10
 20/19 20/25 21/1 37/9
 37/12 62/9 66/10 66/11
 74/5 76/16 80/5
vindicate [1]   11/24
violate [2]   32/2 32/3
violation [1]   39/12
violative [1]   55/25
Virginia [6]   30/22 33/25
 34/7 35/11 51/12 77/25
virtually [1]   33/23
vote [1]   32/5
voter [2]   31/21 32/2
votes [1]   81/16
Voting [1]   32/3

**W**

wait [2]   35/17 39/14
waiting [1]   84/18
wake [1]   36/6
walk [1]   75/8
want [54]   2/20 4/13 4/14
 6/3 6/4 8/9 12/8 12/9
 14/24 24/9 24/24 26/8
 26/14 27/2 28/24 30/17
 30/25 31/2 31/12 33/10
 37/22 37/23 47/9 49/21
 49/22 50/9 50/20 53/4
 53/20 54/8 54/9 55/8 58/9
 59/21 61/9 62/19 70/18
 71/1 71/11 71/11 72/24
 79/2 82/21 82/25 83/21

**W**    Case 1:13-cv-00623-PLF

want... [9]   88/16 90/7
 94/18 105/16 108/4 108/17
 110/12 111/3 111/22
wanted [9]   23/19 27/25
 30/1 52/18 54/18 82/23
 82/24 83/4 100/15
wants [4]   30/16 62/17
 105/20 105/21
was [109]   4/12 5/4 6/15
 6/16 6/19 7/3 8/1 10/5
 11/6 11/13 12/3 12/4
 13/15 14/18 14/18 14/21
 14/23 15/17 15/18 15/20
 16/15 16/16 17/17 21/11
 24/15 24/18 24/18 25/9
 25/17 30/1 30/7 30/7
 31/13 34/10 34/11 34/11
 35/5 35/10 36/21 37/7
 40/7 41/6 41/12 41/24
 45/14 45/24 46/6 46/22
 47/23 48/23 51/16 51/25
 52/14 52/20 52/24 53/12
 53/14 53/16 53/25 54/1
 54/6 65/15 65/16 66/7
 68/3 69/10 69/18 78/25
 80/22 81/1 81/1 81/3 81/8
 81/12 81/20 81/25 81/25
 82/7 82/10 82/13 82/23
 83/5 83/7 83/18 84/5
 87/25 88/8 93/14 94/10
 95/8 97/25 99/3 99/25
 100/2 100/4 100/10 100/14
 101/12 101/20 102/4 103/3
 103/16 103/17 103/17
 109/2 109/9 109/24 112/5
 114/9
Washington [4]   1/5 1/15
 1/19 1/22
wasn't [2]   23/7 83/6
wasted [1]   109/21
way [33]   4/15 7/3 18/6
 25/21 28/10 32/13 33/12
 38/12 42/4 55/16 58/10
 60/15 60/22 67/14 70/18
 71/20 72/13 74/5 75/7
 76/1 77/1 85/13 86/9 87/9
 88/16 90/6 96/4 96/5 99/2
 99/10 105/24 111/23 112/6
ways [2]   9/19 99/1
we [176]
we'll [10]   29/15 29/16
 31/3 40/23 69/20 72/23
 109/18 109/19 109/19
 109/20
we're [29]   2/15 7/10 18/6
 23/1 23/2 24/8 31/19 39/2
 40/22 42/6 43/5 43/12
 45/3 50/17 55/23 60/10
 60/10 63/8 68/12 75/21
 79/8 80/16 92/14 108/2
 109/5 111/9 111/13 111/15
 111/24
we've [12]   12/21 43/2
 68/16 68/20 70/25 73/7
 73/8 99/21 102/14 105/20
 105/22 107/11
weakness [1]   74/22
wealth [3]   9/24 12/16
 13/1

wealthier [1]   69/25
wealthy [14]   82/19 12/30/13
web [1]   101/16
website [8]   33/15 34/15
 34/22 35/13 36/7 51/4
 51/6 51/12
week [1]   101/14
weeks [3]   30/23 35/18
 52/9
weight [1]   94/12
well [79]   3/20 3/22 4/13
 6/3 6/23 7/10 8/9 9/12
 11/1 11/18 15/16 17/11
 18/17 19/1 20/11 22/12
 22/24 23/5 25/20 27/16
 28/13 29/16 29/18 31/1
 32/4 32/17 32/17 37/9
 39/23 40/9 40/21 42/20
 44/1 44/21 48/7 52/24
 55/14 57/20 62/7 64/2
 65/11 70/3 70/10 71/12
 71/22 72/15 73/11 75/4
 76/20 76/23 77/15 77/16
 79/4 83/10 84/24 85/5
 87/8 91/12 92/7 93/18
 96/11 96/24 97/20 98/3
 98/24 99/1 99/4 99/20
 100/8 100/9 102/4 102/9
 102/25 104/22 109/2 109/3
 109/5 110/6 112/16
went [8]   20/15 20/15
 20/21 20/22 21/15 33/23
 82/9 109/10
were [44]   2/18 4/15 8/5
 9/1 9/13 17/18 19/24
 26/18 35/12 45/23 49/25
 52/1 52/2 52/8 52/17 57/4
 57/5 64/12 64/25 64/25
 65/1 67/1 68/22 81/9
 81/10 81/11 82/7 82/14
 82/15 83/7 89/20 90/16
 91/20 95/13 99/3 101/2
 102/5 103/6 103/13 109/6
 109/8 109/12 109/13
 112/20
weren't [1]   81/18
West [6]   30/22 33/25 34/7
 35/11 51/12 77/25
what [139]
what's [6]   5/19 6/11
 16/23 89/13 95/18 95/21
whatever [6]   67/7 85/16
 98/7 104/13 105/17 110/12
whatsoever [2]   5/21
 101/11
when [43]   3/4 4/18 9/25
 12/1 18/9 18/11 19/17
 21/3 32/8 39/25 40/2 41/4
 43/18 44/9 51/11 62/7
 68/21 68/22 68/22 68/23
 69/2 69/3 71/8 71/11
 71/14 71/18 71/23 71/25
 72/15 73/2 74/3 74/16
 77/25 78/9 81/14 83/16
 84/7 85/22 89/8 97/25
 103/1 109/6 110/8
where [45]   11/7 11/8
 11/20 11/25 12/13 12/13
 12/17 13/4 13/17 13/24
 14/10 15/12 15/16 15/23
 16/10 16/12 16/15 17/19

17/22 17/25 18/16 18/22
 28/15 30/3 36/12 36/19
 40/17 46/2 53/4 54/17
 55/7 62/16 63/23 73/19
 74/20 76/7 89/20 89/24
 93/12 100/12 101/11
 104/15 104/16 105/24
 110/13
whereas [2]   14/2 20/13
whether [28]   2/19 18/10
 36/5 39/22 40/11 40/23
 42/1 49/14 52/18 53/18
 58/11 59/20 60/3 66/16
 68/4 71/13 80/4 81/2 81/3
 85/4 86/13 87/9 99/3
 100/14 101/17 101/22
 111/14 111/24
which [84]   2/20 7/18 10/9
 15/20 20/16 22/22 25/18
 25/19 25/25 26/10 26/20
 27/19 30/22 34/1 36/7
 36/18 37/11 37/21 40/3
 42/6 45/11 46/17 47/4
 47/5 47/6 47/18 48/15
 48/22 50/14 51/14 52/4
 53/3 56/1 56/3 57/16
 58/23 59/24 59/25 61/20
 64/5 67/12 67/12 67/14
 68/22 69/9 71/18 73/11
 73/20 74/24 75/20 75/20
 75/24 76/3 76/3 76/12
 77/2 78/1 79/13 80/21
 82/7 83/10 85/1 85/20
 88/9 89/21 90/21 92/6
 92/13 92/25 93/1 98/22
 99/10 100/19 105/22
 106/16 108/22 109/24
 110/21 111/6 111/7 112/2
 112/10 112/17 114/8
whichever [1]   58/21
while [2]   62/12 85/25
White [1]   112/5
who [40]   3/14 3/14 8/13
 11/10 11/24 12/23 12/24
 13/4 14/18 14/19 15/25
 16/17 24/15 28/21 28/24
 28/24 29/4 31/8 37/4 37/4
 42/18 43/20 43/20 48/24
 53/25 56/14 69/24 71/13
 72/8 72/10 72/11 72/13
 78/15 86/8 92/8 97/5 97/5
 97/10 100/21 112/4
whoever [1]   56/17
whole [9]   17/5 67/15
 75/11 78/9 81/13 82/1
 99/7 103/25 112/2
wholly [1]   72/23
whose [1]   29/3
why [40]   4/4 4/25 12/4
 17/9 25/14 26/3 27/16
 32/12 35/17 37/11 41/11
 41/12 42/20 45/18 48/17
 48/21 49/17 53/14 54/9
 55/22 57/19 59/14 61/7
 61/11 61/13 61/25 63/10
 63/11 64/20 65/6 65/9
 68/7 77/18 81/6 81/21
 83/22 91/22 93/10 96/20
 110/14
will [57]   2/13 2/25 4/7
 5/17 5/25 6/5 6/5 9/20

will... [49]   9/21 29/20
  30/14 30/17 30/23 30/24
  36/4 38/5 38/7 38/8 38/22
  38/22 39/3 39/5 39/9
  39/13 39/19 40/12 40/18
  41/16 41/22 42/2 42/17
  42/22 42/22 44/8 46/21
  53/18 54/19 58/22 59/15
  61/22 61/24 68/18 72/4
  77/7 78/16 79/15 83/15
  83/25 85/9 94/10 106/2
  106/3 106/13 110/1 111/15
  112/3 112/13
Williamson [1]   99/19
willing [16]   4/8 21/23
  52/11 52/12 52/14 52/20
  52/23 52/24 52/25 53/2
  53/5 53/12 53/14 54/1
  54/2 54/23
win [17]   7/12 8/20 15/2
  23/22 23/24 55/16 56/10
  61/23 63/18 68/1 74/5
  74/6 99/20 99/21 102/11
  110/24 110/25
wind [2]   39/17 49/11
winds [1]   73/7
Winn [2]   15/16 26/20
winning [1]   40/8
wins [2]   56/11 63/21
within [7]   10/21 11/12
  11/21 37/18 38/3 39/6
  88/24
without [7]   21/15 22/3
  30/6 76/12 104/10 106/15
  112/9
woke [1]   35/6
woken [1]   83/11
won't [6]   36/13 39/4
  39/21 49/19 79/10 83/24
word [8]   24/14 26/2 40/7
  67/3 72/16 95/4 110/1
  110/12
words [8]   70/8 79/25 80/8
  92/18 108/20 108/22
  108/24 111/16
work [12]   5/2 7/14 11/7
  33/12 44/14 55/16 56/18
  56/19 79/20 79/21 94/4
  113/8
worked [1]   83/10
working [1]   52/2
works [6]   13/22 32/13
  38/12 86/12 97/25 109/4
world [3]   43/22 81/5
  111/23
worry [1]   113/2
worth [2]   104/13 106/16
would [164]
wouldn't [17]   2/18 7/20
  10/5 42/20 57/1 57/2
  58/23 61/15 62/14 64/1
  66/4 80/20 82/19 91/21
  97/4 100/25 107/13
wrap [1]   49/23
write [1]   83/21
writing [1]   18/21
written [2]   58/12 111/22
wrong [8]   16/6 25/10 42/4
  59/17 59/17 93/20 94/23

105/21
wrote [3]   10/24 18/11
  92/7

**Y**

yeah [7]   50/3 50/17 58/5
  70/17 94/4 102/9 102/20
year [13]   19/22 20/2
  21/16 21/24 22/19 22/20
  33/7 33/12 39/20 54/14
  104/11 106/2 106/3
years [3]   40/23 103/18
  106/2
yes [19]   9/15 9/17 14/17
  29/12 35/3 68/1 68/15
  74/18 76/11 80/8 80/8
  80/8 84/4 89/19 90/1
  92/18 100/4 112/25 113/9
yet [2]   52/1 112/14
York [2]   36/12 36/12
you [429]
You'd [1]   70/5
you'll [2]   51/11 110/20
you're [25]   4/19 9/18
  9/25 13/11 15/4 37/17
  37/18 37/19 37/20 38/2
  38/3 41/21 41/21 44/23
  60/5 66/16 69/5 77/12
  80/11 93/18 93/18 95/17
  105/3 105/3 110/7
You've [1]   10/23
young [1]   105/6
your [64]   2/6 2/21 3/2
  9/16 9/16 13/10 14/9
  20/10 20/19 22/4 22/12
  22/18 23/8 23/20 23/22
  23/24 25/12 29/20 31/3
  32/1 32/25 35/18 36/24
  38/16 39/12 42/2 45/2
  49/23 50/7 51/23 55/10
  60/21 61/11 61/12 63/11
  65/1 65/2 66/11 66/22
  67/9 67/20 68/5 68/14
  69/20 74/5 77/12 81/23
  87/19 92/10 92/19 92/21
  93/20 94/2 94/9 94/11
  94/18 94/22 107/22 108/15
  108/16 109/15 112/1 113/4
  113/9
yourselves [1]   2/4

**Z**

zero [5]   4/3 4/9 32/9
  33/12 52/22
zone [13]   10/21 11/2 11/7
  11/12 11/15 11/21 11/25
  37/18 37/20 38/3 38/5
  38/7 39/7